Jeffrey Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900; Fax: (510) 463-3901
jlewis@kellerrohrback.com

Juli Farris (Bar No. 141716)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496; Fax: (805) 456-1497
jfarris@kellerrohrback.com

Michael D. Woerner, *pro hac vice forthcoming*
Benjamin Gould (Bar No. 250630)
Erika M. Keech, *pro hac vice forthcoming*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900; Fax: (206) 623-3384
mwoerner@kellerrohrback.com
bgould@kellerrohrback.com
ekeech@kellerrohrback.com

***Attorneys for Plaintiffs***

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| BARBARA LEWIS, AKEMI BUCKINGHAM, ELAINA HUFNAGEL, and TERESA GATTUSO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RODAN & FIELDS, LLC,<br><br>Defendant. | No.<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs, individually and on behalf of all others similarly situated, by their attorneys, for their complaint against Rodan & Fields, LLC, ("Defendant" or "Rodan + Fields") allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## I.      NATURE OF THE ACTION

1.      This matter arises out of Defendant Rodan + Fields' deceptive labeling and unlawful marketing of its Enhancements Lash Boost ("Lash Boost") eye serum.  Rodan + Fields failed to disclose the harmful side effects linked to an ingredient in their Lash Boost product, which Rodan + Fields markets and sells throughout California and New York.

2.      Rodan + Fields was started by Dr. Katie Rodan and Dr. Kathy Fields.  Since Lash Boost first entered the market in 2016, Rodan + Fields has marketed it as a cosmetic "eyelash-conditioning serum…clinically shown to enhance the appearance of eyelash volume and length…"[1]  But since it entered the market in 2016, Rodan + Fields has failed to disclose material facts to consumers about the existence, severity, and duration of symptoms and side effects associated with an ingredient in Lash Boost: isopropyl cloprostenate.

3.      Isopropyl cloprostenate is a synthetic prostaglandin analog.  Prostaglandin analogs are widely used in the medical management of glaucoma[2] to reduce elevated ocular pressure in patients with ocular hypertension.  Hence, the side effects of prostaglandin analogs are well known to eye doctors.

---

[1] *Enhancements Lash Boost*™, Rodan + Fields, https://www.rodanandfields.com/pages/lash-boost (last visited Apr. 12, 2018).
[2] Glaucoma is a disease where damage to the optic nerve leads to progressive, irreversible vision loss. Glaucoma Research Foundation, *What is Glaucoma?*, https://www.glaucoma.org/glaucoma/ (last visited Apr. 13, 2018).

4.    Although effective in treating individuals with glaucoma who could otherwise lose their vision without treatment, prostaglandin analogs have "potentially sight-threatening side effects,"[3] including:

a.    iris cysts, cystoid macular edema (which may cause vision loss and distortion);

b.    anterior uveitis (inflammation of the iris or ciliary body); and

c.    reactivation of herpes simplex keratitis (inflammation and possible scarring of the cornea).[4]

5.    Known side effects also include:

a.    shrinking of the fat cells around the eye (periorbital fat atrophy) causing eyelid drooping (upper lid ptosis);

b.    increased prominence of lid vessels;

c.    darkening of the eyelid skin and undereye skin;

d.    increased pigmentation of the iris (meaning it can change the color of the eyes);[5]

e.    excessive tearing, eye pain, or lid crusting;[6] and

f.    lengthening of eyelashes.

6.    In April of 2011, the FDA issued a warning letter to another manufacturer of a product containing isopropyl cloprostenate that was promoted for eyelash growth, stating that the product "makes misleading statements regarding the product's safety and also fails to reveal material facts with respect to consequences that may result from use of the product."[7]  The letter also stated that the

---

[3] A. Alm, et al., Side effects associated with prostaglandin analog therapy, Nat'l Ctr. for Biotech. Info. (Nov. 2008) https://www.ncbi.nlm.nih.gov/pubmed/19038628;

[4] *Id.*, *see also* Sunita Radhakrishnan, MD, et al., *Glaucoma Medications and their Side Effects*, Glaucoma Research Foundation, https://www.glaucoma.org/gleams/glaucoma-medications-and-their-side-effects.php (last reviewed Apr. 4, 2018).

[5] Stanley J. Berke, MD, *PAP: New Concerns for Prostaglandin Use*, Review of Ophthalmology (Oct. 4, 2012), https://www.reviewofophthalmology.com/article/pap-new-concerns-for-prostaglandin-use.

[6] Andrew A. Dahl, MD, FACS, *Glaucoma Medications*, e medicine health, https://www.emedicinehealth.com/understanding_glaucoma_medications/article_em.htm#prostaglandin_analogs_side_effects_and_interactions (last updated Nov. 20, 2017).

[7] *See* Alonza E. Cruse, *Warning Letter*, U.S. Food & Drug Admin. (Apr. 18, 2011), http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm [https://wayback.archive-

products, "are not safe for use except under the supervision of a practitioner licensed by law to administer them."[8]  Further, prostaglandin analogs are classified as Category C, meaning "women of childbearing age are considered at risk for injury."[9]

7.     A prostaglandin analog is used in an FDA approved eye lash enhancement product, Latisse, to promote eyelash growth.  Possible side effects associated with using prostaglandin analogs are disclosed to Latisse consumers.[10]

8.     But instead of putting Lash Boost through the FDA review process and having to make a thorough disclosure of the side effects associated with prostaglandin analogs, Rodan + Fields markets Lash Boost as a cosmetic.  While all prostaglandins and their analogs, including isopropyl cloprostenate, are banned from cosmetic products in Canada,[11] they are not banned from cosmetics in the United States.

9.     Consumers of Lash Boost throughout California and New York, have experienced serious side effects, including change in iris color, eyelid drooping, itchy eyes, eye/lid discoloration, thinning and loss of eyelashes/loss of eyelash hair, eye sensitivity, eye infections, and vision impairment.  But instead of disclosing the harmful side effects and risks associated with use of Lash Boost, and letting consumers decide if Lash Boost is worth the risk, Rodan + Fields omitted them and thus engaged in fraudulent, unfair, and unlawful marketing practices.

---

it.org/7993/20170111100914/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm]

[8] *Id.*

[9] *Id.*

[10]*Using Latisse Safety Info*, Latisse, http://www.latisse.com/SafetyAndSideEffects.aspx (last visited Apr. 13, 2018) (Less common side effects include "skin darkening, eye irritation, dryness of the eyes and redness of the eyelids...LATISSE® solution use may cause darkening of the eyelid skin...[and] may cause increased brown iris pigmentation of the colored part of the eye which is likely to be permanent." *See also* Lupin Pharmaceuticals, Inc., *Latisse*, Drugs.com, https://www.drugs.com/pro/latisse.html (last visited Apr. 13, 2018).

[11] Gov't of Can., *Cosmetic Ingredient Hotlist – List of Ingredients that are Prohibited for Use in Cosmetic Products*, Government of Canada, https://www.canada.ca/en/health-canada/services/consumer-product-safety/cosmetics/cosmetic-ingredient-hotlist-prohibited-restricted-ingredients/hotlist.html (last updated Dec. 14, 2015).

10.     Disclosing the true risks and side effects of Lash Boost on the product labeling and through its marketing efforts would have been harmful to Rodan + Fields' sales.  In 2016, Rodan + Fields exceeded $1 billion in sales[12] and was the top selling skincare brand in 2016.

11.     This action seeks to compensate consumers who purchased Lash Boost at the cost of $150 per tube.  This action does not allege that Lash Boost is subject to FDA regulation or should have been regulated by the FDA.

12.     In marketing and labeling Lash Boost, Defendant violated various state consumer protection laws and engaged in fraudulent concealment and misrepresentation.  Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Product in California and New York during the applicable statute of limitations period.

## II.     PARTIES

### A.     Plaintiffs

13.     **Plaintiff Barbara Lewis** is an attorney and a resident of Ventura County, California.

14.     Plaintiff Lewis purchased Lash Boost in February 2018.  Prior to using Lash Boost, Ms. Lewis was not pregnant or nursing.  She was not being treated for an eye-related disorder and was not undergoing cancer treatment.  She did not have a history of styes, nor was she prone to dry eyes.

15.     Before using Lash Boost she was not aware that Lash Boost could have any of the following side effects (a) cause droopy eyelids by causing the loss of periorbital fat; (b) cause redness in the eyes by creating excess of blood in the eye vessels; (c) change the iris color; (d) darken the eyelid skin; (e) impact vision; (f) cause cysts or styes; (g) cause inflammation of the iris; (h) reactivate herpes simplex keratitis, which can result in inflammation and possible scaring of the cornea; (i)

---

[12] Michelle Castillo, *How Rodan + Fields bought back their skincare company and topped $1 billion in sales*, CNBC (Dec. 30, 2017) https://www.cnbc.com/2017/12/30/rodan-fields-selfies-and-social-media-1-billion-revenue.html.

increase the prominence of lid vessels; and/or (j) cause eye pain, excessive tearing, and lid crusting (or other hypersensitivity reactions including red, itchy, flaky, skin).

16.     Ms. Lewis was also not aware that an ingredient in Lash Boost was previously classified by the FDA as a category C pregnancy drug.

17.     Had Ms. Lewis been aware of these possible side effects before purchasing Lash Boost, she would not have purchased or used the product.

18.     Ms. Lewis first used the product once or twice in February 2018.  In March of 2018, she used Lash Boost for approximately two weeks.  Three days after stopping use of Lash Boost, Ms. Lewis developed a chalazion on her right eye.  A chalazion is a small bump that appears on the eyelid due to blocked oil glands.  After developing the chalazion, Ms. Lewis stopped using Lash Boost.

19.     Three days later, Ms. Lewis developed a hordeolum (otherwise known as a stye, or a bacterial infection of an oil gland in the eyelid) in her left eye.

20.     Three days after developing the hordeolum, she developed blepharitis (inflammation of the eyelids) and was placed on antibiotics due to the infection.  Ms. Lewis went to the doctor three times, including to a specialist.  Below is a photograph of Ms. Lewis' eyes after using Lash Boost.



21.     **Plaintiff Akemi Buckingham** is a resident of Riverside County, California.  Plaintiff Buckingham purchased Lash Boost in July 2017.  Prior to using Lash Boost, Plaintiff Buckingham was not pregnant or nursing.  She was not being treated for an eye-related disorder and was not undergoing cancer treatment.  She did not have a history of sties, nor was she prone to dry eyes.

22.     Before using Lash Boost she was not aware that Lash Boost could have any of the following side effects (a) cause droopy eyelids by causing the loss of periorbital fat; (b) cause redness in the eyes by creating excess of blood in the eye vessels; (c) change the iris color; (d) darken the eyelid skin; (e) impact vision; (f) cause cysts or styes; (g) cause inflammation of the iris; (h) reactivate herpes simplex keratitis, which can result in inflammation and possible scaring of the cornea; (i) increase the prominence of lid vessels; and/or (j) cause eye pain, excessive tearing, and lid crusting (or other hypersensitivity reactions including red, itchy, flaky, skin).

23.     Plaintiff Buckingham was also not aware that an ingredient in Lash Boost was previously classified by the FDA as a category C pregnancy drug.

24.     Had Plaintiff Buckingham been aware of these possible side effects before purchasing Lash Boost, she would not have purchased or used the product.

25.     Following use of Lash Boost Plaintiff Buckingham experienced burning and stinging in her eyes.  She also experienced a red, itchy, flaking patch of skin on her eyelid that will not go away.

26.     **Plaintiff Elaina Hufnagel** is a registered nurse and a resident of Suffolk County, New York.  She purchased Lash Boost in September of 2017.  Prior to using Lash Boost, Plaintiff Hufnagel was not pregnant or nursing.  She was not being treated for an eye-related disorder and was had just ended her chemotherapy treatment.  She did not have a history of sties, nor was she prone to dry eyes.

27.     Plaintiff Hufnagel used Lash Boost for approximately three weeks in late October, early November of 2017.

28.     Before using Lash Boost she was not aware that Lash Boost could have any of the following side effects (a) cause droopy eyelids by causing the loss of periorbital fat; (b) cause redness in the eyes by creating excess of blood in the eye vessels; (c) change the iris color; (d) darken the eyelid skin; (e) impact vision; (f) cause cysts or styes; (g) cause inflammation of the iris; (h) reactivate herpes simplex keratitis, which can result in inflammation and possible scaring of the cornea; (i)

increase the prominence of lid vessels; and/or (j) cause eye pain, excessive tearing, and lid crusting (or other hypersensitivity reactions including red, itchy, flaky, skin).

29.     Plaintiff Hufnagel was also not aware that an ingredient in Lash Boost was previously classified by the FDA as a category C pregnancy drug.

30.     Had Plaintiff Hufnagel been aware of these possible side effects before purchasing Lash Boost, she would not have purchased or used the product.

31.     Following use of Lash Boost Plaintiff Hufnagel experienced eye irritation, swelling, burning, redness, itching, and crusting over of her eyes.  The skin around her eyes appeared darker than before using Lash Boost and her eyes were puffier than normal.

32.     **Plaintiff Teresa Gattuso** is resident of Suffolk County, New York.  She purchased Lash Boost in June of 2017 and used it for approximately eight weeks in the summer of 2017.  Prior to using Lash Boost, Plaintiff Gattuso was not pregnant or nursing.  She was not being treated for an eye-related disorder and was not undergoing cancer treatment.  She did not have a history of sties, nor was she prone to dry eyes.

33.     Before using Lash Boost she was not aware that Lash Boost could have any of the following side effects (a) cause droopy eyelids by causing the loss of periorbital fat; (b) cause redness in the eyes by creating excess of blood in the eye vessels; (c) change the iris color; (d) darken the eyelid skin; (e) impact vision; (f) cause cysts or styes; (g) cause inflammation of the iris; (h) reactivate herpes simplex keratitis, which can result in inflammation and possible scaring of the cornea; (i) increase the prominence of lid vessels; and/or (j) cause eye pain, excessive tearing, and lid crusting (or other hypersensitivity reactions including red, itchy, flaky, skin).

34.     Had Plaintiff Gattuso been aware of these possible side effects before purchasing Lash Boost, she would not have purchased or used the product.

35.     Following the use of Lash Boost, Ms. Gattuso experienced eye pain, excessive tearing, lid crusting, and blurry vision.  Her eye lids were more red than normal and some of her eyelashes fell

out following use of Lash Boost.  Although some of her lashes have grown back, they have not been restored to what they were like before her use of Lash Boost.

**B.      Defendant**

36.    Rodan + Fields is headquartered in San Francisco, California.[13]  Rodan + Fields markets itself as a company that sells skincare and cosmetic products.  Rodan + Fields regularly conducts business in the State of California, including the sale of Enhancements Lash Boost.  Lash Boost is distributed and marketed throughout the United States, including the states of California and New York.  It is sold online and through consultants.  Lash Boost is the same product—with the same omissions from its label—throughout California and New York.

37.    Rodan + Fields was founded by dermatologists Katie Rodan and Kathy Fields.  In 2002 Rodan and Fields created the acne treatment Proactiv.  The prior company was acquired by Estee Lauder in 2003.  In 2007, Rodan and Fields bought back the company and converted from selling its products in department stores to utilizing consultants to sell products.

38.    In 2009, the business changed to a multilevel marketing program (multilevel marketing is utilized by Avon, Mary Kay, Amway, and Herbalife).  Rodan + Fields sells Lash Boost via consultants using a marketing strategy that encourages salespeople to market the products through social media.[14]

**III.      JURISDICTION AND VENUE**

39.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).  At least one of the Plaintiffs and putative class members is a citizen of a different state from Defendant. Furthermore, the aggregate amount in controversy exceeds $5,000,000.

---

[13] S&P Global Market Intelligence, *Company Overview of Rodan & Fields, LLC*, Bloomberg, https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=6324492 (last visited Apr. 13, 2018).
[14] Castillo, *supra*.

40.     This Court has personal jurisdiction over Rodan + Fields because Rodan + Fields is headquartered in the Northern District of California and Rodan + Fields has directed its marketing and sales of numerous products from its headquarters in the Northern District of California.  Rodan + Fields has substantial contacts with the State of California such that maintenance of the action is consistent with traditional notions of fair play and substantial justice.

41.     Further, Rodan + Fields has transacted business, maintained substantial contacts, and/or committed overt acts throughout California and New York.  The acts have been directed at, and have had the intended effect of, causing injury to persons residing in, located in, or doing business throughout California and New York, including in this District.

42.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b).  A substantial portion of the events giving rise to the claims alleged in this Complaint took place within the Northern District of California.

## IV.     FACTUAL BACKGROUND

**A.     History of Cosmetic Regulation and the active ingredient in Lash Boost**

43.     In contrast to prescription drugs, cosmetics may be marketed in the United States without FDA approval.

44.     Unlike drugs, under the Food Drug and Cosmetic Act ("FDCA"), cosmetic products and ingredients do not require Food and Drug Administration ("FDA") approval before going on the market.[15]  This means that the cosmetic industry is largely unregulated.

---

[15] *Is It a Cosmetic, a Drug, Or Both? (Or Is it Soap?)*, U.S. Food & Drug Administration, https://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm (last updated Apr. 30, 2012).

45.     While Canada and the European Union ban 1,300 ingredients from use in cosmetics,[16] the United States has only banned eleven ingredients.[17]  Notably, included in the list of ingredients prohibited in Canada are "prostaglandins, their salts and their derivatives, and their analogs,"[18] including isopropyl cloprostenate, an active ingredient used in Rodan + Fields' Lash Boost.

46.     Products that contain the same ingredients as drugs can evade FDA review by being classified as cosmetics.  This, however, does not absolve Rodan + Fields from liability for failing to disclose to consumers the adverse side effects associated with their product.  Rodan + Fields is still required to comply with state consumer protection laws and applicable state laws relating to fraud. This will be explained in further detail below.

47.     ["I]sopropyl cloprostenate is a synthetic prostaglandin analog in the same class of compounds as the active ingredient in FDA-approved drugs indicated to lower intraocular pressure in glaucoma patients."[19]  The FDA has previously warned manufacturers marketing eyelash growth serums that were promoted for the growth of eyelashes using the same active ingredient, isopropyl cloprostenante, that these products violated the Food, Drug, and Cosmetic Act because they were unapproved new drugs and misbranded drugs.[20]  The FDA also noted the harmful side effects associated with prostaglandin analogs: "[o]ther potential adverse events associated with prostaglandin analogs for ophthalmic use include ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with glaucoma therapy.  In addition, prostaglandin analogs for ophthalmic use are currently classified as Pregnancy Class C."[21]

---

[16] Government of Canada, *supra*.
[17] *See Prohibited and Restricted Ingredients*, U.S. Food & Drug Administration, https://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm127406.htm, (last updated Nov. 3, 2017).
[18] Government of Canada, *supra*.
[19] Cruse, *supra*.
[20]  Cruse*, supra*.
[21] *Id*.

48.     Drugs are classified as Pregnancy Category C when either (1) animal reproduction studies have shown an adverse effect on the fetus and there are no adequate and well controlled studies in humans, but potential benefits may warrant use of the drug in pregnant women despite potential risks; or (2) there are no animal reproduction studies and no adequate and well controlled studies in humans.

49.     The risks of isopropyl cloprostenate and its classification as a Category C drug are not all disclosed by Rodan + Fields.

50.     Prostaglandin analogs are powerful topical agents available for the treatment of elevated intraocular pressure (IOP), or glaucoma.[22]  Glaucoma is a potentially blinding ocular disease.

51.     While prostaglandin analogs lower pressure in the eye for the treatment of IOP and increase the length of eyelashes, they also have other side effects:

---

[22] Anne J. Lee, et al., *Clinical utility and differential effects of prostaglandin analogs in the management of raised interocular pressure and ocular hypertension*, NCBI (July 30, 2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2915861.

a. They can cause droopy eyelids by causing the loss of periorbital fat and the presence of ptosis;

b. They can cause the redness in the eyes by creating an excess of blood in the eye vessels;

c. They can change the color of the iris;

d. They can cause darkening of the eyelid skin;

e. They can impact vision (cystoid macular edema);

f. They can cause cysts;

g. They can cause inflammation of the iris or ciliary body;

h. They can reactivate herpes simplex keratitis which can result in inflammation and possible scarring of the cornea;

i. They can increase the prominence of lid vessels; and

j. They can cause eye pain, excessive tearing, and lid crusting.

52. Prostaglandin analogs' side effects include those that can interfere with vision.[23] Exposure to prostaglandin affects the metabolism of periorbital cells, causing them to shrink. "The shrinkage of fat cells surrounding the eye causes enophthalmos—the eye becomes more sunken-in. The result is a deepening of the superior eye lid sulcus, which periorbital fat tissue seems to melt away."[24]  The change "is actually quite striking."  Dr. Stanley Burke wrote, "[t]he bottom line here is that…this effect is real, it's common, and *it's associated with all the drugs in the class*." (emphasis added).[25] This means, these side effects are associated with isopropyl cloprostenate.

53. The risk of the adverse side effects of prostaglandin analogs is low relative to the utility of preventing and treating a disease, like glaucoma, that, if untreated, could result in blindness.  The same cannot be said for someone using a product for the purpose of enhancing the appearance of their

---

[23] Mass. Eye and Ear Infirmary, *Glaucoma drug can cause droopy eyelids,* Science Daily (May 21, 2013), https://www.sciencedaily.com/releases/2013/05/130521121505.htm
[24] Berke, *supra.*
[25] *Id.*

eyelash length.  It is therefore imperative that consumers are warned of the potentially vision

impairing, painful, and permanent consequences associated with Lash Boost's use.

**B.**     **FDA approved eye lash growth products using prostaglandin analogs warn of known side effects**

54.     Once it was discovered that prostaglandin analogs had the effect of lengthening

eyelashes, it was marketed in products for purposes other than glaucoma treatment and was used in

prescription medications to lengthen eyelashes.

55.     On December 24, 2008, the FDA approved Latisse as a topical serum and treatment for

hypotrichosis of the eyelashes (people with sparse eyelashes).[26]  The active ingredient in Latisse is

bimatropose, a prostaglandin analog.

56.     When consumers purchase Latisse, the product comes with FDA-approved patient

labeling.  The product itself comes with an extensive package insert that provides warnings and

precautions, instructions on indications and use, and lists the most frequently reported adverse

reactions.

57.     The Latisse warnings and precautions advise of effects on: intraocular pressure, iris

pigmentation changes, lid pigmentation, hair growth outside the treatment area, intraocular

inflammation, and macular edema.

58.     The Latisse product insert also lists post marketing experiences.  The listed reactions

that have been identified during post marketing use of Latisse in clinical practice include: eye swelling,

eyelid edema, hypersensitivity (local allergic reactions), lacrimation increased, madarosis and

trichorrhexis (temporary loss of a few lashes to loss of sections of eyelashes, and temporary eyelash

breakage, respectively), periorbital and lid changes associated with a deepening of the eyelid sulcus,

rash (including macular and erythematous), skin discoloration (periorbital), and vision blurred.

---

[26] *Drug Approval Package: Latisse,* U.S. Food & Drug Administration (Aug. 27, 2009),
https://www.accessdata.fda.gov/drugsatfda_docs/nda/2008/022369_latisse_toc.cfm.

59.     It also cautions that the product is Pregnancy Category C, and warns nursing mothers. When unfolded, the insert itself is approximately 14 by 22 inches.

60.     Notably, the Latisse website lists side effects of using the product including a warning that the product "may cause brown darkening of the colored part of the eye which is likely permanent. LATISSE® may cause eyelid skin darkening which may be reversible…Common side effects include itchy and red eyes."[27]

61.     By contrast, Lash Boost does not come with similarly extensive product warnings that clearly instruct consumers on all of the side effects associated with the product.

62.     Further, the Lash Boost Frequently Asked Questions fact sheet that is given to Rodan + Fields consultants does not disclose all of the side effects associated with prostaglandin analogs.  As such, the materials provided to consultants who sell Lash Boost, the Rodan + Fields website, and the product labeling all suffer from the same material omissions.

C.      **Rodan + Fields should have known their marketing, advertising and labeling of Lash Boost was insufficient based on a prior California legal action involving their competitor**

63.     The makers of Latisse previously filed suit against another company that marketed a lash serum with the ingredient isopropyl cloprostenate, a prostaglandin analog, and alleged that the petitioner violated the California Unfair Competition Law.  Latisse "alleged that by selling a competing drug without requiring a prescription and without an approved new drug application, petitioner caused respondent to lose sales and suffer other financial injuries."[28]  The court of appeals held that the claim was not preempted, concluding that Latisse's claim did not intrude upon the FDA's discretionary authority to enforce the FDCA.  After the Solicitor General submitted an amicus brief agreeing with this position, the Supreme Court denied certiorari.

---

[27] *Latisse (bimatoprost ophthalmic solution) 0.03% Important Information*,, Latisse, http://www.latisse.com/ (last visited Mar. 13, 2018).

[28] Donald B. Verilli, Jr. et al., *Athena Cosmetics, Inc. v. Allergan, Inc.*, *No. 13-1379*, *On Petition For Writ Of Cetiorari, Brief for the United States, Amicus Curaie* (May 2015), http://sblog.s3.amazonaws.com/wp-content/uploads/2015/06/13-1379-Athena-US-amicus.pdf.

**D.**     **Rodan and Fields Misled Consumers Throughout California and New York About the Side Effects of Lash Boost**

64.     Rodan + Fields markets its Lash Boost serum as clinically shown to enhance the appearance of eyelash volume and length.  Rodan + Fields uses the ingredient isopropyl cloprostenate, and makes appearance claims such as: "get the appearance of lush, longer-looking lashes…Our eyelash conditioning serum is clinically shown to enhance the appearance of eyelash volume and length."[29]  It also claims, however, that Lash Boost "will not affect the structure or function of your lashes."[30]

65.     Like other known side effects of prostaglandin analogs, Lash Boost can cause adverse side effects.  Users who have purchased and used Lash Boost have experienced side effects including, among others, change in iris color, eyelid drooping, itchy eyes, eye discoloration, thinning eyelashes/loss of eyelash hair, eye sensitivity, eye infections, cysts, and vision impairment.

66.     Lash Boost was sold to plaintiffs and the putative class with inadequate warnings regarding the existence, severity, and duration of these adverse effects.

67.     Rodan + Fields' Lash Boost product label, as well as its website, mischaracterizes the existence of these adverse side effects.[31]

68.     As demonstrated by the company's description of the most common consumer complaints associated with the use of Lash Boost, the product and its marketing department fail to warn of the nature and extent of the adverse side effects:

---

[29] Enhancements Lash Boost™, *supra.*

[30] *Frequently Asked Questions, Rodan + Fields ENHANCEMENTS Lash Boost™*, Rodan + Fields https://www.rodanandfields.com/images/archives/ENHANCEMENTS_Lash_Boost_FAQs.pdf. (last updated Dec. 22, 2016).

[31] *What are the most common consumer complaints you anticipate from use of ENHANCEMENTS Lash Boost?*, Rodan + Fields, http://www.rodanandfields.com/rfconnection/index.php/2017/06/26/what-are-the-most-common-consumer-complaints-you-anticipate-from-use-of-enhancements-lash-boost/ (last visited Apr. 12, 2018).

🇺🇸
What are the most common consumer complaints you anticipate from use of
ENHANCEMENTS Lash Boost?

The finished product and the ingredients contained in ENHANCEMENTS Lash Boost have been thoroughly tested in Clinical and Consumer
Studies. As with most cosmetic products, some consumers may report temporary tingling or redness, which normally disappears after
continued use. *However, if any tingling, itching or redness persists or is not tolerable, discontinue use and seek medical advice.*

[32]

69.     This is misleading because it does not disclose that, while less common, some

consumers experience severe side effects.

70.     Defendant also claims the product has been "thoroughly tested," yet its own website

describes only one study of Lash Boost, with only 41 participants in its 8-week long "consumer

study."[33]

---

[32] *Id.*

[33] Frequently Asked Questions, Rodan + Fields ENHANCEMENTS Lash Boost™, *supra*.

71.     Rodan + Fields appeals to their customers, asking "what if you had the lashes you long for?[34]" but fails to disclose the serious risks associated with using Lash Boost to realize that desire.



72.     When using prostaglandin analogs for their original purpose--to treat glaucoma--the consumer must weigh the known side effects, including possible eye color change, droopy eyelids, and eyelid skin darkening, against the prospect of total blindness resulting from glaucoma.  When using prostaglandin analogs to get the "lashes you long for"[35], the consumer should be able to weigh those same known side effects against the prospect of their eyelashes appearing longer.  Rodan + Fields does not afford their Lash Boost customers that opportunity.  Had prospective Lash Boost consumers consulted the Rodan + Fields website, they also would have been misled by the affirmative misrepresentations on the website.

---

[34] Enhancements Lash Boost™, *supra*.
[35] Enhancements Lash Boost™, *supra*.

73.     For example, the Rodan + Fields website contrasts the existence of serious side effects associated with *other* lash products used to improve lashes.  The website reads: Question: "I have heard about side effects caused by drugs and other products used to improve lashes.  Should I be concerned about potential side effects from the use of Enhancements Lash Boost?"  Answer: "No.  The only serious side effects we have heard about are those associated with drug products, not cosmetics.  ENHANCEMENTS Lash Boost is a cosmetic."[36]

74.     The warnings on the product label itself are inadequate and do not fully disclose the side effects associated with Lash Boost.  Information available to consumers now advises consumers to consult a doctor: "if anyone has a health concern or is hesitant about using ENHANCEMENTS Lash Boost, they may review the ingredient list with their doctor and utilize the patch test prior to use."[37]  Advising a consumer to consult a doctor before use does not absolve Rodan + Fields of the responsibility to advise consumers of the serious risks associated with use, especially when the product is marketed as a cosmetic that does not require a prescription.

75.     Defendant's marketing of Lash Boost and failure to warn individuals of the harmful adverse effects caused Plaintiffs to purchase and use Lash Boost.  If Rodan + Fields had not been deceptive in its representations and had it fully disclosed adverse side effects of its product, Plaintiffs would have decided not to purchase Lash Boost or paid less for the product.

76.     Plaintiffs lost money as a result of Rodan + Fields' unfair and unlawful claims and practices in that they did not receive what they paid for when purchasing Lash Boost.  Additionally, Plaintiffs altered their positions to their detriment and suffered economic damages.

**E.      Specific Misrepresentations/Material Omissions**

77.     As discussed throughout this complaint, Lash Boost's label contains material omissions.

---

[36] Frequently Asked Questions, Rodan + Fields ENHANCEMENTS Lash Boost™, *supra*.
[37] *Id.*

78.    The label materially omits the existence of adverse side effects associated with prostaglandin analogs.

79.    The label materially omits the nature, extent, and duration for some of these side effects.

80.    The label on the product packaging previously read: WARNINGS: For external use only.  Avoid getting in the eye; in the event of direct contact, rinse with cool water.  If irritation persists, consult your physician.  Consult with your physician if you're pregnant or nursing, being treated for any eye-related disorder, or actively undergoing cancer treatment.  Keep out of reach of children.

81.    Below is a photograph of a recently purchased Lash Boost.  As the photo below depicts the label now reads: WARNINGS For external use only.  Avoid getting in the eye; in the event of direct contact rinse with cool water.  If you develop irritation or swelling, discontinue product usage.  If irritation is significant or in the first instance of any swelling, consult your physician.  If you're pregnant or nursing, being treated for any eye-related disorder, undergoing cancer treatment, prone to dry eyes or styes, consult your physician before use.  If you notice irregularities in appearance of lashes over time, discontinue use.  Keep out of reach of children.



82.    On information and belief, the new warning label was updated on or about February 2018.

83.    Although Rodan + Fields updated its warning label, the new label itself still does not adequately disclose and warn of adverse effects associated with Lash Boost.  Rodan + Fields' attempted correction, while inadequate, is an implicit admission that its prior label was incorrect.

84.     Advising someone to consult with their physician if pregnant is different than advising them that this product puts women of childbearing age at risk of injury.[38]

85.     Since the debut of Lash Boost on the market, Defendant made misrepresentations on the product label, its website, and through Lash Boost sales and marketing materials distributed to consultants.  The advertising, labeling, and marketing omitted material information and failed to disclose the adverse effects associated with Lash Boost.  The totality of the adverse and harmful side effects have not been adequately disclosed to Plaintiffs and consumers.

86.     On its website, Rodan + Fields specifically said, "[i]t is not a drug product and will not affect the structure and function of your lashes" and that "Lash Boost is clinically and ophthalmologist tested, and found to be safe and non-irritating."[39]  This is misleading and deceptive.  Particularly when Rodan + Fields passed themselves off as a source of trusted information, a company started by two doctors, with the "philosophy to create safe and effective formulations, and thus, would not place a product on the market otherwise."[40]  The only "test" specified on the Rodan + Fields website was a "consumer" study involving only 41 people that lasted only eight weeks.

---

[38] *See* Cruse, Warning Letter from FDA to Lifetech Resources LLC, *supra*.

[39] *US General FAQs*, Rodan + Fields, http://www.rodanandfields.com/rfconnection/index.php/category/us/general-faqs-us/ (last visited Apr. 13, 2018).

[40] *For questions pertaining to any potential adverse effects associate with using ENHANCEMENTS Lash Boost*, Rodan and Fields, http://www.rodanandfields.com/rfconnection/index.php/2017/06/26/for-questions-pertaining-to-any-potential-adverse-effects-associated-with-using-enhancements-lash-boost/ (last visited on April 12, 2018).

For questions pertaining to any potential adverse effects associated with using
ENHANCEMENTS Lash Boost

Rodan + Fields' philosophy is to create safe and effective formulations, and thus, would not place a product on the market otherwise.
ENHANCEMENTS Lash Boost is clinically and ophthalmologist tested, and found to be safe and non-irritating. It is a nightly lash conditioning
serum that is intended to moisturize, nourish and protect your lashes. ENHANCEMENTS Lash Boost is a cosmetic-grade product designed to
improve the appearance of your lashes. It is not a drug product and will not affect the structure and function of your lashes. For best results,
apply ENHANCEMENTS Lash Boost to the lash or brow line. If you have health or medical concerns, confer with your doctor. And if you do
experience some adverse effects, please discontinue use and seek medical advice.

41

87.     Moreover, the statement that Lash Boost "will not affect the structure or function of your lashes"[42] is false, given the established fact that prostaglandin analogs have an effect on the structure or function of the body, and is also inconsistent with Rodan + Fields' claims that Lash Boost will improve the *appearance* of eyelashes, when prostaglandin analogs actually can make your lashes grow.  The fact that prostaglandin analogs have an effect on the structure or function of the body has been medically established.  The website also says that the product is "intended to moisturize, nourish and protect your lashes."[43]

88.     The site also represents that the product was "found to be safe and non-irritating."[44] This statement is inconsistent with existing science and user experiences.  The founders of the company, who are medical doctors, should have known better.

89.     In addition, advising consumers to stop using a product if adverse side effects appear is not the same as warning them of the nature, extent, and duration of side effects **before they use it**. This warning is inadequate, misleading and made for the purpose of misleading the public.

90.     Rodan + Fields also makes the affirmative statement that "Lash Boost does not cause discoloration or change in pigmentation of the iris."[45]  This statement contradicts the vast amount of publicly available research that prostaglandin analogs may cause changes in eye color.

---

[41] *Id*.
[42] *Id*.
[43] *Id*.
[44] *Id*.
[45] Frequently Asked Questions, Rodan + Fields ENHANCEMENTS Lash Boost™, *supra*.

Sometimes your skin needs to adjust to new products/ingredients. Here are two options to determine if your skin accepts the ENHANCEMENTS Lash Boost formulation:

1) Patch test: On clean and dry skin apply a small amount of ENHANCEMENTS Lash Boost on a small area of the lash line of one eye. Allow to completely dry before applying other products near the area. Observe the skin for 24 hours to determine the skin acclimation.

2) Reduce the frequency of application to every other day until the sensation no longer occurs. Gradually go back to daily application.

In either instance if skin appears normal then apply ENHANCEMENTS Lash Boost as directed. *However, if any tingling, itching or redness persists or is not tolerable, discontinue use and seek medical advice.*

IS IT ANTICIPATED THAT ENHANCEMENTS LASH BOOST MIGHT CAUSE DISCOLORATION OR CHANGE IN THE PIGMENTATION OF THE IRIS?

No. ENHANCEMENTS Lash Boost does not cause discoloration or change in pigmentation of the iris. Those serious side effects are associated with the warnings on drug products only. The cosmetic ingredients used in ENHANCEMENTS Lash Boost have never been associated with reports of change in iris pigmentation or any discoloration.

IS IT ANTICIPATED THAT ENHANCEMENTS LASH BOOST MIGHT CAUSE PERMANENT DISCOLORATION ON THE EYE AREA?

No. ENHANCEMENTS Lash Boost is not anticipated to cause permanent discoloration on the eye area. None of our clinical and ophthalmology testing show discoloration on the eye area. However, as with any cosmetic product, some individuals may report temporary discoloration associated with product sensitivity or excessive product usage. For example, individuals with sensitivities to facial products may experience facial redness. Also, as the eye area is thin, delicate skin and if you do experience sensitivity to ENHANCEMENTS Lash Boost, we recommend temporary discontinuing use to allow the skin to return to normal.

[46]

91.    Consumers are entitled to make knowing and intelligent decisions about the products they purchase. Rodan and Fields' material omissions are deceptive marketing practices designed to derive profits and revenues from unknowing consumers.

92.    Rodan + Fields' failure to properly label Lash Boost has deprived Plaintiffs and all consumers of the information they needed, and deserved, to make an informed decision about whether to purchase Lash Boost.

93.    Lash Boost's warning label, as it existed in 2016 until the present, is deceptive, misleading, and unlawful. It fails to warn individuals of adverse side effects associated with prostaglandin analogs. A reasonable consumer reading this warning would gain very little meaningful information about the actual severity and duration of any adverse side effects, and would reasonably conclude that the product was safe and non-irritating.

94.    The adverse side effects that Plaintiffs experienced were not adequately disclosed.

---

[46] Frequently Asked Questions, Rodan + Fields ENHANCEMENTS Lash Boost™, *supra*

95.     Rodan + Fields also did not fully and adequately advise their consultants about the adverse effects associated with Lash Boost.  Consultants who sold the products to consumers were not advised during their training of all the adverse side effects associated with Lash Boost.

96.     "Fields and Rodan are quick to say they are doctors, not businesswomen."[47]  As practicing dermatologists, they knew or should have known about the well-known side effects associated with prostaglandin analogs.

97.     Rodan + Fields could have advised consultants, updated their website, including new packaging materials, or modified their product label to advise Plaintiffs of the adverse effects.

**F.     Online Consumer Complaints About Lash Boost are Prolific**

98.     Upset consumers who used Lash Boost and were not warned about the adverse side effects before purchasing it/and or using it have become more vocal about their own negative experiences with this product.

99.     A sampling of Lash Boost Consumer Reviews and Complaints reveals symptoms and experiences consistent with the known side effects of prostaglandin analogs[48] [49]:

---

[47] Kate Vinton, *How Two Dermatologists Built a Billion Dollar Brand In Their Spare Time*, Forbes (June 1, 2016), https://www.forbes.com/sites/katevinton/2016/06/01/billion-dollar-brand-proactiv-rodan-fields/#3c6d892c3bfe.

[48] *Rodan And Fields Lash Boost Serum Reviews and Complaints,* Rodan and Fields, https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-serum-37045/RT-C.html (last visited Apr. 13, 2018).

[49] Pissed Consumer, *Rodan and Fields – Not worth the pain or risk*, Rodan and Fields (Mar. 2, 2018), https://rodan-and-fields.pissedconsumer.com/not-worth-the-pain-or-risk-201803021201352.html.

### Rodan and fields lash boost

Jan 24

Used this product for one month.Had slight eye itchiness but tried to "deal with it" to see the results. Well a month in and my left eye will NOT stop tearing. Terrible !There is something dangerous in this product!

**Read more ›**

AN   **Molly**

I completely agree. I used it ONCE 68 hours ago. Both of my eyes are still extremely red, itchy and puffy. I'm extremely disappointed and frustrated.

AN   **Beth**

I AGree!! Aweful redness scratchy eyes. Not safe people look at the ingredients

50

### Rodan and Fields - Works but if you stop using lashes fall out.

Jan 21

Using R and F was good while using it.Shortly after I stopped, I noticed that my lashes were falling out at a rapid rate. I now have far less lashes than I started with. Really a shame.Cannot recommend.

**Read more ›**

AN   **Rocg**

The prostaglandin masculinizes your hair follicles.Elsewher, it triggers different reactions.

AN   **Anna**

I think I am experiencing that now with the Lash Boost. I noticed my eyelids and under eye area getting way way darker. I also started getting headaches and discomfort behind...

51

### Rodan and Fields - HELP

Jan 18

I posted a previous review stating that my eyelids have been swollen for two-plus weeks after using the **Lash boost** ONE time. Somebody please tell me how I can get the swelling on my eyelids to go down. .

**Read more ›**

52

---

[50] Anonymous, Comment to *Rodan And Fields Lash Boost Serum Reviews and Complaints,* Rodan and Fields (Jan. 24, 2018), https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-serum-37045/RT-C.html

[51] Anonymous, Comment to *Rodan And Fields Lash Boost Serum Reviews and Complaints,* Rodan and Fields (Jan. 21, 2018), https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-serum-37045/RT-C.html

[52] Haleigh_darive_32, Comment to *Rodan And Fields Lash Boost Serum Reviews and Complaints,* Rodan and Fields (Jan. 18, 2018), https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-serum-37045/RT-C.html

## Rodan and Fields - Not worth the pain or risk.

Mar 02

 1.0  Details

2 comments

Ad closed

Repo

Why t

I got a free lash boost in a contest from one of my many friends that sell Rodan and Fields.I will say that after two months of using it my lashes are very long but now I have dark lids, very dry eyes that are red all the time, some cysts and permanent eyes discomfort.

53

### Rodan and Fields - Lash boost side effects

Jan 07

I was excited to try **lash boost** as I know people that have had great results. I used the product as directed about 4 or 5 times. Obviously I did not use it long enough to see results however I did have dry, irritated eyes, headache and blurry vision. Once I made the...

**Read more ›**

AN  **Anonymous**
Glad you were able to identify the root of the side effects. Historically the return process for this company has been well below satisfactory standards. Wishing you good luck...

54

### Rodan and Fields - Lash boost sunken eyes dark circles

Nov 18, 2017

**Lash boost** made my lashes long and dark. It also made my skin dark and gave me a sunken in eye look. It is made from a synthetic version of latisse which does the same thing. I have aged ten years in 7 weeks. But I have lashes. NOT WORTH IT! RF needs to put warnings on...

**Read more ›**

  **Rocg**
Prostaglandin lowers occular fat.Masculanizes your hair follicles.Darkens hazel or light brown eyes. Causes hair growth.Darkens skin.Leaves permanent dry eye damages.Stopusing...

  **Tif**
I am so sad that under my eyes have also turned black ! I look like I'm constantly tired or have smeared mascara underneath my eyes!! Every time I sneeze my eye twitches somet...

55

---

53 Rodan and Fields – Not worth the pain or risk, *supra.*
54 Anonymous Comment to *Rodan And Fields Lash Boost Serum Reviews and Complaints,* Rodan and Fields (Jan. 7, 2018), https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-serum-37045/RT-C.html
55 Anonymous, Comment to *Rodan And Fields Lash Boost Serum Reviews and Complaints,* Rodan and Fields (Nov. 18, 2017), https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-serum-37045/RT-C.html

100.    Despite numerous consumer reviews and complaints on the internet, and complaints from individual consumers to Rodan + Fields reporting negative side effects associated with Lash Boost, Rodan + Fields persists in its deceptive marketing and fraudulent scheme while unknowing consumers continue to purchase the product and face the risk of potentially serious consequences including: vision impairment, change of eye color, cysts, drooping eyelids, eye discoloration and extreme irritation, as these samples describe.

101.    Even if Rodan + Fields were to claim that they were unaware of these side effects when they launched Lash Boost, which is not plausible given the above facts and circumstances, they had a duty to continue to warn consumers of post-marketing use in practice.  Rather than updating their warnings, Rodan + Fields persisted in their omissions, and persisted in not advising the public of the serious side effects associated with Lash Boost use.

## V.    CLASS ACTION ALLEGATIONS

102.    This matter is brought by Plaintiffs on behalf of themselves and those similarly situated. Plaintiffs identify two state Classes, which prays for relief, including but not limited to monetary damages, pursuant to California and New York consumer protection statutes ("Subclass").

103.    Plaintiffs reserve the right to modify or amend the class definitions at or before they move for class certification.

a.   **The California State Class** is brought on behalf of all persons in California who purchased Lash Boost and/or paid for Lash Boost manufactured, distributed, and/or marketed by Rodan + Fields from the launch of Lash Boost in 2016 until the present ("California Class").

b.   **The New York State Class** is brought on behalf persons in New York who purchased Lash Boost and/or paid for Lash Boost manufactured, distributed, and/or marketed by Rodan + Fields from the launch of Lash Boost in 2016 until the present ("New York Class").

104.   Plaintiffs allege statewide class action for consumer protection, pursuant to Rule 23(c)(5)[56], on behalf of the consumers of the states of California and New York.

105.   Counts 1-7 are properly brought and should be maintained as class actions under Rule 23(a)[57] and (c)(5)[58], satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

A.   **Numerosity:** Joinder of the individual member of the Class would be impracticable.  Lash Boost has been purchased by hundreds of persons in the state of California.

B.   **Commonality**: Questions of law and fact are common within the Class and predominate over questions affecting only individual members, including, *inter alia*, the following:

i.   Whether Rodan +Fields' representations regarding Lash Boost misled reasonable consumers;

ii.   Whether the product packaging and marketing was unlawful, unfair, and deceptive;

iii.   Whether Rodan + Fields knew or should have known about the adverse side effects associated with its product;

---

[56] Fed. R. Civ. P. 23(c)(5)
[57] Fed. R. Civ. P. 23(a)
[58] Fed. R. Civ. P. 23(c)(5)

iv.     Whether Rodan + Fields knew or should have known of the side effects associated with other prostaglandin analogs;

v.      What representations Rodan + Fields should have made to consumers on its label;

vi.     Whether consumers had a reasonable expectation that the product had adverse side effects.

C.      **Typicality:** Plaintiffs' claims are typical of the claims of the Class because their claims arise from the same course of conduct by Rodan + Fields; i.e. unfair, unlawful, deceptive, and fraudulent marketing practices related to Lash Boost.  Plaintiffs are typical class representatives because, like all members of the Class, they purchased Lash Boost and Rodan + Fields omitted and did not disclose the adverse side effects associated with Lash Boost.

D.      **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Their consumer protection claims, fraud, and malpresentation claims are common to all members of Class and Plaintiffs have a strong interest in vindicating their rights-the same rights at stake within the Class.  In addition, Plaintiffs and the proposed Class are represented by counsel who are competent and experienced in both consumer protection and class action litigation.

106.    Counts 1-10 are properly brought and should be maintained as class actions under Rule 23(b)[59] and (c)(5)[60].  We are seeking certification under 23(b)(3)[61].

107.    Certification is appropriate under Rule 23(b)(3)[62] because common issues of law and fact predominate over any questions affecting only individual members of the Class.  Common

---

[59] Fed. R. Civ. P. 23(b).
[60] Fed. R. Civ. P. 23(c)(5).
[61] Fed. R. Civ. P. 23(b)(3).
[62] *Id.*

questions include, but are not limited to, the following: (1) Whether Rodan + Fields' representations regarding the most common consumer products misled reasonable consumers; (2) Whether the product packaging and marketing was unlawful, unfair, and deceptive; (3) Whether Rodan + Fields knew or should have known about the adverse side effects associated with its product; (4) Whether Rodan + Fields knew or should have known of the side effects associated with other prostaglandins; (5) What representations Rodan + Fields should have made to consumers on its label; and (6) Whether consumers had a reasonable expectation that the product had adverse side effects.  Thus, the common issues of law and fact pertaining to the Class predominates over any individual issues.  In addition, bringing this action as a Class is a superior mechanism for resolving this controversy because, *inter alia*:

a.      Individual joinder of each consumer within Class is wholly impracticable;

b.      The economic damages suffered by the individual members may be relatively modest compared to the expense and burden of individual litigation;

c.      The court system would benefit from the class actions because individual litigation would overload court dockets and magnify the delay and expense to all parties;

d.      The class action device presents far fewer management difficulties;

e.      The class action device provides the benefit of comprehensive supervision by a single court with economies of scale; and

f.      Individual litigation by members would not be effective in stopping Rodan + Fields' unfair and unlawful conduct which will continue unless stopped by these class actions.

108.    Notice of the Class could be provided by publication in state and local publications, through the creation of a public website, and through individual mailings.

109.    To the extent notice is required under California's consumer protection statutes, Plaintiffs will, or have, complied.

1

## VI.    VIOLATIONS OF CALIFORNIA AND NEW YORK LAW

2      110.    Plaintiffs incorporate by reference, each and every prior and subsequent allegation of

3   this Complaint as if fully restated here.

4      111.    Plaintiffs Lewis and Buckingham, and the California Class bring this action against

5   Rodan + Fields for violations of California's False Advertising law, Unfair Competition law, and fraud

6   (Counts 1-5).

7      112.    Plaintiffs Hufnagel and Gattuso, and the New York Class bring this action against

8   Rodan + Fields for violations of New York state consumer protection statutes and fraud (Counts 6-7).

9      113.    The allegations alleged herein deal exclusively with the harm caused by Rodan + Fields

10  through its unfair and unlawful marketing practices to consumers.  Plaintiffs' Consumer Protection

11  Claims deal exclusively with consumer protection and the money spent by consumers for a product

12  which, as labeled and marketed, should not have been on the market.

13

14  **COUNT ONE — (CALIFORNIA SUBCLASS) VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE §§17200, *ET SEQ.***

15      114.    Plaintiff Lewis and Plaintiff Buckingham incorporate by reference, each and every prior

16  and subsequent allegation of this Complaint as if fully restated here.

17      115.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.,

18  protects both consumers and competitors by promoting fair competition in commercial markets for

19  goods and services.  California's Unfair Competition Law is interpreted broadly and provides a cause

20  of action for any unlawful, unfair, or fraudulent business act or practice.  Any unlawful, unfair, or

21  fraudulent business practice that causes injury to consumers falls within the ambit of California's

22  Unfair Competition Law.

23      116.    Rodan + Fields engaged in substantial advertising and marketing of Lash Boost within

24  the State of California.

117.    Because of Rodan + Fields' unlawful, unfair, and fraudulent business practices, Plaintiffs Lewis and Buckingham and the Class were misled into purchasing and using Lash Boost. Plaintiffs Lewis and Buckingham relied, to their detriment, on Rodan + Fields' false representations that Lash Boost was safe.  The Class was uniformly exposed to Rodan + Fields' unlawful and unfair business practices.  Plaintiff Lewis, Plaintiff Buckingham, and the Class seek an award of full restitution, and/or for such other relief as may be set forth below or ordered in the discretion of the Court.

**COUNT TWO — (CALIFORNIA SUBCLASS) VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW CAL. BUS. & PROF. CODE §§17500, *ET SEQ.***

118.    Plaintiffs Lewis and Plaintiff Buckingham incorporate by reference, each and every prior and subsequent allegation of this Complaint as if fully restated here.

119.    Plaintiffs Lewis and Buckingham and the Class bring a cause of action against Rodan + Fields pursuant to Cal. Bus. & Prof. Code §§ 17500, et seq. ("California's False Advertising Law").

120.    The purpose of California's False Advertising Law is to protect consumers from false or misleading advertising and promotions.  California's False Advertising Law prohibits the false or deceptive advertising of products to consumers in any form of media, when the company placing the advertisement knows, or should have known, that the advertisement would be likely to mislead consumers about a material aspect of a product.

121.    Rodan + Fields uses advertising on its website and through various outlets (including Facebook) to sell and market Lash Boost directly to consumers.  The advertisements and labeling are deceptive, or misleading within the meaning of California's False Advertising Law, because they omit adequate warnings and fail to fully disclose material facts to consumers about the existence, severity, and duration of symptoms and adverse side effects associated with using the product.

122.    In making its product labeling and disseminating statements alleged herein, Rodan + Fields knew or should have known that the statements were untrue or misleading, and that it acted in

violation of California's False Advertising Law.  Rodan + Fields knew or should have known the of the existence, severity, and duration of symptoms and adverse side effects associated with using the product.

123.    Rodan + Fields' misrepresentations of material facts related to Lash Boost, as detailed above, constitute false and misleading advertising in violation of California's False Advertising Law.

124.    Through its deceptive and unlawful marketing practices, Rodan + Fields has improperly and illegally obtained money from Plaintiff Lewis, Plaintiff Buckingham, and the Class.

125.    Pursuant to California's False Advertising Law, specifically Cal. Bus. & Prof. Code § 17535, Plaintiff Lewis, Plaintiff Buckingham, and the Class seek an award of full restitution of all monies wrongfully acquired by means of Rodan + Fields' false advertising, and/or for such other relief as may be set forth below or ordered in the discretion of the Court.

**COUNT THREE — (CALIFORNIA SUBCLASS) INTENTIONAL MISREPRESENTATION (FRAUD)**

126.    Plaintiffs Lewis and Buckingham incorporate by reference, each and every prior and subsequent allegation of this Complaint as fully restated here.

127.    Rodan + Fields misrepresented to consumers the adverse side effects associated with Lash Boost in its advertising, on its website, in its product packaging, product labeling, and sales and marketing materials, including social media, by concealing and not disclosing the adverse side effects associated with Lash Boost, and prostaglandin analogs in particular.

128.    Rodan + Fields also affirmatively misrepresented that Lash Boost does not affect the structure or function of lashes, and was found to be safe and non-irritating.

129.    Rodan + Fields knew that an ingredient in Lash Boost was associated with adverse side effects and failed to disclose them to consumers.  Rodan + Fields perpetrated this fraud and misrepresentation by claiming that Lash Boost was safe and ophthalmologist tested.

130.    Rodan + Fields' misrepresentations were intended to defraud and induce reliance. Failing to disclose adverse side effects associated with Lash Boost translated into higher profits for Rodan + Fields than would have been possible if Rodan + Fields had fully disclosed the nature and extent of the adverse side effects associated with Lash Boost.

131.    Rodan + Fields' misrepresentations were material.  Plaintiffs would not have purchased Lash Boost or would have paid less for the product if Plaintiffs knew of the adverse side effects associated with Lash Boost that were not disclosed.

132.    Rodan + Fields intended to induce consumers to rely on its misrepresentations.  Rodan + Fields knew that by not disclosing all of adverse side effects it would sell more Lash Boost products.  Rodan + Fields had reason to expect that Plaintiffs and consumers would rely on their misrepresentations.

133.    Plaintiffs relied upon the misrepresentations and nondisclosures when purchasing Lash Boost.

134.    Plaintiffs were justified in relying upon Rodan + Fields misrepresentations when purchasing Lash Boost.

135.    Given that the harmful side effects associated with Lash Boost were not fully disclosed by Rodan + Fields before consumers purchased and used the product, Plaintiffs were justified in their failure to discover the fraud until they were harmed.

136.    Plaintiffs were harmed by Rodan + Fields' misrepresentations because it sold Lash Boost to plaintiffs without disclosing harmful side effects.  The harms plaintiffs suffered were not disclosed by Rodan + Fields as potential adverse side effects.  As such, there is a nexus between the harm suffered and the fraudulent concealment.

137.    The who, what, where, when, and how of the alleged misrepresentations can be found above at paragraphs 77-97, respectively.

138.    Wherefore, Plaintiffs prayers for relief are set forth below.

**COUNT FOUR — (CALIFORNIA SUBCLASS) NEGLIGENT MISREPRESENTATION**

139.    Plaintiffs Lewis and Buckingham incorporate by reference, each and every prior and subsequent allegation of this Complaint as fully restated here.

140.    Rodan + Fields misrepresented to the Class the adverse side effects associated with Lash Boost in its advertising, on its website, in its product packaging, labeling, and sales and marketing materials by concealing and not disclosing the adverse side effects associated with Lash Boost, and prostaglandin analogs in particular.

141.    Rodan + Fields had no reasonable grounds to believe that these misrepresentations were true; particularly when the side effects associated with prostaglandin analogs are well established within the ophthalmologist community, and Rodan + Fields claims that Lash Boost was ophthalmologist tested; and when Latisse, a primary competitor of Rodan + Fields' Lash Boost, lists the side effects associated with Latisse, that also contains a prostaglandin analog; and when Rodan + Fields consumers are vocal about their complaints and side effects associated with using the product.

142.    Rodan + Fields intended to induce Plaintiffs and consumers to rely on its misrepresentations.

143.    Plaintiffs relied upon the misrepresentations and nondisclosures when purchasing Lash Boost, and were justified in relying upon Rodan + Fields misrepresentations when purchasing Lash Boost.

144.    Plaintiffs were harmed by Rodan + Fields misrepresentations because it sold Lash Boost to plaintiffs without disclosing harmful side effects.  The harms plaintiffs suffered were not disclosed by Rodan + Fields as potential adverse side effects.  Wherefore, Plaintiffs prayers for relief are set forth below.

**COUNT FIVE — (CALIFORNIA SUBCLASS) FRAUDULENT CONCEALMENT**

145.    Plaintiffs Lewis and Buckingham incorporate by reference, each and every prior and subsequent allegation of this Complaint as fully restated here.

146.     Rodan + Fields concealed and suppressed facts including the nature, extent, and duration of adverse side effects associated with Lash Boost.  These facts were material.

147.     Rodan + Fields was under a duty to disclose the suppressed facts.  This duty to disclose arose from their relationship as a manufacturer and seller of consumer goods.  Because Rodan + Fields was selling products to consumers it had a duty to disclose facts material to the transaction; namely the adverse side effects associated with using the Lash Boost product.

148.     Rodan + Fields intentionally concealed and suppressed facts regarding the adverse side effects associated with Lash Boost with the intent to defraud Plaintiffs and consumers.

149.     At the time that Plaintiffs purchased Lash Boost Plaintiffs were unaware of the adverse side effects associated with Lash Boost.  Plaintiffs would not have purchased Lash Boost if they had known of the concealed and suppressed facts regarding the adverse side effects.

150.     As a result of the concealment and suppression of the material facts, relating to the adverse side effects associated with Lash Boost, Plaintiffs were injured in that they experienced a side effect associated with prostaglandin analogs that was not disclosed by Rodan + Fields in its product packaging, on the product label, or in its advertising.

151.     As a proximate cause of the misrepresentations, concealment, suppressions of fact, and nondisclosures, Rodan + Fields caused Plaintiffs to purchase Lash Boost, and after the transaction occurred, plaintiffs suffered damage.

**COUNT SIX — (NEW YORK SUBCLASS) VIOLATIONS OF NEW YORK'S CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES LAW, N.Y. GEN. BUS. LAW §§ 349-350, ET SEQ**

152.     Plaintiffs Hufnagel and Gattuso incorporate by reference, each and every prior and subsequent allegation of this Complaint as fully restated here.

153.     This claim is brought by plaintiffs on behalf of residents of New York who are members of the class.

154.     New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law §§ 349, et seq., makes it unlawful to engage in any false advertising in the conduct of any business, trade, or commerce.

155.     Plaintiffs and class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

156.     Defendant is a "person," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349(b).

157.     Rodan + Fields' acts and practices in advertising, marketing, and selling Lash Boost were directed at consumers and had a broad impact on consumers.  As alleged throughout this Complaint, Rodan + Fields engaged in deceptive and unlawful marketing in violation of N.Y. Gen. Bus. Law § 349 by representing to the New York Subclass while concealing and misrepresenting the existence, severity, and duration of symptoms and adverse side effects associated with using the product.  These acts and practices were deceptive because they were likely to mislead a reasonable consumer acting reasonably under the circumstances.  For example, Rodan + Fields' concealment and misrepresentation regarding the existence, severity, and duration of symptoms and adverse side effects associated with using the product would cause a reasonable consumer to believe that the product was safe and did not have any permanent side effects.

158.     Such acts and practices caused injury to Plaintiff and the New York Subclass.

159.     In addition, Rodan + Fields engaged in false advertising pursuant to N.Y. Gen. Bus. Law § 350-a, on its labeling, direct-to-consumer advertisements, and various other forms of promotion by misstating and failing to fully disclose the existence, severity, and duration of symptoms and adverse side effects associated with using the product.

160.     Rodan + Fields' false advertising of Lash Boost had an impact on the public at large.

161.    Plaintiffs Hufnagel, Gattuso, and the New York Subclass did not have a reasonable opportunity to discover facts about the nature and full extent of the adverse side effects associated with Lash Boost because they were not disclosed by Rodan + Fields.

162.    Plaintiffs Hufnagel, Gattuso, and the New York Subclass suffered injury as a result of Rodan + Fields' deceptive and unlawful marketing practices, including lost money from purchasing Lash Boost that was unlawfully advertised and marketed in violation of pursuant to N.Y. Gen. Bus. Law §§ 349 and 350.

163.    As a result of Rodan + Fields' violations of New York's Consumer Protection from Deceptive Acts and Practices Law, Plaintiff Hufnagel and the New York Subclass seek an order of this Court awarding the New York Subclass, *inter alia*, actual damages, full refunds of all moneys spent on Lash Boost, restitution, attorneys' fees and costs, and/or for such other relief as may be set forth below or ordered by the Court.  Plaintiffs reserve the right to seek treble damages and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

**COUNT SEVEN — (NEW YORK SUBCLASS) FRAUDULENT CONCEALMENT**

164.    Plaintiffs Hufnagel and Gattuso incorporate by reference, each and every prior and subsequent allegation of this Complaint as fully restated here.

165.    Rodan + Fields concealed and suppressed facts including the nature, extent, and duration of adverse side effects associated with Lash Boost.  These facts were material.

166.    Rodan + Fields was under a duty to disclose the suppressed facts.  This duty to disclose arose from their relationship as a manufacturer and seller of consumer goods.  Because Rodan + Fields was selling products to consumers it had a duty to disclose facts material to the transaction; namely the adverse side effects associated with using the Lash Boost product.  Further, Rodan + Fields made incomplete representations about Lash Boost and had a duty to disclose additional facts about the safety of its product.

167.    Rodan + Fields had knowledge of the suppressed facts.

168.    Rodan + Fields intentionally concealed and suppressed facts regarding the adverse side effects associated with Lash Boost with the purpose of inducing consumers to rely on their omissions and purchase Lash Boost.

169.    Plaintiffs justifiably and reasonably relied on the material omission and misrepresentations.

170.    At the time that Plaintiffs purchased Lash Boost Plaintiffs were unaware of the adverse side effects associated with Lash Boost.  Plaintiffs would not have purchased Lash Boost if they had known of the concealed and suppressed facts regarding the adverse side effects.

171.    As a result of the concealment and suppression of the material facts, relating to the adverse side effects associated with Lash Boost, Plaintiffs were injured in that they experienced a side effect associated with prostaglandin analogs that was not disclosed by Rodan + Fields in its product packaging, on the product label, or in its advertising.

172.    As a proximate cause of the misrepresentations, concealment, suppressions of fact, and nondisclosures, Rodan + Fields caused Plaintiffs to purchase Lash Boost, and after the transaction occurred, plaintiffs suffered damage.

**VII.    DEMAND FOR JURY TRIAL**

173.    Plaintiffs respectfully request a trial by jury on all claims triable as a matter of right.

**VIII.   PRAYER FOR RELIEF**

174.    WHEREFORE, Plaintiffs individually and on behalf of all those similarly situated, pray for judgment and the following relief:

a.      Certifying this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure[63] on behalf of the proposed Class described herein;

b.      Declaring Rodan +Fields' Lash Boost marketing, advertising, website, and Lash Boost label misleading and deceptive;

c.      Granting Plaintiffs, and the Class awards of actual and compensatory damages in such amount to be determined at trial and as provided by applicable law;

d.      Granting Plaintiffs, and the Class a refund of all monies acquired by Rodan + Fields by means of its unfair and unlawful marketing and/or labeling of Lash Boost;

e.      Granting Plaintiffs, and the Class awards of restitution and/or disgorgement of Rodan + Field's profit from its unfair and unlawful marketing and/or labeling of Lash Boost.

f.      Granting Plaintiffs, and the Class pre-judgment and post-judgment interest;

g.      Granting Plaintiffs, and the Class reasonable attorneys' fees and costs of suit; and

h.      Granting Plaintiffs, and the Class such other and further relief as the Court deems just and proper under the circumstances.

[63] Fed. R. Civ. P. 23.

DATED this 13th day of April, 2018.

KELLER ROHRBACK L.L.P.


By */s/ Jeffrey Lewis*
Jeffrey Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900; Fax: (510) 463-3901
jlewis@kellerrohrback.com

Juli Farris (Bar No. 141716)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
(805) 456-1496; Fax: (805) 456-1497
jfarris@kellerrohrback.com

Michael D. Woerner, *pro hac vice forthcoming*
Benjamin Gould (Bar No. 250630)
Erika M. Keech, *pro hac vice forthcoming*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900; Fax: (206) 623-3384
mwoerner@kellerrohrback.com
bgould@kellerrohrback.com
ekeech@kellerrohrback.com

**Attorneys for Plaintiffs**