**STEPTOE & JOHNSON LLP**
STEPHANIE A. SHERIDAN, State Bar No. 135910
ssheridan@steptoe.com
ANTHONY J. ANSCOMBE, State Bar No. 135883
aanscombe@steptoe.com
MEEGAN B. BROOKS, State Bar No. 298570
mbrooks@steptoe.com
Steuart Tower, 1 Market Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile:  (415) 365-6678

Attorneys for Defendant,
RODAN & FIELDS, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

BARBARA LEWIS, AKEMI
BUCKINGHAM, BOBBIE JOE HULING,
CYNTHIA WHETSELL, MARTHA MERLE,
ELAINA HUFNAGEL, TERESA GATTUSO,
ELISSA WAGNER, and DIXIE WILLIAMS,
individually and on behalf of all others
similarly situated,

Plaintiffs,

vs.

RODAN & FIELDS, LLC, a California
limited liability,

Defendant.

Case No. 4:18-cv-02248-PJH
(Consol. with No. 4:18-cv-02505-PJH)

**DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED
COMPLAINT**

Assigned To: Judge Phyllis J. Hamilton

Hearing Date:   February 20, 2019
Hearing Time:   9:00 a.m.
Courtroom:      3 – 3rd Floor

Action Filed: April 13, 2018

# **TABLE OF CONTENTS**

Page

I.      STATEMENT OF ISSUES TO BE DECIDED ...................................................................1

II.     SUMMARY OF ARGUMENT ........................................................................................1

III.    BACKGROUND AND SUMMARY OF ALLEGED FACTS ...........................................3

    A.    Lash Boost Is Different From Other Eyelash Serums..................................3

    B.    Plaintiffs' Purchases and Liability Allegations ..........................................4

    C.    What Is Not In the Consolidated Complaint ...............................................5

IV.     THIS COURT LACKS SUBJECT MATTER JURISDICTION AND SHOULD
DISMISS THIS ACTION PURSUANT TO RULE 12(b)(1) ...........................................7

    A.    Legal Standard Applicable to a Rule 12(b)(1) Motion.................................7

    B.    Plaintiffs Do Not Allege an Actual, Presently Existing, Concrete Injury...............7

    C.    Plaintiffs Do Not Allege Facts to Demonstrate the Existence of an Injury Fairly
Traceable to R+F ........................................................................................8

V.      THE CONSOLIDATED COMPLAINT FAILS TO STATE A CLAIM ...........................9

    A.    Legal Standard.............................................................................................9

    B.    The Complaint Does Not Satisfy Rule 9(b)'s Standards.............................11

        1.    Plaintiffs Fail to Allege the Circumstances of their Purchases ...................11

        2.    Plaintiffs Fail to Allege a Plausible Scientific Basis for Their Claim that
Lash Boost Causes "Serious Side Effects" ...................................12

    C.    Plaintiffs Lewis and Buckingham Fail to State a Claim Under California Law .....13

        1.    Requirements to State a Claim Under California Law................................13

        2.    The California Plaintiffs Cannot Base their Claims on An Alleged
Failure to Disclose..........................................................14

        3.    The California Plaintiffs Fail to Allege Facts Showing that R+F Acted
with Scienter.................................................................16

        4.    There Are No Allegations to Support a Violation of the UCL's
"Unlawfulness" or "Unfairness" Prongs .....................................17

        5.    The California Plaintiffs Fail to Allege that They Lack an Adequate
Remedy at Law, Requiring Dismissal of their UCL and FAL Claims .......18

        6.    Additional Reasons the California Common Law Fraud Claims Fail ........18

D.      Plaintiff Huling Has Failed to State a Claim Under the Florida FDUTPA .............19

E.      Plaintiff Whetsell Fails to State a Claim Under the Illinois ICFA .........................21

F.      Plaintiff Merle Fails to State an Claim Under Massachusetts' Chapter 93(A) .......22

G.      Hufnagel, Gattuso, and Wagner Do Not State a New York GBL Claim ................24

H.      Plaintiff Williams Fails to State a Claim Under the Washington CPA ..................25

I.      The Out-of-State Plaintiffs' Common Law Claims Also Fail ...............................26

        1.      Fraudulent Misrepresentation and Concealment Fraudulent .....................26

        2.      Negligent Misrepresentation ........................................................28

J.      Plaintiffs' RICO Claim Must Fail ...............................................................29

        1.      Plaintiffs Lack Statutory Standing to Assert a RICO Claim .....................29

        2.      Plaintiffs Fail to Allege a Racketeering Enterprise ...............................32

        3.      Plaintiffs Fail to Allege the Requisite Predicate Acts .............................33

VI.     CONCLUSION ...................................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Actimmune Marketing Litig.*, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009) ...............................31

*Alfi v. Nordstrom, Inc.*,
    No. 09cv1249 BEN, 2010 WL 5093434 (S.D. Cal. Dec. 8, 2010) ..........................................15

*Aloudi v. Intramedic Research Group*,
    729 F. App'x. 514 (9th Cir. 2017).........................................................................................12, 13

*Amar Shakti Enters. v. Wyndham Worldwide, Inc.*,
    No. 10-1857, 2011 WL 3687855 (M.D. Fla. Aug. 22, 2011) .................................................21

*Anza v. Ideal Steel Supply*,
    547 U.S. 451 (2006) ................................................................................................................31

*Armstrong v. McAlpin*,
    699 F.2d 79 (2d Cir. 1983) ......................................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................9, 10

*Azoulai v. BMW*,
    16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017)...........................................8

*Baughn v. Johnson & Johnson*,
    No. C15-5283 BHS, 2015 WL 4759151 (W.D. Wash. Aug. 12, 2015)
    (WA fraudulent concealment).................................................................................................11

*Baxter v. Intelius, Inc.*,
    No. SACV 09-1031, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010)........................................15

*Belcastro v. Burberry Ltd.*,
    No. 16-CV-1080 (VEC), 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017)....................................25

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................9, 10

*Bird v. First Alert, Inc.*,
    C 14-3585 PJH, 2015 WL 3750225 (N.D. Cal. June 15, 2015).........................................11, 18

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009).......................................................................................................8

*Bitton v. Gencor Nutrientes, Inc.*,
    654 F. App'x. 358 (9th Cir. 2016)............................................................................................11

iii.                                     Case No.: 4:18-cv-02248-PJH

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001)...........................................................................10, 11

*California Architectural Building Products Franciscan Ceramics*, 818 F.2d 1466,
    1472 (9th Cir. 1987) ...........................................................................................34

*Camasta v. Jos. A. Banks Clothiers, Inc.*,
    761 F.3d 732, 739-740 (7th Cir. 2014) ...............................................................21

*Canyon County v. Syngenia Seeds*,
    519 F.3d 969 (9th Cir. 2008)..........................................................................29, 30

*Cody Labs., v. Sebelius*,
    446 F. App'x 964 (10th Cir. 2011)........................................................................6

*Cohen v. Implant Innovations, Inc.*,
    259 F.R.D. 617 (S.D. Fla. 2008) .........................................................................20

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
    332 F. App'x 565 (11th Cir. 2009).......................................................................20

*Corral v. Carter's Inc.*,
    1:13-CV-0262 AWI SKO, 2014 WL 197782 (E.D. Cal. Jan. 16, 2014) .............12, 13

*DaCorta v. AM Retail Grp.*,
    No. 16-CV-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) .................25

*Davis v. HSBC Bank Nevada*,
    691 F.3d 1152 (9th Cir. 2012)..............................................................................15

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005)................................................................................29

*Eckler v. Wal-Mart Stores, Inc.*,
    12-CV-727-LAB-MDD, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ...................13

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014).....................................................................32, 33, 35

*Ehrlich v. BMW*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010)...................................................................9

*Eisen v. Porsche Cars North Am.*,
    No. CV 11-9405, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ...........................10

*Erickson v. Boston Scientific Corp.*,
    846 F. Supp. 2d 1085 (C.D. Cal. 2011).................................................................10

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*,
    375 F.3d 168 (2d Cir. 2004).................................................................................27

iv.    Case No.: 4:18-cv-02248-PJH

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

*Ford v. Hotwire, Inc.*,
   No. 07-cv-1312, 2007 WL 6235779 (S.D. Cal. Nov. 19, 2007) ...............................................15

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995)......................................................................................................15

*Frintzilas v. DirecTV, LLC*,
   731 F. App'x. 71 (2d Cir. 2018)...............................................................................................24

*Frye v. L'Oreal USA*,
   583 F. Supp. 2d 954 (N.D. Ill. 2008) ......................................................................................21

*Fujisawa Pharmaceutical Co. v. Kapoor*,
   14 F. Supp. 720 (N.D. Ill. 1993) .............................................................................................27

*Gallop v. Cheney*,
   642 F.3d 364 (2d Cir. 2011) ....................................................................................................10

*Garner v. Johnson & Johnson, Janssen Research and Dev.*,
   No. 1:16-CV-01494, 2017 WL 6945335 (C.D. Ill. Sept. 6, 2017).........................................27

*GMO Trust v. ICAP PLC*,
   No. 12-10293, 2012 WL 5197545 (D. Mass. Oct. 18, 2012)...................................................23

*Gomez v. Guthy-Renker*,
   Case No. EDCV 14-01425 2015 WL 4270042 (C.D. Cal. July 13, 2015) ..............................33

*Gomez v. Jelly Belly Candy Co.*,
   No. EDCV 17-00575-CJC(FFM), 2017 WL 8941167 (C.D. Cal. Aug. 18, 2017)...................18

*Haskins v. Symantec Corp.*,
   654 F. App'x 338 (9th Cir. 2016)..........................................................................................9, 12

*Haywood v. Massage Envy Fran.*,
   887 F.3d 329 (7th Cir. 2018)...............................................................................................11, 21

*Hemi Grp. v. City of N.Y.*,
   559 U.S. 1 (2010) .....................................................................................................................31

*Herrington v. Johnson & Johnson Consumer Companies*,
   No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .........................................15

*Holistic Candlers & Consumers Ass'n v. FDA*,
   664 F.3d 940 (D.C. Cir. 2012) ...................................................................................................6

*Holmes v. Secs. Investor Protection Corp.*,
   503 U.S. 258 (1992) .................................................................................................................31

*In re Bextra & Celebrex Marketing Sales Practices & Prod. Liab. Litig.*,
   MDL No. 1699, 2012 WL 3154957 (N.D. Cal. Aug. 2, 2012)...........................................31, 32

*In re Bridgestone/Firestone Tires Products Liability Litigation*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ...................................................29

*In re Chysler-Dodge-Jeep Ecodiesel Marketing, Sales, and Product Liability*
    *Litigation*,
    295 F. Supp. 3d (N.D. Cal. 2018) ............................................30, 31, 35

*In re Countrywide Fin. Mortg.-Backed Sec. Litig.*,
    No. 2:11-CV-07166-MRP, 2012 WL 10731957 (C.D. Cal. June 29, 2012)............................33

*In re Countrywide Financial Mortgage Marketing and Sales Practices Litigation*,
    601 F. Supp. 2d 1201 (S.D. Cal. 2009) ...................................................34

*In re Ditropan XL*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................7

*In re Facebook Advertising Litig.*,
    No. 5:09–cv–03043, 2010 WL 3341062*10 (N.D. Cal. Aug. 25, 2010) ...................................9

*In re General Motors Ignition Switch Litigation*,
    2016 WL 3920353 (S.D.N.Y. July 15, 2016) ...................................................30, 31

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994), *superseded by statute on other grounds as stated*
    *in SEC v. Todd*, 642 F.3d 1207 (9th Cir. 2011)...................................................10

*In re iPhone 4s Consumer Litig.*,
    637 F. App'x 414 (9th Cir. 2016)...................................................10

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab.*
    *Litig.*,
    903 F.3d 278 (3d Cir. 2018) ...................................................8

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab.*
    *Litig.*,
    No. 3:16-cv-1534 2016 WL 6824450 (N.D. Cal. Oct. 25. 2016) ...................................30

*Inman v. Am. Paramount Fin.*,
    517 F. App'x. 744 (11th Cir. 2013)...................................................11

*Jubilerer v. MasterCard Int'l*,
    68 F. Supp. 2d 1049 (W.D. Wisc. 1999)...................................................33

*Justice v. Rheem Mfg.*,
    318 F.R.D. 687 (S.D. Fla. Apr. 27, 2016) ...................................................20

*Kahama VI, LLC v. HJH, LLC*,
    No. 11-cv-2029, 2013 WL 6511731 (M.D. Fla. Dec. 12, 2013)...................................28

vi.    Case No.: 4:18-cv-02248-PJH

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001).................................................................................27

*Karakus v. Wells Fargo Bank, N.A.*,
    941 F. Supp. 2d 318 (E.D.N.Y. 2013)..................................................................25

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)........................................................................10, 12

*Kelley v. Rambus, Inc.*,
    384 F. App'x. 570 (9th Cir. 2010)........................................................................10

*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010).................................................................................21

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...............................................................16

*Kruse v. Chevrolet Motor*,
    No. CIV. A. 96-1474 1997 WL 408039 (E.D. Pa. July 17, 1997) ........................30

*Lassen v. Nissan*,
    211 F.Supp.3d 1267 (C.D. Cal. 2016)....................................................................7

*Laster v. T-Mobile USA*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd* 252 F. App'x. 777 (9th Cir. 2007) .......................9

*Lewis v. Casey*,
    518 U.S. 343 (1996) ..............................................................................................7

*Lombardo v. Johnson & Johnson Consumer Cos.*,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015).................................................................20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..........................................................................................7, 9

*Maple v. Costco Wholesale Corp.*,
    649 F. App'x. 570 (9th Cir. 2016).........................................................................26

*Marino v. Home Depot U.S.A., Inc.*,
    245 F.R.D. 729 (S.D. Fla. 2007) ..........................................................................20

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) .............................................................10, 12

*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
    62 F. Supp. 2d 236 (D. Mass. 1999) ....................................................................22

*Mato v. Aetna*,
    221 F.3d 472 (3d Cir. 2000).................................................................................29

*McLaughlin v. American Tobacco*,
   522 F.3d 215 (2d. Cir. 2008) *abrogated on other grounds by Bridge v. Phoenix
   Bond & Indemnity*, 553 U.S. 639 (2008)..................................................................30, 31

*McVicar v. Goodman Global*, No. SACV 13-1223-DOC,
   2014 WL 794585 (C.D. Cal. Feb. 25, 2014) ..............................................................9

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374, 112 S. Ct. 2031 (1992) ......................................................................18

*Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank*,
   261 F.R.D. 13 (S.D.N.Y. 2009)................................................................................11

*N. Am. Catholic Educ. Programming Found., v. Cardinale*,
   567 F.3d 8 (1st Cir. 2009) ........................................................................................11

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993)........................................................................................11

*Nguyen v. Nissan N. Am.*,
   No. 16-CV-05591-LHK, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017)...................18

*Nianni, LLC v. Fox*,
   No. 11-cv-118, 2011 WL 5357820 (M.D. Fla. Nov. 7, 2011) ..................................29

*O'Neil v. Simplicity, Inc.*,
   574 F.3d 501(8th Cir. 2009)......................................................................................8

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007).....................................................................................33

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ......................................................................16

*Philips v. Ford Motor Co.*,
   No. 14-CV-02989-LHK, 2015 WL 4111448*16 (N.D. Cal. July 7, 2015) ...............18

*Preira v. Bancorp Bank*,
   885 F. Supp. 2d 672 (S.D.N.Y. 2012) .......................................................................24

*Regents v. Principal Fin.*,
   412 F. Supp. 2d 1037 (N.D. Cal. 2006) ....................................................................19

*Reliable Automatic Sprinkler Co. v. CPSC*,
   324 F.3d 726 (D.C. Cir. 2003) ..................................................................................6

*Rice v. Sunbeam Prods., Inc.*,
   No. CV12-7923, 2013 WL 146270 (C.D. Cal. Jan. 7, 2013)....................................16

viii.                          Case No.: 4:18-cv-02248-PJH

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002) ............................................................................8

*Rizzuto v. Joy Mfg.*,
  834 F.2d 7 (1st Cir. 1987) ...............................................................................23

*Robert E. Ricciardelli Carpet Serv. v. Home Depot U.S.A.*,
  679 F. Supp. 2d 192 (D. Mass. 2009) .............................................................27

*Rodi v. S. New Eng. Sch. of L.*,
  532 F.3d 11 (1st Cir. 2008) .............................................................................27

*Rogers v. Cisco Sys.*,
  268 F. Supp. 2d 1305 (N.D. Fla. 2003) ..........................................................28

*Roppo v. Travelers Cos.*,
  100 F. Supp. 3d 636 (N.D. Ill. 2015), *aff'd sub nom. Sabrina Roppo v.
  Travelers Com. Ins.*, 869 F.3d 568 (7th Cir. 2017) ........................................11

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .............................................................10

*Sansoe v. Ford Motor Co.*,
  2017 WL 4025218 (N.D. Cal. Sept. 13, 2017) ................................................18

*Schroeder v. United States*,
  569 F.3d 956 (9th Cir. 2009) ...........................................................................18

*Shaulis v. Nordstrom, Inc.*,
  865 F.3d 1 (1st Cir. 2017) (93A) ................................................................11, 23

*Shaw v. Nissan*,
  220 F. Supp. 3d 1046 (C.D. Cal. 2016) ...........................................................33

*Shields v. Alere Home Monitoring, Inc.*,
  No. C15-2580, 2015 WL 7272672 (N.D. Cal. Nov. 18, 2015) ..........................8

*Smith v. LG Elecs.*,
  No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ..................16

*Smith v. Ramis*,
  647 F. App'x. 679 (9th Cir. 2016) ....................................................................14

*Sperling v. DSWC, Inc.*,
  699 F. App'x. 654 (9th Cir. 2017) ....................................................................10

*Stafford v. Sunset Mortg.*,
  No. C12-1877, 2013 WL 1855743 (W.D. Wash. Apr. 29, 2013) .....................26

*Stires v. Carnival Corp.*,
    243 F. Supp. 2d 1313 (M.D. Fla. 2002) ...............................................................11, 19, 20, 21

*Suckow Borax Mines Consol. v. Borax Consol.*,
    185 F.2d 196 (9th Cir. 1951) ...........................................................................................10

*Summit Tech., v. High-Line Med. Instruments Co.*,
    922 F. Supp. 299 (C.D. Cal. 1996) ...................................................................................6

*Thrasher-Lyon v. Ill. Farmers Ins.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ...............................................................................21

*Toney v. Kinsch*,
    No. 10-cv-06375, 2012 WL 567729 (N.D. Ill. Feb. 21, 2012) ......................................22

*W. Ry. Devices Corp. v. Lusida Rubber Prods.*,
    No. 06-cv-0052, 2006 WL 1697119 (N.D. Ill. June 13, 2006) .......................................22

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ...........................................................................................7

*Water and Sanitation Health, Inc. v. Rainforest All.*,
    No. C15-75RAJ, 2015 WL 12657110 (W.D. Wash. Dec. 29, 2015) ...............................11

*Wessa v. Watermark Paddlesports, Inc.*,
    No. C06-5156 FDB, 2006 WL 1418906 (W.D. Wash. May 22, 2006) .......................11, 27

*Whitson v. Bumbo*,
    No. C07-05597, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) .........................................8

*Wigod v. Wells Fargo Bank*,
    673 F.3d 547 (7th Cir. 2012) ...........................................................................................11

*Williams v. Purdue Pharma.*,
    297 F. Supp. 2d 171 (D.D.C. 2003) ...................................................................................8

*Withers v. eHarmony, Inc.*,
    No. CV 09-2266-GHK RCX, 2011 WL 8156007 (C.D. Cal. Mar. 4, 2011) .....................9

**California Cases**

*Alliance Mortg. v. Rothwell*,
    10 Cal. 4th 1226 (Cal. 1995) ...........................................................................................19

*B.L.M. v. Sabo & Deitsch*,
    55 Cal. App. 4th 823 (1997) .............................................................................................14

*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (2006) .........................................................................................14

*Berryman v. Merit Property Mgmt.*,
  152 Cal. App. 4th 1544 (2007)........................................................................17

*Bower v. AT & T Mobility, LLC*,
  196 Cal. App. 4th 1545 (2011)........................................................................19

*Cadlo v. Owens-Illinois, Inc.*,
  125 Cal. App. 4th 513 (2004)..........................................................................14

*Cel-Tech Commc'ns v. L.A. Cellular Tel.*,
  20 Cal. 4th 163 (1999)....................................................................................17

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*,
  68 Cal. App. 4th 445 (1998)............................................................................19

*Hill v. Roll Int'l*,
  195 Cal. App. 4th 1295 (2011)........................................................................15

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009)....................................................................................13

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011)....................................................................................13

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003)..........................................................................13

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494 (1999)..........................................................................17

*Lopez v. Nissan N. Am.*,
  201 Cal. App. 4th 572 (2011)..........................................................................19

*Martin v. Cty. of L.A.*,
  51 Cal. App. 4th 688 (1996)............................................................................18

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009)............................................................................ *passim*

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993)......................................................................................9

*Morgan v. AT&T Wireless Svcs.*,
  177 Cal. App. 4th 1235 (2009)........................................................................15

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
  223 Cal. App. 4th 1105 (2014)........................................................................14

*Prudential Home Mortg. v. Superior Court*,
  66 Cal. App. 4th 1236 (1998)..........................................................................18

xi.                              Case No.: 4:18-cv-02248-PJH

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

*Ross v. Kirner*,
   172 P.3d 701 (2007) ...................................................................................28

*Rubenstein v. The Gap, Inc.*,
   14 Cal. App. 5th 870, 876–77 (2017).......................................................14

*Scripps Clinic v. Superior Court*,
   108 Cal. App. 4th 917 (2003) ...................................................................17

*State Farm Fire & Cas. v. Super. Court*,
   45 Cal. App. 4th 1093 (1996) ...................................................................17

*Vega v. Jones, Day, Reavis & Pogue*,
   121 Cal. App. 4th 282 (2004) ...................................................................19

*Wells Fargo Bank v. FSI, Financial Solutions, Inc.*,
   196 Cal. App. 4th 1559 (2011) .................................................................18

*Wilson v. Century 21 Great W. Realty*,
   15 Cal. App. 4th 298 (1993) .....................................................................19

**Other State Cases**

*Alejandre v. Bull*,
   159 Wash. 2d 674 (2007) ..........................................................................29

*Arlington Pebble Creek, LLC v. Campus Edge Condo. Assn.*,
   232 So. 3d 502 (Fla. 1st Dist. App. 2017), *reh'g denied* (Jan. 9, 2018), *review
   denied*, SC18-237, 2018 WL 3301498 (Fla. July 5, 2018) .......................27

*Atkinson v. Rosenthal*,
   598 N.E.2d 666 (Mass. App. Ct. 1992).....................................................23

*Austin v. Ettl*,
   286 P.3d 85 (Wash. App. Ct. 2012) ..........................................................28

*Avery v. State Farm Mut. Auto. Ins.*,
   835 N.E.2d 801 (Ill. 2005) ........................................................................21

*Bannister v. Agard*,
   5 N.Y.S.D.3d 114, 115 (2d Dep't 2015) ...................................................27

*Barbara's Sales, Inc. v. Intel Corp.*,
   879 N.E.2d 910 (Ill. 2007) ........................................................................22

*Berenguer v. Warner-Lambert Co.*,
   No. 02-05242, 2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003) .............20

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

*Brandt v. CremaLita Mgmt.*,
    No. 600566/04, 2006 N.Y. Misc. LEXIS 4101 (Sup. Ct. N.Y. Cty. June 9,
    2006) ............................................................................................................................. 25

*Carlile v. Harbour Homes, Inc.*,
    194 P.3d 280 (Wash. App. Ct. 2008) ....................................................................... 27

*Cumis Ins. Soc'y. v. BJ's Wholesale Club, Inc.*,
    918 N.E.2d 36 (Mass. 2009) ..................................................................................... 28

*Doe v. Dilling*,
    888 N.E.2d 24 (Ill. 2008) .......................................................................................... 27

*Don Slack Ins. v. Fidelity & Cas.*,
    385 So. 2d 1061 (Fla. Dist. Ct. App. 1980) .............................................................. 28

*First Midwest Bank v. Stewart Title Guar*,
    843 N.E.2d 327 (Ill. 2006) ........................................................................................ 29

*Fox Associates, Inc. v. Robert Half Int'l*,
    777 N.E.2d 603 (Ill. App. Ct. 2002) ......................................................................... 29

*Gale v. Int'l Bus. Machines Corp.*,
    781 N.Y.S.2d 45 (2nd Dep't 2004) ............................................................................ 25

*Gilchrist Timber Co. v. ITT Rayonier, Inc.*,
    696 So. 2d 334 (Fla. 1997) ........................................................................................ 28

*Goshen v. Mutual Life Insurance Company of New York*,
    774 N.E.2d 1190 (N.Y. App. Ct. 2002) ..................................................................... 25

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*,
    105 Wash.2d 778, 719 P.2d 531 (1986) .................................................................... 26

*Holiday Resort Cmty. v. Echo Lake Assocs.*,
    135 P.3d 499 (Wash. Sup. Ct. 2006) ......................................................................... 26

*Hollywood Trucking, Inc. v. Watters*,
    895 N.E.2d 3 (Ill. App. Ct. 2008) .............................................................................. 28

*Huffstetler v. Our Home Life Ins.*,
    65 So. 1 (Fla. 1914) ................................................................................................... 27

*Jackson v. Esurance Ins.*,
    412 P.3d 299 (Wash. App. Div. 2017) ...................................................................... 26

*Levings v. Forbes & Wallace, Inc.*,
    396 N.E.2d 149 (Mass. App. Ct. 1979) ..................................................................... 23

xiii.                                                   Case No.: 4:18-cv-02248-PJH

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

*Macias v. HBC of Fla., Inc.*,
    694 So.2d 88 (Fla. 3d DCA 1997) ........................................................................20

*Mulligan v. QVC, Inc.*,
    888 N.E.2d 1190 (Ill. 2008) ................................................................................21

*Oliveira v. Amoco Oil Co.*,
    776 N.E.2d 151 (Ill. 2002) ..................................................................................21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    647 N.E.2d 741 (N.Y. App. Ct. 1995) .................................................................24

*PMP Assocs. v. Globe Newspaper Co.*,
    321 N.E.2d 915 (Mass. 1975) .............................................................................23

*Porras v. StubHub, Inc.*,
    No. C12-12252012 ...............................................................................................15

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (Ill. 2002) ..................................................................................22

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. 2d DCA 2006), *review denied,* 962 So. 2d 335 (Fla. 2007) ..............19, 20

*Sing v. John L. Scott, Inc.*,
    948 P.2d 816 (Wash. Sup. Ct. 1997) ...................................................................26

*Small v. Lorillard Tobacco Co.*,
    720 N.E.2d 892 (NY App. Ct. 1999) .............................................................24, 25

*Stutman v. Chem. Bank*,
    731 N.E.2d 608 (N.Y. App. Ct. 2000) .................................................................24

*Trimble v. Washington State Univ.*,
    993 P.2d 259 (Wash. 2000) .................................................................................28

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................10

**Federal Statutes**

18 U.S.C.
    § 1961 ...................................................................................................................33
    § 1962(c) ..............................................................................................................32
    § 1964(c) ..............................................................................................................29

U.S. Code
    § 362 .....................................................................................................................12

xiv.                                              Case No.: 4:18-cv-02248-PJH

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

**California Statutes**

Cal. Bus. & Prof. Code
    §§ 17204, 17535 ................................................................................................13
    § 17500 ...........................................................................................................16

**Other State Statutes**

815 ILCS 505/10a ................................................................................................21, 22

Fla. Stat.
    § 501.211 ........................................................................................................20

Mass. Gen. Laws Ann. Chapter 93A
    §§ 2(a), 9(a) ...................................................................................................22

N.Y. Gen. Bus. Law
    §§ 349 and 350 ...............................................................................................25

RCW 19.86.090 ......................................................................................................26

**Other Authorities**

CACI Nos. 1901, 1903 ..................................................................................14, 16, 19

Fed. R. Civ. P. 8 and 9(b) ......................................................................................1

Fed. R. Civ. P. 9 ....................................................................................................10

FRCP 23(c)(4) ........................................................................................................5

http://www.oprah.com/fashion_and_beauty/does-mas cara-irritate-your-eyes-heres-
    why ..................................................................................................................16

https://www.instyle.com/beauty/eyes/best-mascaras-sensitive-eyes .............................16

https://www.rodanandfields.com/shop/product/enhlsh01#usage ...................................4

Restatement (Second) of Torts § 552(1) ....................................................................28

United States Constitution Article III, § 2 ....................................................................7

United States Constitution Article III ..........................................................1, 7, 8, 15

xv.                                    Case No.: 4:18-cv-02248-PJH

MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE:**  On February 20, 2018 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court, at 1301 Clay Street, Oakland, California, Defendant Rodan & Fields, LLC ("R+F") will and hereby does move for an order dismissing in its entirety the Consolidated Complaint ("CC") of Plaintiffs Barbara Lewis, Akemi Buckingham, Bobbie Joe Huling, Cynthia Whetsell, Martha Merle, Elaina Hufnagel, Teresa Gattuso, Elissa Wagner, and Dixie Williams ("Plaintiffs"), pursuant to Rules 8(a), 9, 12(b)(1), 12(b)(6), and 12(g) of the Federal Rules of Civil Procedure.

Plaintiffs lack standing to bring this action because they do not allege any injury caused by R+F's alleged failure to disclose side effects of Lash Boost. Plaintiffs also fail to plead sufficient facts to state a claim.  They do not allege the representations they relied on, or any facts to support their claim that R+F acted deceptively; they do not adequately allege that reasonable consumers would be deceived by R+F's actions; and they do not allege any damage.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities in support of the Motion; the Request for Judicial Notice submitted herewith; and on all other matters that may be judicially noticed or produced at the hearing of this matter.

DATED: October 26, 2018                    STEPTOE & JOHNSON LLP

By: /s/ *Stephanie Sheridan*
                                Stephanie Sheridan
                                Anthony J. Anscombe
                                Meegan B. Brooks
                                Attorney for Defendant
                                RODAN & FIELDS, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      STATEMENT OF ISSUES TO BE DECIDED**

1)      Do Plaintiffs have Article III or statutory standing to bring this action, where they do not allege that Lash Boost failed to meet their expectations, that it was not worth the amount they paid, or that it caused them any physical injury?

2)      Have Plaintiffs stated a claim in compliance with Fed. R. Civ. P. 8 and 9(b) where:

        a)      Their fraud-based claims do not allege with particularity the circumstances of the purported fraud, the statements they viewed and the omissions they relied on, or facts suggesting that they would have seen additional disclosures?

        b)      Plaintiffs' Unfair Competition Law and False Advertising Law claims fail because they have not alleged that they lack an adequate remedy at law; and Plaintiffs have not alleged facts to support a violation of existing statutory law, an unfair act or practice, or deception?

        c)      Plaintiffs' Counts under the consumer protection statutes of California, Florida, Illinois, Massachusetts, New York, and Washington fail to allege a deceptive act, reliance, causation, or resulting damage?

        d)      Plaintiffs' claims for fraudulent concealment, fraudulent misrepresentation, and/or negligent misrepresentation fail because they do not allege facts to support justifiable reliance, falsity, scienter, an intent to induce reliance or cause deception, or damages?

        e)      Plaintiffs' claims for negligent misrepresentation fail under California, Florida, and Washington law, which do not permit such claims to be based on omissions; and where the economic loss rule forecloses claims for negligent misrepresentation under Illinois and Washington law?

        g)      Plaintiffs' claims under the Racketeer Influence and Corrupt Organization Act ("RICO") do not allege facts to support statutory standing, the existence of a fraudulent scheme, or a criminal enterprise?

**II.      SUMMARY OF ARGUMENT**

        This Court should dismiss Plaintiffs' action under Rule 12(b)(1) because Plaintiffs lack standing, and under Rule 12(b)(6) because they have failed to state a claim.

The nine Plaintiffs wanted longer-looking, fuller-looking eyelashes, so they purchased ENHANCEMENTS Lash Boost ("Lash Boost"), an eyelash-conditioning serum sold by Rodan & Fields, LLC ("R+F") that makes eyelashes appear longer and fuller.[1]  Plaintiffs do not claim that Lash Boost failed to make their eyelashes appear longer and fuller.  Instead, Plaintiffs complain that the product can cause serious side effects that R+F did not disclose.  They have not alleged a plausible scientific basis to support a causal relationship between Lash Boost and these serious side effects.  Plaintiffs also do not claim to have reviewed the warnings that R+F did provide in multiple locations, including on packaging, on the product website, and in promotional materials.

This is not a personal injury action.  Plaintiffs do not allege that Lash Boost caused them to experience serious side effects.  Plaintiffs also do not claim that the product had an economic value of less than they paid, or that they face a concrete risk of future harm.  Rather, this is a classic no-injury product liability case.  Plaintiffs claim that the marketing of Lash Boost led them to expect it would be one thing (a product with no potential for side effects) when in fact it was something else (a product with a potential for side effects).  Plaintiffs claim that the mere *potential* for side effects constitutes an *actual* injury.

The Consolidated Complaint (CC) purports to bring twenty causes of action under the laws of six states and RICO, but each claim fails for similar reasons.  Plaintiffs fail to plead their fraud-based claims in conformity with Rule 9(b).  The CC lacks required factual details, including the dates of Plaintiffs' purchases and key information about the representations and omissions that allegedly caused them to buy Lash Boost.  Plaintiffs do not allege scientific facts to show that Lash Boost actually causes serious side effects, or that R+F knew of such side effects.  Plaintiffs also fail to plead any RICO claim as they have not pled facts showing the commission of predicate acts or existence of a criminal enterprise.  To the contrary, Plaintiffs' own allegations concede that

---

[1] The nine Plaintiffs reside in and purport to bring claims under the laws of the following states:
- California: Barbara Lewis and Akemi Buckingham
- Florida: Bobbie Joe Huling
- Illinois: Cynthia Whetsell
- Massachusetts: Martha Merle
- New York: Elaina Hufnagel, Teresa Gattuso, and Elissa Wagner
- Washington: Dixie Williams

1    a criminal enterprise did not exist.

2    **III.    BACKGROUND AND SUMMARY OF ALLEGED FACTS**

3         **A.    <u>Lash Boost Is Different From Other Eyelash Serums</u>**

4         This case involves an eyelash conditioning serum, Lash Boost, which enhances the

5    appearance of eyelashes.    Lash Boost's labeling and promotional communications send a

6    consistent message:  Lash Boost is intended to ***beautify*** eyelashes—to change their appearance.

7    *See, e.g.,* CC ¶ 2 ("enhance the ***appearance*** of eyelash volume and length"); *id.* ¶ 122 ("get the

8    ***appearance*** of . . . longer-***looking*** lashes").

9         Lash Boost's marketing stands in contrast to that of Latisse®, a prescription drug

10   mentioned 34 times in the CC, which explicitly claims to increase the size and thickness of

11   eyelashes.    CC ¶¶ 6–7, 83, 86-87, 94–98, 215, 288.    Latisse contains bimatoprost, an active

12   ingredient specifically marketed as promoting eyelash growth.  CC ¶¶ 94–98.  Lash Boost does not

13   contain bimatoprost.  Lash Boost contains many ingredients, but Plaintiffs here have focused on

14   one:  isopropyl cloprostenate ("IC").  IC is not bimatoprost.  The European Union's Cosmetic

15   Ingredient Database (CosIng) classifies IC as a "cosmetic ingredient" for use as a "hair

16   conditioning agent."    *See* RJN, Exhibit A.  Plaintiffs do not allege a plausible scientific basis to

17   suggest that all "prostaglandin analogs" (a term used to describe a broad class of compounds

18   which includes bimatoprost and IC) have the same, or even similar, effects on the body.  Plaintiffs

19   acknowledge that "prostaglandins and their analogs, including Isopropyl Cloprostenate . . . are not

20   banned from cosmetics in the United States."  *Id.* ¶ 8.  Plaintiffs also do not contend that Lash

21   Boost is a drug, and do not challenge the legality of using IC as an ingredient.  *Id.* ¶ 16 n.19 ("This

22   action does not allege that Lash Boost is subject to FDA regulation or should have been regulated

23   by the FDA.").

24        Like most cosmetics, Lash Boost may cause irritation for some users, especially when not

25   used as directed.  R+F's website and the Lash Boost packaging currently warn:

26             WARNINGS:  [¶] For external use only.  Avoid getting in the eye; in the event of
             direct contact rinse with cool water.  ***If you develop irritation or swelling,***
27             ***discontinue product usage.  If irritation is significant or in the first instance of***
             ***any swelling, consult your physician***.  If you're pregnant or nursing, being treated
28             for any eye-related disorder, undergoing cancer treatment, prone to dry eyes or

styes, consult your physician before use.  If you notice irregularities in appearance of lashes, discontinue use. Keep out of reach of children.

*See* CC ¶ 107 (emphasis added); https://www.rodanandfields.com/shop/product/enhlsh01#usage Notes.  Previous warnings stated: "For external use only.  Avoid getting in the eye; in the event of direct contact, rinse with cool water.  If irritation persists, consult your physician.  Consult with your physician if you're pregnant or nursing, being treated for any eye-related disorder or actively undergoing cancer treatment. Keep out of reach of children." CC ¶ 106.

R+F also provides detailed use instructions on the Lash Boost product page and on product packaging, which warn users of potential irritation, and to stop use if irritation occurs:

> For some, a mild tingling sensation may occur upon application.  It should improve within a few minutes and disappear completely with continuous use.  ***Discontinue use if tingling, irritation, and/or redness persists***."

CC ¶ 100, emphasis added.  The Lash Boost website contains additional warnings.  *See, e.g.*, *id.* ¶ 133 ("[I]f you do experience some adverse effects, please discontinue use and seek medical advice."); ¶ 131 ("[I]f anyone has a health concern or is hesitant about using [Lash Boost], they may review the ingredient list with their doctor and utilize the patch test prior to use"); ¶ 125 n.55 (the cited link states, "some consumers may report temporary tingling or redness . . . *if any tingling, itching or redness persists or is not tolerable, discontinue use and seek medical advice.*") (emphasis in original).

## B.   Plaintiffs' Purchases and Liability Allegations

Plaintiffs claim to have purchased Lash Boost, and uniformly allege that they did not know that it could cause:  "change in iris color, eyelid drooping, itchy eyes, eye discoloration, thinning eyelashes/loss of eyelash hair, eye sensitivity, eye infections, cysts, and vision impairment."  *See, e.g.,* CC ¶¶ 120, 123–32.  Plaintiffs each claim that at some time "after" or "following" their use of Lash Boost, they experienced some form of eye irritation.  CC ¶¶ 25–26, 31, 38–39, 45, 52, 58, 62, 66, 70.  Plaintiffs do not actually allege that Lash Boost caused their eye irritation.  Instead, they claim that they would not have purchased it if they had known that Lash Boost *could* cause the allegedly serious side effects.  *Id.* ¶¶ 23, 30, 37, 44, 51, 57, 61, 65, 69, 116.

Plaintiffs do not claim to have read any of R+F's warnings, but acknowledge that Lash

1   Boost's advertising, website, and packaging *do* warn of irritation.  CC ¶¶ 100, 102, 106–07.

2   Notwithstanding the presence of warnings about "significant irritation," "swelling," and

3   "irregularities in appearance of lashes," Plaintiffs contend that consumers would "reasonably

4   conclude that the product was safe and non-irritating." *Id.* ¶¶ 107, 113.

5           Plaintiffs claim that R+F and its "independent sales consultants" formed a criminal

6   enterprise with the common purpose of selling Lash Boost "without fully disclosing its adverse

7   side effects to consumers."  CC ¶¶ 383–84, 389.  The CC notes that R+F's consultants are

8   independent contractors who help market and sell R+F's products, but points to nothing sinister

9   about the relationship between R+F and the consultants.  *Id.* ¶ 74.  Nonetheless, the CC claims

10  R+F and its consultants engaged in mail and wire fraud through the use of online advertisements

11  for Lash Boost, and the shipments of the Lash Boost tubes.  *Id.* ¶¶ 416–22.  Plaintiffs further

12  allege that R+F perpetrated this scheme through a criminal enterprise formed with its consultants.

13  *Id.* ¶ 395.  Specifically, Plaintiffs claim that, by promoting Lash Boost using R+F-designed or

14  approved marketing materials, R+F's consultants became "unwitting co-conspirators" in this

15  alleged fraudulent scheme.  *Id.*  Plaintiffs claim that this fraud caused "economic damages in that

16  they did not receive what they paid for when purchasing Lash Boost," and that R+F "wrongfully

17  deprived [them] of their money." *Id.* ¶ 430.

18          Each Plaintiff purport to bring claims on behalf of a subclass of Lash Boost purchasers in

19  their home state—California, Florida, Illinois, Massachusetts, New York, and Washington.  They

20  assert claims under each state's consumer protection laws, and for common law fraud (fraudulent

21  concealment, fraudulent misrepresentation, and/or negligent misrepresentation).  Plaintiffs also

22  purport to bring claims on behalf of a nationwide class pursuant to RICO. In the alternative to the

23  nationwide class, Plaintiffs seek to represent a nationwide "issue class" pursuant to FRCP 23(c)(4)

24  to resolve "whether the label is misleading and whether the warnings were inadequate." *Id.* ¶ 156.

25      **C.      What Is Not In the Consolidated Complaint**

26          Plaintiffs allege that they "relied on Rodan + Fields' omissions," CC ¶ 121, but do not

27  identify any *affirmative representation* by R+F that they saw or relied on.  In fact, Plaintiffs

28  appear to disavow reliance on affirmative statements.  *Id.*  ("While Plaintiffs relied on Rodan +

1  Fields' omissions, Rodan + Fields also issued affirmative misrepresentations about Lash Boost.

2  These misrepresentations are discussed because they help to show Rodan + Fields' state of mind,

3  among other issues.").  Given that Plaintiffs did not read the warnings and other information that

4  R+F actually provided, they have not alleged facts to support an inference that they would have

5  seen the additional warnings that they contend R+F should have given.

6        As to side effects other than irritation, Plaintiffs have not alleged facts to support an

7  inference that Lash Boost causes those side effects.  Plaintiffs cite documents pertaining to the side

8  effects of Latisse, but they say nothing as to Lash Boost or IC.  The only allegations in the CC

9  relating to IC come from a warning letter issued seven years ago by the FDA to a manufacturer of

10  different lash products.  CC ¶¶ 5, 11, 83, 111 (discussing Lifetech Warning Letter (Apr. 18,

11  2011).)  Plaintiffs' representation that the FDA made findings about IC (*see, e.g.,* CC ¶ 5, 11) in

12  this prior warning letter to a different company is misleading.  The FDA's letter does not state that

13  IC or the products at issue there actually cause side effects, much less the specific ones these

14  Plaintiffs claim to be worried about.  Rather, that letter only states there may be "potential adverse

15  events associated with prostaglandin analogs for ophthalmic use."  FDA's statements are neither

16  scientific findings nor formal agency actions with any binding legal effect.[2]  As shown in public

17  filings, Lifetech, the recipient of the warning letter, responded to the FDA, agreeing to change its

18  marketing claims, but not its product formulation.  RJN, Exh. B.  The FDA took no further action.

19  Products at issue in the warning letter are still being sold today, with IC still listed as an

20  ingredient. RJN, Exh. C.

21        Plaintiffs also quote several purported customer complaints found on the Internet.  CC

22  ¶ 140.  These unidentified customers discuss irritation such as redness and dryness (which R+F

23  warned about), but not any of the serious alleged side effects that Plaintiffs claim R+F should have

24  disclosed.  These complaints do not provide scientific evidence that Lash Boost causes these or

25  any other side effects.  In sum, the CC does not show that IC or Lash Boost carry actual risks

---

26        [2] *See Summit Tech.*, *v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 306 (C.D. Cal. 1996);
27  *Cody Labs.*, *v. Sebelius*, 446 F. App'x 964, 969 (10th Cir. 2011); *Holistic Candlers & Consumers
    Ass'n v. FDA,* 664 F.3d 940, 944–45 (D.C. Cir. 2012); *see also Reliable Automatic Sprinkler Co.
28  v. CPSC*, 324 F.3d 726, 731 (D.C. Cir. 2003).

1    beyond those already disclosed.

2    **IV.    THIS COURT LACKS SUBJECT MATTER JURISDICTION AND SHOULD**
3    **DISMISS THIS ACTION PURSUANT TO RULE 12(b)(1)**

4    A.    <u>Legal Standard Applicable to a Rule 12(b)(1) Motion</u>

5    Federal courts may only adjudicate "cases" and "controversies."  U.S. Const. art. III, § 2.

6    To establish standing under Article III of the United States Constitution, a plaintiff must plead

7    facts to demonstrate three things:  (1) that he suffered an injury-in-fact that is "concrete and

8    particularized . . . [and] actual or imminent, not conjectural or hypothetical";  (2) the injury is

9    fairly traceable to the action of the defendant; and  (3) the injury will likely be redressed with a

10   favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

11   "[N]amed plaintiffs who represent a class must allege and show that they personally have

12   been injured, not that injury has been suffered by other, unidentified members of the class to

13   which they belong and which they purport to represent."  *In re Ditropan XL*, 529 F. Supp. 2d

14   1098, 1107 (N.D. Cal. 2007) (quoting *Lewis v. Casey*, 518 U.S. 343, 347 (1996)). Plaintiffs bear

15   the burden of establishing standing, and if they fail to do so, dismissal is mandatory under Fed. R.

16   Civ. P. 12(b)(1).  *See Lujan*, 504 U.S. at 561; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d

17   1136, 1139 (9th Cir. 2003).

18   B.    <u>Plaintiffs Do Not Allege an Actual, Presently Existing, Concrete Injury</u>

19   Plaintiffs have not pled facts to demonstrate that they have sustained an injury in fact.

20   Their claims derive entirely from an Article III non-sequitur:  R+F failed to provide warnings

21   about side effects that they never experienced.  This Court should reject Plaintiffs' attempt to

22   "recast no-injury products-liability claims (which are not cognizable) as consumer fraud claims."

23   *Lassen v. Nissan,* 211 F.Supp.3d 1267, 1281 (C.D. Cal. 2016).

24   Plaintiffs assert that Lash Boost presents a Class C pregnancy risk, but that risk has caused

25   Plaintiffs no harm.  CC ¶ 22, 85, 111.  None of Plaintiffs was pregnant or breastfeeding, nor do

26   they claim that they trying to become pregnant.  *Id.* ¶¶ 20, 27, 34, 41, 48, 53, 59, 63, 67.

27   Moreover, Plaintiffs concede that Lash Boost's previous and current label advises consumers not

28   to use Lash Boost while pregnant or nursing.  *Id.* ¶¶ 106–07.

1       Courts have consistently dismissed claims where the plaintiff has not suffered harm from a

2  product, but merely claims that she would not have purchased a product based on its potential to

3  cause injury.  *See, e.g.*, *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958–60 (9th Cir. 2009) (Plaintiff

4  could not establish standing as to alleged risk of hearing loss caused by iPods, where he did not

5  claim to have suffered hearing loss).[3]  The Third Circuit recently reiterated "what might heretofore

6  have been obvious":  "a plaintiff does not have Article III standing when she pleads economic

7  injury from the purchase of a product, but fails to allege that the purchase provided her with an

8  economic benefit worth less than the economic benefit for which she bargained."  *In re Johnson &*

9  *Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 290 (3d Cir.

10  2018); *see also id.* at 281("buyer's remorse, without more, is not a cognizable injury").

11      **C.**    **Plaintiffs Do Not Allege Facts to Demonstrate the Existence of an Injury**

12            **Fairly Traceable to R+F**

13       Even if Plaintiffs had plausibly alleged that Lash Boost caused their irritation, that

14  allegation still would not establish standing because they base their claims on economic injuries,

15  not physical injuries.  *See Azoulai v. BMW*, 16-CV-00589-BLF, 2017 WL 1354781 *4 (N.D. Cal.

16  Apr. 13, 2017) (despite allegations of physical injuries, "Plaintiffs claim only contract damages

17  and consumer fraud[, so] the Court must evaluate whether Plaintiffs have alleged facts showing

18  injury in fact derived from those theories.").  Plaintiffs' only alleged injury here is that had they

19  "been aware of these possible side effects before purchasing Lash Boost, [they] would not have

20  purchased or used the product."  *See, e.g.*, CC ¶ 23.  Plaintiffs lack Article III standing because

21  they have not identified an "injury" fairly traceable to R + F.

22       The CC does not identify any representations or omissions that induced reliance, causing

23  Plaintiffs' injuries.  ***Plaintiffs do not claim to have actually read the Lash Boost warnings,***

24  ***labeling or advertising***.  Nor do they claim to have visited R+F's website or social media, read its

25

26     [3] *See also, e.g. O'Neil v. Simplicity, Inc.,* 574 F.3d 501(8th Cir. 2009); *Shields v. Alere Home Monitoring, Inc.*, No. C15-2580, 2015 WL 7272672 *9 (N.D. Cal. Nov. 18, 2015); *Whitson v.*

27  *Bumbo*, No. C07-05597, 2009 WL 1515597 *4–5 (N.D. Cal. Apr. 16, 2009); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002); *Williams v. Purdue Pharma.*, 297 F. Supp. 2d 171

28  (D.D.C. 2003).

marketing, or read or listened to representations from R+F consultants.  They have not identified where or how R+F should have given better or additional warnings, and have pled no facts to suggest that they would have seen or heard such warnings.  Plaintiffs' claim that they were "not aware that Lash Boost could have . . . side effects," CC ¶ 21, does not demonstrate the existence of an injury causally linked to R+F's alleged conduct.  *Lujan*, 504 U.S. at 560–61 ("the injury has to be fairly trace[able] to the challenged action of the defendant."); *Mirkin v. Wasserman,* 5 Cal. 4th 1082, 1093 (1993) (causation for omissions-based claims requires allegation that "had the omitted information been disclosed, [they] would have been aware of it and behaved differently").

Courts routinely deny plaintiffs standing where they purport to base claims on statements or omissions on which they did not rely. *See, e.g., Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal of UCL and CLRA claims where plaintiff "did not allege that she read and relied on a specific misrepresentation by Symantec"); *Laster v. T-Mobile USA,* 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005), *aff'd* 252 F. App'x. 777 (9th Cir. 2007) ("While Plaintiffs meticulously describe the allegedly misleading advertisements . . . none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction *as a result* of [them].").[4]

## V.      THE CONSOLIDATED COMPLAINT FAILS TO STATE A CLAIM

### A.      <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S at 678 (citing *Twombly*, 550 U.S. at 556).  "[A] plaintiff's obligation to provide the 'grounds' of his

---

[4]  *See also Ehrlich v. BMW*, 801 F. Supp. 2d 908, 919–20 (C.D. Cal. 2010); *McVicar v. Goodman Global*, No. SACV 13-1223-DOC, 2014 WL 794585, *6 (C.D. Cal. Feb. 25, 2014); *Withers v. eHarmony, Inc.*, No. CV 09-2266-GHK RCX, 2011 WL 8156007 *3 (C.D. Cal. Mar. 4, 2011); *In re Facebook Advertising Litig.*, No. 5:09–cv–03043, 2010 WL 3341062*10 (N.D. Cal. Aug. 25, 2010)

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Thus, "a complaint that merely 'tenders naked assertions devoid of further factual enhancement' fails to" survive a motion to dismiss.  *Gallop v. Cheney,* 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678).

Additionally, under Rule 9(b), claims sounding in fraud must allege "the who, what, when, where, and how' of the misconduct charged."  *Kearns,* 567 F.3d at 1124 (citing *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003)).  Plaintiffs must plead facts to "demonstrate the falseness of the charged statements."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549–53 (9th Cir. 1994), *superseded by statute on other grounds as stated in SEC v. Todd,* 642 F.3d 1207 (9th Cir. 2011); *see also In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415 (9th Cir. 2016); *Sperling v. DSWC, Inc.*, 699 F. App'x. 654, 655 (9th Cir. 2017).  Rule 9(b)'s requirements serve "to deter [plaintiffs] the filing of complaints as a pretext for the discovery of unknown wrongs" and "to 'prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.' "  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

That Plaintiffs have asserted omissions-based claims does not relieve them of their obligation to satisfy Rule 9(b).  *See Kearns,* 567 F.3d at 1126–27; *Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009).  "[P]laintiff[s] must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information."  *Eisen v. Porsche Cars North Am.,* No. CV 11-9405, 2012 WL 841019 *3 (C.D. Cal. Feb. 22, 2012) (citing *Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)); *see also Erickson v. Boston Scientific Corp.,* 846 F. Supp. 2d 1085, 1092 (C.D. Cal. 2011).

Rule 9(b) applies to eighteen of the CC's twenty Counts, including their RICO claims.[5]

---

[5] *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (UCL, CLRA); *Kelley v. Rambus, Inc.*, 384 F. App'x. 570, 573 (9th Cir. 2010) (CA negligent misrepresentation); *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 209 (9th Cir. 1951) (CA fraudulent

For the two exceptions—Count 11 (Illinois negligent misrepresentation) and Count 15 (New York GBL)—Plaintiffs fail to state claims in conformity with Rule 8.

### B.     The Complaint Does Not Satisfy Rule 9(b)'s Standards

#### 1.     Plaintiffs Fail to Allege the Circumstances of their Purchases

Rule 9(b) requires that Plaintiffs allege "the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Bird v. First Alert, Inc.*, C 14-3585 PJH, 2015 WL 3750225 *9 (N.D. Cal. June 15, 2015) ("the FAC fails to plead facts showing when the transaction occurred (other than 'the winter of 2011–2012'), when plaintiff reviewed BRK's disclosures [], what disclosures she reviewed, and why BRK's disclosures are inadequate . . . ."). Here, Plaintiffs fail to allege basic details of their purchases, such as the dates of their purchases, how they purchased Lash Boost (online or through a consultant?), or the names of any consultants whose acts, statements or omissions misled them. The CC is not "specific enough to give [R+F] notice of the particular misconduct . . . 'so that [it] can defend against the charge and not just deny that they have done anything wrong.'" *Bird*, 2015 WL 3750225 *6 (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Plaintiffs have also failed to identify: (1) the content of any representation by R+F that they viewed or relied on; (2) where the omitted information should or could have been revealed; or (3) any facts to show that Plaintiffs would have seen such representations. These deficiencies provide

---

concealment); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (FDUTPA); *Inman v. Am. Paramount Fin.*, 517 F. App'x. 744, 748 (11th Cir. 2013) (FLA fraudulent and negligent misrepresentation); *Haywood v. Massage Envy Fran.*, 887 F.3d 329, 333 (7th Cir. 2018) (IFCA); *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 644 (N.D. Ill. 2015), *aff'd sub nom. Sabrina Roppo v. Travelers Com. Ins.*, 869 F.3d 568 (7th Cir. 2017) (ILL fraudulent concealment and misrepresentation); *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 571 (7th Cir. 2012) (ILL fraudulent concealment); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017) (93A); *N. Am. Catholic Educ. Programming Found., v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009) (MA fraudulent and negligent misrepresentation); *Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank*, 261 F.R.D. 13, 22 (S.D.N.Y. 2009) (citing *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir. 1983) (NY fraudulent concealment); *Water and Sanitation Health, Inc. v. Rainforest All.*, No. C15-75RAJ, 2015 WL 12657110 *2 (W.D. Wash. Dec. 29, 2015) (CPA); *Baughn v. Johnson & Johnson*, No. C15-5283 BHS, 2015 WL 4759151 *3 (W.D. Wash. Aug. 12, 2015) (WA fraudulent concealment); *Wessa v. Watermark Paddlesports, Inc.*, No. C06-5156 FDB, 2006 WL 1418906 *2 (W.D. Wash. May 22, 2006) (WA negligent misrepresentation); *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x. 358, 363 (9th Cir. 2016) (RICO).

1    additional bases for dismissal.  *See, e.g., Kearns*, 567 F.3d at 1126; *see also Haskins v. Symantec*

2    *Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016); *Marolda,* 672 F. Supp. 2d at 1001 (dismissing

3    omissions claim under Rule 9(b) where plaintiff "fail[ed] to plead with particularity how and on

4    what occasion this representation was made and how it was related to the 2007 purchase.").

### 2.    Plaintiffs Fail to Allege a Plausible Scientific Basis for Their Claim that Lash Boost Causes "Serious Side Effects"

7    Plaintiffs contend that R+F failed to disclose that Lash Boost, and/or IC, causes several

8    serious side effects, such as "droopy eyelids" and "reactivate herpes."  CC ¶¶ 60, 80.  Plaintiffs

9    have not, however, alleged scientific facts to show that Lash Boost actually causes these

10   conditions.  Absent scientific evidence to show that Lash Boost causes these conditions, R+F

11   could have no obligation to provide warnings.  *Corral v. Carter's Inc.*, 1:13-CV-0262 AWI SKO,

12   2014 WL 197782 *4 (E.D. Cal. Jan. 16, 2014) ("to establish the 'Fact' that the [products] sold by

13   Defendant pose the *risk* of infant harm, Plaintiff's must allege at least some evidence that the use

14   of *Defendant's* product, as directed, increases the frequency with which the harm will occur.")

15   Indeed, without scientific evidence the Lash Boost actually causes these side effects, the warnings

16   sought by Plaintiffs would cause the product to be misbranded.  The FDCA does not permit R+F

17   to warn of non-existent side effects.  *See* 21 U.S. Code § 362 ("A cosmetic shall be deemed to be

18   misbranded . . . If its labeling is false or misleading in any particular.")

19   Plaintiffs' allegations as to other products, and as to the 2011 FDA warning letter, do not

20   satisfy Plaintiffs' pleading burden, because they fail to show that ***Lash Boost*** causes these

21   conditions.  Moreover, their allegation that R+F lacked evidence of safety does not prove the

22   opposite—that Lash Boost is unsafe.

23   The Ninth Circuit's recent decision in *Aloudi v. Intramedic Research Group*, 729 F. App'x.

24   514, 516 (9th Cir. 2017) demonstrates how a plaintiff must plead evidentiary facts to support

25   medical allegations.  The court affirmed dismissal of plaintiff's claim that defendant falsely

26   promoted its product, JavaSLIM, as promoting rapid weight loss.  The plaintiff argued that the

27   product's primary weight loss ingredient, chlorogenic acid, is a common ingredient in coffee,

28   which does not cause rapid weight loss.  The plaintiff also cited a study concerning the effects of

chlorogenic acid.   The court found these allegations insufficient to demonstrate the falsity of JavaSLIM's representations:   "None of these allegations involves scientific testing of the actual JavaSLIM product or a product with the same active ingredients as JavaSLIM, in a dose similar to that in JavaSLIM."   *Id.*   Other courts have dismissed claims for similar reasons, where plaintiffs have based their claims on different products, ingredients, or formulations.   *See, e.g., Eckler v. Wal-Mart Stores, Inc.*, 12-CV-727-LAB-MDD, 2012 WL 5382218 *6–7 (S.D. Cal. Nov. 1, 2012) (scientific studies did not lend "facial plausibility" to plaintiff's claims when none of the studies addressed the product at issue; "it's not really arguing the merits to claim . . . that the studies on which [plaintiff] relies didn't even test the actual formulation of [the product at issue]"); *Corral*, 2014 WL 197782 *4 (granting motion to dismiss where, "In short, no studies cited in Plaintiff's FAC link the use of *Defendant's* product according to the instructions provided with increase in the frequency of infant death").

## C.   Plaintiffs Lewis and Buckingham Fail to State a Claim Under California Law

### 1.   Requirements to State a Claim Under California Law

#### (a)   Pleading Requirements Applicable to the UCL, FAL, and CLRA

Statutory standing under the UCL, FAL, and CLRA does not merely require a consumer to "be exposed to an unlawful practice."   Rather, the unlawful practice must "caus[e] or result[] in some sort of damage."   *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) (CLRA); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (UCL).   Plaintiffs only have statutory standing where they have: (1) suffered an "injury in fact"; and (2) "lost money or property as a result of the unfair competition."   *See* Bus. & Prof. Code §§ 17204, 17535; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 324 (2011).   The FAL's and CLRA's standing requirements generally mirror the UCL's.   *Id.* at 322; *Meyer,* 45 Cal. 4th at 641 (for standing under the CLRA, "a consumer must experience some damage, some type of increased costs").

Additionally, a plaintiff cannot state fraud-based claims under the UCL, FAL, or CLRA unless she alleges facts showing that the practice would likely deceive a reasonable consumer— that is, "that a significant portion of the general consuming public or *of targeted consumers*, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.

App. 4th 496, 508 (2003) (emphasis added).  Thus, Plaintiffs must allege facts showing what a reasonable consumer believes with respect to the issue.  *Rubenstein v. The Gap, Inc*., 14 Cal. App. 5th 870, 876–77 (2017); *see also Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006) (holding that a "mere[]" conclusion that "the public would likely be deceived" is insufficient "without pleading any facts showing the basis for that conclusion").

### (b)   Pleading Requirements Applicable to Common Law Fraudulent Concealments and Negligent Misrepresentation

In California, common law fraudulent concealment requires "(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . . . intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage."  *Smith v. Ramis*, 647 F. App'x. 679, 681 (9th Cir. 2016) (quoting *Prakashpalan v. Engstrom, Lipscomb & Lack,* 223 Cal. App. 4th 1105, (2014)); *see also* CACI No. 1901.

The elements of a claim for negligent misrepresentation mirror those for fraudulent misrepresentation, but do not require intent to induce reliance.  *See Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004).  A plaintiff must allege: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages."  *Smith*, 647 F. App'x. at 681 (quoting *B.L.M. v. Sabo & Deitsch,* 55 Cal. App. 4th 823, (1997)); *see also* CACI No. 1903.

### 2.   The California Plaintiffs Cannot Base their Claims on An Alleged Failure to Disclose

Plaintiffs purport to base each of their California statutory and common law claims on R+F's alleged failure to adequately disclose potential side effects caused by Lash Boost.  Their CC does not set forth facts to support their claims.

1    As to the "side effects" that Plaintiffs do not claim to have experienced, Plaintiffs lack

2 statutory standing for the same reasons they lack Article III standing:  They have no injury, and

3 also have not alleged causation.  *See Herrington v. Johnson & Johnson Consumer Companies*, No.

4 C 09-1597 CW, 2010 WL 3448531 *8 (N.D. Cal. Sept. 1, 2010) (citing *Morgan v. AT&T Wireless*

5 *Svcs.*, 177 Cal. App. 4th 1235, 1258 (2009)) (failure to disclose presence of carcinogens in baby

6 products was not material, where plaintiffs did not claim to have been injured as a result).

7    As to the irritation that Plaintiffs do claim to have experienced, Plaintiffs admit that R+F

8 *does* disclose this irritation risk.  *See, e.g.*, CC ¶ 100, 106, 107 (emphasis added).  Reasonable

9 consumers—especially those concerned about alleged side effects—would have reviewed these

10 disclosures carefully and understood that irritation may occur.  *See, e.g., Hill v. Roll Int'l*, 195 Cal.

11 App. 4th 1295, 1305 (2011) (reasonable consumers would not be deceived by product packaging

12 directing consumers to separate website containing allegedly omitted information); *Freeman v.*

13 *Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("Freeman argues that his complaint adequately

14 alleges that members of the public would be deceived, since it is likely that the reader will review

15 the large print and ignore the qualifying language in small print.  This argument is not

16 persuasive.")[6]

17    And precisely because Plaintiffs do not claim to have read R+F's existing disclosures, they

18 cannot show that additional disclosures would have mattered.  Indeed, Plaintiffs have not

19 identified what R+F should have said that would have prevented the purported harm.

20    Plaintiffs argue that R+F's warnings are insufficient, because advising consumers to

21 discontinue use if they experience irritation "does not provide consumers with the information to

22 make an informed decision before they experience an adverse side effect."  CC ¶ 111.  This is

23 irrelevant, because they do not claim to have read this statement.  It is also wrong, because R+F's

24 _____

25    [6] *See also Porras v. StubHub, Inc.*, No. C12-12252012 WL 3835073 *6 (N.D. Cal. Sept. 4,
2012) (same); *Davis v. HSBC Bank Nevada*, 691 F.3d 1152, 1162 (9th Cir. 2012) ("Given the

26 advertisement's legible disclaimer that '[o]ther restrictions may apply,' no reasonable consumer
could have believed that if an annual fee was not mentioned, it must not exist."); *Alfi v.*

27 *Nordstrom, Inc.*, No. 09cv1249 BEN, 2010 WL 5093434 *5 (S.D. Cal. Dec. 8, 2010) ; *Baxter v.*
*Intelius, Inc.*, No. SACV 09-1031, 2010 WL 3791487 *4 (C.D. Cal. Sept. 16, 2010); *Ford v.*

28 *Hotwire, Inc.*, No. 07-cv-1312, 2007 WL 6235779 *4 (S.D. Cal. Nov. 19, 2007).

instructions clearly communicate that side effects may occur.  Plaintiffs' allegation that someone reading Lash Boost's warnings would "reasonably conclude that the product was safe and non-irritating" (*Id*. ¶ 114) is not only irrelevant, but also wrong.  Plaintiffs did not read the warnings, but if they had, they would have seen warnings about irritation.  And even if they read nothing at all, most consumers would likely know that cosmetics used around the eye can cause irritation. *See, e.g.*, https://www.instyle.com/beauty/eyes/best-mascaras-sensitive-eyes; https://www.allure .com/story/mascara-for-sensitive-eyes; http://www.oprah.com/fashion_and_beauty/does-mas cara-irritate-your-eyes-heres-why (all last visited October 19, 2018).

Plaintiffs also argue that R+F should have disclosed: (a) side effects caused by its ingredient  IC (CC ¶¶ 2, 85, 101, 105); and (b) that IC is a prostaglandin analog, so that a doctor can provide knowledgeable advice (*id*. ¶¶ 9, 112).  Plaintiffs do not explain how an ingredient-specific warning would give customers better information than a warning about side effects of Lash Boost itself.  Further, none of the Plaintiffs claim to have discussed their use of Lash Boost with a doctor.

### 3.  The California Plaintiffs Fail to Allege Facts Showing that R+F Acted with Scienter

Plaintiffs' FAL, fraudulent concealment, and negligent misrepresentation claims each require allegations that R+F knew or should have known its representations were false or misleading, or that it acted with reckless disregard for the truth.  *See* CACI Nos. 1901, 1903; Cal. Bus. & Prof. Code § 17500; *Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964, 967, 974 n.9 (N.D. Cal. 2008).  Similarly, the UCL, FAL, and CLRA require Plaintiffs to allege "facts—as opposed to conclusory assertions—that [R+F was] aware of or had any reason to know of [these other alleged side effects] at the time of sale."  *Smith v. LG Elecs.*, No. C 13-4361 PJH, 2014 WL 989742 *11–12 (N.D. Cal. Mar. 11, 2014) (citations omitted); *see also Rice v. Sunbeam Prods., Inc.*, No. CV12-7923, 2013 WL 146270 *7 (C.D. Cal. Jan. 7, 2013) ("Because plaintiff's allegations are lacking in factual support or specificity as to defendant's knowledge of the purported defect, plaintiff's claim based on a theory of omission is insufficient."); *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1160–63 (N.D. Cal. 2011) (same).

1     Here, Plaintiffs have not alleged any facts showing that R+F knew of the purported falsity

2  of its representations.  They contend that R+F "knew, or should have known, when their product

3  was tested by an ophthalmologist, and based on overwhelming medical and scientific research, as

4  well as user experience that the prostaglandin analog ingredient in Lash Boost could cause serious

5  adverse effects and physical injury to patients using it."  CC ¶ 136.  But even the face of the CC

6  admits that R+F made efforts to warn consumers of irritation, and, as shown above, the CC does

7  not allege scientific facts demonstrating that Lash Boost causes serious side effects, or that R+F

8  knew of this.  The "scientific research" cited by Plaintiffs concerns other products—not Lash

9  Boost.  Furthermore, the customer complaints cited in the CC refer only to symptoms of irritation

10  that R+F already warns of.

11        **4.    There Are No Allegations to Support a Violation of the UCL's**

12             **"Unlawfulness" or "Unfairness" Prongs**

13     To state a cause of action based on an "unlawful" business act or practice, a plaintiff must

14  allege facts sufficient to show a violation of some underlying law.  *See Lazar v. Hertz Corp.*, 69

15  Cal. App. 4th 1494, 1505 (1999); *Berryman v. Merit Property Mgmt.,* 152 Cal. App. 4th 1544,

16  1554–55 (2007).  Plaintiffs here do not purport to base their unlawfulness claim under any other

17  statute. Their unlawfulness claim must therefore fail.

18     The CC also fails to allege any violation of the UCL's "unfairness" prong, as it does not

19  identify any activity that "significantly threatens or harms competition" or that violates a

20  legislatively-declared policy.  *Cel-Tech Commc'ns v. L.A. Cellular Tel.*, 20 Cal. 4th 163, 187

21  (1999).  Similarly, when balancing R+F's alleged conduct (lawfully advertising and selling a

22  product intended to improve the appearance of eyelashes) against the "gravity of the harm to the

23  alleged victim" (none), the balance tips strongly against Plaintiff. *State Farm Fire & Cas. v.*

24  *Super. Court,* 45 Cal. App. 4th 1093, 1103–04 (1996).  Finally, Plaintiffs have not alleged any

25  conduct by R+F that "offends an established public policy or . . . is immoral, unethical,

26  oppressive, unscrupulous or substantially injurious to consumers."  *Scripps Clinic v. Superior*

27  *Court*, 108 Cal. App. 4th 917, 939 (2003).

28

1        **5.      The California Plaintiffs Fail to Allege that They Lack an Adequate**

2                 **Remedy at Law, Requiring Dismissal of their UCL and FAL Claims**

3        "A plaintiff seeking equitable relief in California must establish that there is no adequate

4   remedy at law available." *Gomez v. Jelly Belly Candy Co.,* No. EDCV 17-00575-CJC(FFM),

5   2017 WL 8941167 *1–2 (C.D. Cal. Aug. 18, 2017) (citing *Philips v. Ford Motor Co*., No. 14-CV-

6   02989-LHK, 2015 WL 4111448*16 (N.D. Cal. July 7, 2015)); *see also Nguyen v. Nissan N. Am.*,

7   No. 16-CV-05591-LHK, 2017 WL 1330602 *5 (N.D. Cal. Apr. 11, 2017) ("Plaintiff's allegations

8   [regarding inadequacy of damages as a legal remedy] simply demonstrate that equitable remedies

9   *exist*. Plaintiff fails to explain how damages are inadequate to compensate for Plaintiff's alleged

10  harm."). This requirement follows from the well-established principle that "equitable relief is not

11  appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956,

12  963 (9th Cir. 2009); *see also Prudential Home Mortg. v. Superior Court*, 66 Cal. App. 4th 1236,

13  1249 (1998) (same); *Martin v. Cty. of L.A.*, 51 Cal. App. 4th 688, 696 (1996); *Morales v. Trans*

14  *World Airlines, Inc*., 504 U.S. 374, 381, 112 S. Ct. 2031, 2035 (1992) ("It is a 'basic doctrine of

15  equity jurisprudence that courts of equity should not act . . . when the moving party has an

16  adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'").

17       Here Plaintiffs seek restitution under the FAL and UCL for the same conduct for which

18  they seek damages under the CLRA.  CC ¶ 195.  They do not claim that damages would provide

19  an inadequate remedy at law, and do not seek any other relief under the FAL or UCL. Numerous

20  courts have dismissed claims for equitable relief under the UCL and FAL where the plaintiff is

21  pursuing damages for the same conduct.  *See, e.g., Gomez*, 2017 WL 8941167 *1–2; *Nguyen*,

22  2017 WL 1330602 *5; *Bird*, 2014 WL 7248734 *6; *Sansoe v. Ford Motor Co.*, 2017 WL 4025218

23  *2 (N.D. Cal. Sept. 13, 2017). Plaintiffs' UCL and FAL claims should similarly be dismissed.

24       **6.      Additional Reasons the California Common Law Fraud Claims Fail**

25       Plaintiffs' claims for fraudulent concealment and negligent misrepresentation fail for

26  additional reasons:

27       ***No Justifiable Reliance.***  In order to state a claim under either theory, Plaintiffs must

28  allege justifiable reliance.  *See Wells Fargo Bank v. FSI, Financial Solutions, Inc.,* 196 Cal. App.

4th 1559, 1573 (2011); *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (2011). Here, Plaintiffs fail to allege any reliance—justifiable or otherwise.

**No Affirmative Misrepresentation.**  Under California law, "[a] negligent misrepresentation claim 'requires a positive assertion,' not merely an omission." *Lopez v. Nissan N. Am.*, 201 Cal. App. 4th 572, 596 (2011) (quoting *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 1 (2004)); *Regents v. Principal Fin.,* 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006) ("California negligent misrepresentation law, however, does not impose liability for negligent omissions"). "An 'implied' assertion or representation is not enough." *Wilson v. Century 21 Great W. Realty*, 15 Cal. App. 4th 298, 306 (1993).  Plaintiffs' negligent misrepresentation claim rests on R+F's alleged failure to disclose side effects, and therefore fails.  *See*, *e.g.*, CC ¶ 214.  To the extent Plaintiffs purport to bring their negligent misrepresentation claim on a partial disclosure, this claim fails because Plaintiffs do not claim to have viewed or relied on any such representation.

**No Intent to Induce Reliance or to Deceive.**  Both fraud claims require Plaintiffs to allege that R+F intended for Lash Boost customers to rely on its alleged misrepresentations or material omissions.  *See* CACI Nos. 1901, 1903.  Fraudulent concealment requires allegations of intent to deceive—not merely to induce reliance.  *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal. App. 4th 445, 482 (1998).  Plaintiffs baldly assert that R+F intended to induce reliance and to deceive consumers, but they allege no facts to support these claims.

**No Damages.**  Finally, Plaintiffs must plead the existence of an actual monetary loss. *Alliance Mortg. v. Rothwell*, 10 Cal. 4th 1226, 1239 (Cal. 1995).  Plaintiffs allege no such damages here.  They do not claim to have paid more than Lash Boost was worth, or that the product did not perform as expected.

### D.   Plaintiff Huling Has Failed to State a Claim Under the Florida FDUTPA

"[A] consumer claim for damages under [the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)] has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. 2d DCA 2006), *review denied,* 962 So. 2d 335 (Fla. 2007).  Plaintiff Huling, the only Florida plaintiff, does not adequately allege any of these three prongs.

1    As to damages, Huling's only alleged injury—that she regrets making her purchase—is not

2    actionable under Florida law. *See, e.g., Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F.

3    Supp. 3d 1283, 1290 (S.D. Fla. 2015) ("paying premium rates is vital to her FDUTPA claim

4    because *actual* loss is a predicate to recovery under FDUTPA."); *Rollins,* 951 So. 2d at 873

5    ("FDUTPA does not provide for the recovery of nominal damages, speculative losses, or

6    compensation for subjective feelings of disappointment.") (citations omitted); *see also* Fla. Stat. §

7    501.211.  Huling does not allege how R+F caused any injury.  The FDUTPA does not specifically

8    require "reliance," but "causation is a necessary element of a claim, and 'causation must be direct,

9    rather than remote or speculative.' " *Lombardo*, 124 F. Supp. 3d at 1290 (citation omitted); *see

10   also Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 644 (S.D. Fla. 2008) ("the consumer

11   must also plead and prove that he or she was aggrieved by the unfair and deceptive act.")

12   (quoting *Macias v. HBC of Fla., Inc.*, 694 So.2d 88, 90 (Fla. 3d DCA 1997)); *Marino v. Home

13   Depot U.S.A., Inc.,* 245 F.R.D. 729 (S.D. Fla. 2007) (noting that causation was an element

14   of FDUTPA in an action based on defendant's failure to disclose information).

15   To establish causation under a FDUTPA claim, "the plaintiff must prove that 'the alleged

16   practice was likely to deceive a consumer acting reasonably *in the same circumstances*.' " *Cold

17   Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (internal

18   citation omitted) (emphasis added).  A reasonable consumer who made a purchase in the same

19   circumstances as Huling—without reading information or materials regarding a product—cannot

20   have been deceived by a defendant's failure to include certain disclosures in those statements. *See

21   Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, at *2 (Fla. Cir. Ct. July

22   31, 2003) ("[P]laintiffs must plead that they were 'exposed to the Defendants' advertising and

23   marketing materials alleged to constitute a deceptive trade practice' and that they 'suffered actual

24   damages as a result.'") (citation omitted); *Justice v. Rheem Mfg.*, 318 F.R.D. 687, 697(S.D. Fla.

25   Apr. 27, 2016) (plaintiffs could not prove causation on a classwide basis because "many

26   consumers do not review central AC system product brochures or the websites of AC

27   manufacturers, and thus would be unlikely to be exposed to a disclosure of an alleged defect").

28   Finally, Huling does not allege that her purchase took place within Florida, as required to

1   state an FDUTPA claim.  *Amar Shakti Enters. v. Wyndham Worldwide, Inc.,* No. 10-1857, 2011

2   WL 3687855 *3 (M.D. Fla. Aug. 22, 2011).

3       **E.       Plaintiff Whetsell Fails to State a Claim Under the Illinois ICFA**

4       The Illinois Consumer Fraud Act ("ICFA") proscribes deceptive and unfair practices.  To

5   state a claim under the ICFA for deceptive practices, Plaintiff must allege: "(1) a deceptive act or

6   practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the

7   occurrence of the deception in the course of conduct involving trade or commerce; and (4) actual

8   damage to the plaintiff; (5) proximately caused by the deception."  *Avery v. State Farm Mut. Auto.*

9   *Ins.*, 835 N.E.2d 801, 850 (Ill. 2005).  The CC lacks almost all of these elements: a deceptive act,

10  intent to deceive, actual damage, or causation. *See* Section IV.C, *infra*.

11      "To bring an action pursuant to the ICFA, a plaintiff must allege 'actual damages' and the

12  'actual damages must arise from purely economic injuries.'" *Thrasher-Lyon v. Ill. Farmers Ins.*,

13  861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) ("Actual damages must be calculable and measured by

14  plaintiff's loss."); *Frye v. L'Oreal USA*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008) ("Because

15  actual damages is an element of the claim, plaintiff must allege that she has been harmed in a

16  concrete, ascertainable way . . . . 'Theoretical harm is insufficient. Damages may not be predicated

17  on mere speculation, hypothesis, conjecture or whim.'"); *see also* 815 ILCS 505/10a.  Whetsell

18  claims that she bought something she would not have otherwise purchased but for R+F's alleged

19  omission, but this does not qualify as actual damage.  *Kim v. Carter's Inc.,* 598 F.3d 362, 365 (7th

20  Cir. 2010) (the element of actual damages "requires that the plaintiff suffer actual pecuniary

21  loss."); *Mulligan v. QVC, Inc.,* 888 N.E.2d 1190, 1196 (Ill. 2008); *Haywood v. Massage Envy*

22  *Fran.*, 887 F.3d 329, 333 (7th Cir. 2018); *accord Camasta v. Jos. A. Banks Clothiers, Inc.,* 761

23  F.3d 732, 739–40 (7th Cir. 2014) (affirming dismissal of ICFA claim because plaintiff failed to

24  "sufficiently plead[] that he paid more than the actual value of the merchandise he received").

25      Whetsell also fails to allege that she saw or relied on any representation by R+F.  CC ¶ 40.

26  Her bare allegation that "[t]he consumer fraud proximately caused Plaintiff's injuries," *id.* ¶ 273,

27  does not satisfy Rule 9(b). *See Camasta*, 761 F.3d at 737–38 (a representation must have been

28  made to a plaintiff before the purchase of the merchandise to be actionable under ICFA); *Oliveira*

1   *v. Amoco Oil Co.*, 776 N.E.2d 151, 155–56 (Ill. 2002). Whetsell also fails to allege facts to support

2   her boilerplate allegation that "Rodan + Fields intended to induce Plaintiffs' reliance on the

3   deception." CC ¶ 271.

4          Plaintiff Whetsell cannot save her ICFA claim by reframing it as one for an unfair practice.

5   An unfair practice must either:  (1) offend public policy; or (2) be immoral, unethical, oppressive,

6   or unscrupulous; and it must (3) cause a substantial injury to consumers.  *Robinson v. Toyota*

7   *Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002).   A practice offends public policy if "it

8   violates a standard of conduct set out by an existing statute or common law doctrine that typically

9   governs such situations."  *W. Ry. Devices Corp. v. Lusida Rubber Prods.*, No. 06-cv-0052, 2006

10  WL 1697119 *4 (N.D. Ill. June 13, 2006).   The CC identifies no such standard.   Similarly,

11  "[c]onduct is oppressive only if it imposes a lack of meaningful choice or an unreasonable burden

12  on its target." *Toney v. Kinsch*, No. 10-cv-06375, 2012 WL 567729 *7 (N.D. Ill. Feb. 21, 2012);

13  *see also Robinson*, 775 N.E.2d at 962.  The CC does not include this allegation, either.

14         Whetsell's claim also fails because she also does not claim that her purchase took place

15  within Illinois.   815 Ill. Comp. Stat. Ann. 505/10a (private right of action exists only for

16  transactions that take place "primarily and substantially" in Illinois); *Barbara's Sales, Inc. v. Intel*

17  *Corp.*, 879 N.E.2d 910, 919 (Ill. 2007).

18         **F.**      **Plaintiff Merle Fails to State an Claim Under Massachusetts' Chapter 93(A)**

19         Section 93A prohibits "Unfair methods of competition and unfair or deceptive acts or

20  practices in the conduct of any trade or commerce," and provides a private right of action to "Any

21  person . . . who has been injured" by the unfair or deceptive conduct.  Mass. Gen. Laws Ann. ch.

22  93A, §§ 2(a), 9(a).  Plaintiff Merle's Section 93A claim fails because she does not allege any

23  unfair or deceptive conduct, much less causation or reliance. *See Mass. Laborers' Health &*

24  *Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 242–43, n.5 (D. Mass. 1999) (reliance is

25  "'an essential link' in the proof of causation").   Merle, like the other Plaintiffs, does not allege

26  facts showing that R+F acted deceptively or failed to disclose anything it had a duty to disclose.

27         Merle also fails to allege an actionable injury.  The First Circuit has made clear that a claim

28  of deception or unfair practice is not, in itself, sufficient to establish a requisite injury under

22.

Chapter 93A. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 7–10 (1st Cir. 2017) ("a claim resting only on a deceptive practice . . . is insufficient").   In *Shaulis*, the plaintiff claimed that she was "induced" to make a purchase she would not have made but for the defendant's alleged misrepresentation.  *Id.* at 11.  The court rejected the plaintiff's argument, finding that it "merges the alleged deception with the injury," and that "the subjective belief as to the nature of the value received"—does not state a legally cognizable economic injury because it "fails to identify anything objective that [she] bargained for that she did not, in fact, receive." *Id.* at 11–12.

Like the plaintiff in *Shaulis*, Merle has not alleged anything to demonstrate that Lash Boost failed to provide her with the benefit that she paid for.  She claims to have experienced some dryness but does not base her claim on this.  CC ¶ 52.  She alleges no facts to demonstrate any difference in value between what she paid and what she received.  She has therefore failed to meet the requirement of 93A to plead facts showing an injury distinct from the alleged deception itself.

Merle also fails to allege unfairness, which, under Massachusetts law, is "examined under a three part test[]:  (1) whether the practice is . . . within at least the penumbra of some common-law, statutory, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."  *Rizzuto v. Joy Mfg.*, 834 F.2d 7, 8 (1st Cir. 1987). To be an "unfair" practice under Chapter 93A, the conduct "must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce," *Levings v. Forbes & Wallace, Inc.,* 396 N.E.2d 149 (Mass. App. Ct. 1979); "have an extortionate quality that gives it the rancid flavor of unfairness," *Atkinson v. Rosenthal*, 598 N.E.2d 666 (Mass. App. Ct. 1992); or fall within "some common-law, statutory or other established concept of unfairness, or rises to the level of immoral, unethical, oppressive or unscrupulous," *PMP Assocs. v. Globe Newspaper Co.,* 321 N.E.2d 915 (Mass. 1975); *see also GMO Trust v. ICAP PLC*, No. 12-10293, 2012 WL 5197545 *10 (D. Mass. Oct. 18, 2012) ("the defendant's conduct must not only be wrong, but egregiously wrong."). Plaintiff Merle has failed to allege any facts to suggest that R+F acted immorally or oppressively.

### G.      Hufnagel, Gattuso, and Wagner Do Not State a New York GBL Claim

To state a claim under GBL §§ 349 and 350, Plaintiffs Hufnagel, Gattuso, and Wagner must allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Frintzilas v. DirecTV, LLC*, 731 F. App'x. 71, 72 (2d Cir. 2018) (citing *Stutman v. Chem. Bank*, 731 N.E.2d 608 (N.Y. App. Ct. 2000)).  The New York Plaintiffs' GBL claims fail because they have not adequately alleged any misleading conduct.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 647 N.E.2d 741, 744–45 (N.Y. App. Ct. 1995) (the court may decide as a matter of law whether a reasonable consumer would be deceived by the advertisement alleged to be at issue).

Plaintiffs' GBL claims fail because Plaintiffs have not alleged any cognizable injury.  Under New York law, a plaintiff cannot allege a legally cognizable injury simply by claiming that she would not have bought an item "but for" the alleged deception.  *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (NY App. Ct. 1999).  In *Small*, the Court of Appeals upheld dismissal of § 349/§ 350 claims for failure to plead actual injury.  The plaintiffs there alleged that the defendants' deceptive practices prevented them from making "free and informed choices," and that consumers "who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury."  Plaintiffs sought recoupment of the purchase price.  720 N.E.2d at 894, 898.  Rejecting this theory, the Court of Appeals held:

> Plaintiffs' definition of injury is legally flawed.  Their theory contains no manifestation of either pecuniary or "actual" harm; plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a result of their ensuing addiction.  Indeed, they chose expressly to confine the relief sought solely to monetary recoupment of the purchase price of the cigarettes.  Plaintiffs' cause of action . . . thus sets forth deception as both act and injury.

*Id.* at 898.  Under *Small*, a plaintiff must assert a harm independent of the claimed deception.  Otherwise, the complaint merely "sets forth deception as both act and injury" and fails to assert any independent harm; there can be no "purchase price" injury if the plaintiff received a good with a value equal to or greater than what he paid for it.  *See id.* at 898–99; *see also Preira v. Bancorp*

1   *Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) (citing *Small*, holding "[T]he New York Court of

2   Appeals has expressly rejected [the argument] 'that consumers who buy a product that they would

3   not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an

4   injury under NY General Business Law §349.' ").  Plaintiffs' claim that they bought Lash Boost

5   but now wish they hadn't falls squarely under *Small* and must be dismissed.[7]  *See also Belcastro v.*

6   *Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 5991782 *4 (S.D.N.Y. Dec. 1, 2017).

7          Plaintiffs' claim that they suffered injury in the form of "lost money from purchasing Lash

8   Boost that was unlawfully advertised and marketed in violation of pursuant to N.Y. Gen. Bus. Law

9   §§ 349 and 350," CC ¶335, fares no better.  Plaintiffs do not allege what law R+F allegedly

10  violated, or any facts to support this claim for unlawfulness.

11         Plaintiffs' GBL claim also require causations—that is, that Plaintiffs suffered injury as a

12  result of R+F's alleged deceptive conduct.  *Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45,

13  47 (2nd Dep't 2004) (affirming dismissal because "[i]f the plaintiff did not see any of these

14  statements, they could not have been [the] cause of his injury, there being no connection between

15  [the] deceptive act and [the] plaintiff's injury").  As discussed above, Plaintiffs do not tie R+F's

16  allegedly deceptive conduct to an injury they personally incurred.  *See id*; *Karakus v. Wells Fargo*

17  *Bank, N.A.*, 941 F. Supp. 2d 318, 341 (E.D.N.Y. 2013) (finding no "link" between alleged error in

18  disclosure statement and purported injuries, and one plaintiff "did not even read" the statement).

19         Plaintiffs' GBL claims also fail because Plaintiffs do not claim to have made their

20  purchases within New York.  *See Goshen v. Mutual Life Insurance Company of New York*, 774

21  N.E.2d 1190, 1196 (N.Y. App. Ct. 2002) (§ 349 "was not intended to police the out-of- state

22  transactions of New York companies").

23         **H.     Plaintiff Williams Fails to State a Claim Under the Washington CPA**

24         To prevail on her CPA claim, Plaintiff Williams must show:  (1) an unfair or deceptive act

25  or practice; (2) that act or practice occurs in trade or commerce; (3) a public interest impact; (4) an

---

26  [7] To the extent Plaintiffs claim they would have still bought Lash Boost, but would have paid
27  less for it, this claim also fails.  *See DaCorta v. AM Retail Grp.*, No. 16-CV-01748 (NSR), 2018
    WL 557909 *9 (S.D.N.Y. Jan. 23, 2018); *Brandt v. CremaLita Mgmt.*, No. 600566/04, 2006 N.Y.
28  Misc. LEXIS 4101 *17, n.4 (Sup. Ct. N.Y. Cty. June 9, 2006).

injury to business or property; and (5) a causal link between the unfair or deceptive act and the injury. *Jackson v. Esurance Ins.*, 412 P.3d 299, 304 (Wash. App. Div. 2017) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*, 105 Wash.2d 778, 784–85, 719 P.2d 531 (1986)). Washington courts have held that a deceptive act must have the capacity to deceive a substantial portion of the population (*Sing v. John L. Scott, Inc.,* 948 P.2d 816, 820 (Wash. Sup. Ct. 1997)) and "misleads or misrepresents something of material importance." *Holiday Resort Cmty. v. Echo Lake Assocs.,* 135 P.3d 499, 507 (Wash. Sup. Ct. 2006).

Williams has pointed to no misleading or untrue statement made to her by R+F. Williams also fails to allege any plausible factual basis—let alone particularized facts—to establish causation or injury. *See, e.g., Maple v. Costco Wholesale Corp.*, 649 F. App'x. 570, 572–73 (9th Cir. 2016) (affirming dismissal of CPA claim, without leave to amend, for lack of causation and remanding with instructions to re-enter judgment as "with prejudice"); *Stafford v. Sunset Mortg.*, No. C12-1877, 2013 WL 1855743 *3 (W.D. Wash. Apr. 29, 2013) ("even if Plaintiff could prove . . . a deceptive act or unfair business practice, her CPA claim still fails because she does not allege specific facts regarding causation"); *see also* RCW 19.86.090. Plaintiff's claim also fails because she does not identify the consultant who allegedly sold her Lash Boost. CC ¶ 67.

To the extent Williams purports to bring an unlawfulness claim based on her formulaic recitation that R+F "engaged in deceptive and unlawful acts," (CC ¶ 352), her claim fails because Plaintiff does not identify any predicate statute that R+F violated.

## I.   The Out-of-State Plaintiffs' Common Law Claims Also Fail

### 1.   Fraudulent Misrepresentation and Concealment Fraudulent

Plaintiffs purport to bring fraudulent misrepresentation claims under Florida and Massachusetts law, based on omission and partial misrepresentation theories; fraudulent concealment claims under New York and Washington law; and a claim for "Fraudulent Concealment/Misrepresentation" under Illinois law. Plaintiffs do not allege facts to state a claim under any of these laws.

Fraudulent misrepresentation under Florida, Illinois, or Massachusetts law requires: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation

1    is false; (3) an intention that the representation induce another to act; and (4) an injury to the party

2    acting in reliance.  *Arlington Pebble Creek, LLC v. Campus Edge Condo. Assn.*, 232 So. 3d 502,

3    505 (Fla. 1st Dist. App. 2017), *reh'g denied* (Jan. 9, 2018), *review denied,* SC18-237, 2018 WL

4    3301498 (Fla. July 5, 2018); *Doe v. Dilling*, 888 N.E.2d 24, 29 (Ill. 2008) (citations omitted); *Rodi*

5    *v. S. New Eng. Sch. of L.*, 532 F.3d 11, 15 (1st Cir. 2008) (citations omitted).  "To constitute fraud,

6    a misrepresentation must be of a specific material fact that is untrue and known to be so."

7    *Huffstetler v. Our Home Life Ins.*, 65 So. 1 (Fla. 1914).  Illinois and Massachusetts law each also

8    require justifiable reliance.  *Doe v. Dilling*, 888 N.E.2d at 29; *Robert E. Ricciardelli Carpet Serv.*

9    *v. Home Depot U.S.A.*, 679 F. Supp. 2d 192, 210 (D. Mass. 2009).

10         Fraudulent concealment under Illinois, New York, and Washington law requires falsity,

11   knowledge, intent to deceive, actual and justifiable reliance, and resulting damage.  *See, e.g.,*

12   *Garner v. Johnson & Johnson, Janssen Research and Dev.*, No. 1:16-CV-01494, 2017 WL

13   6945335 *5 (C.D. Ill. Sept. 6, 2017); *Bannister v. Agard*, 5 N.Y.S.D.3d 114, 115 (2d Dep't 2015);

14   *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 285 (Wash. App. Ct. 2008); *see also Eternity Glob.*

15   *Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 186 (2d Cir 2004) (plaintiff must allege

16   "particularized facts to support the inference that the defendants acted recklessly or with

17   fraudulent intent.").

18         The out-of-state Plaintiffs have failed to state claims under their states' common laws.

19   Plaintiffs have not alleged any deceptive conduct, justifiable reliance, or resulting harm.  *See, e.g.*

20   *Wessa v. Watermark Paddlesports, Inc.*, No. C06-5156 FDB, 2006 WL 1418906 *3 (W.D. Wash.

21   May 22, 2006) ("To the extent the Plaintiffs allege an omission . . . Rule 9(b) mandates the

22   pleading set forth the type of facts omitted and the way in which the facts made the representations

23   misleading") (citing *Fujisawa Pharmaceutical Co. v. Kapoor,* 14 F. Supp. 720, 727 (N.D. Ill.

24   1993)).  Plaintiffs do not allege particularized facts to support their claim that R+F intended to

25   defraud consumers. *See, e.g., Kalnit v. Eichler*, 264 F.3d 131, 139–40 (2d Cir. 2001) (allegations

26   "that defendants were motivated to conceal" by "lucrative compensation provisions in the

27   Comcast agreement are too generalized to support scienter adequately").

28

2. **Negligent Misrepresentation**

Plaintiffs also attempt to bring negligent misrepresentation claims under Florida, Illinois, Massachusetts, and Washington law. These states have adopted the Restatement (Second) of Torts, which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).[8] With respect to each of their misrepresentation claims, Plaintiffs fail to allege an actionable misrepresentation, falsity, actual reliance, or pecuniary loss —the absence of any of which independently suffices for dismissal. *See also Rogers v. Cisco Sys.*, 268 F. Supp. 2d 1305, 1314 (N.D. Fla. 2003) (allegations that plaintiffs would have acted differently had they known the truth are not sufficient to allege reliance to state a fraud or negligent misrepresentation claim).

Plaintiff Williams' negligent misrepresentation claim under Washington law fails because "[a]n omission alone cannot constitute negligent misrepresentation, since the plaintiff must justifiably rely on a misrepresentation." *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007); *see also Trimble v. Washington State Univ.*, 993 P.2d 259, 264 (Wash. 2000) (holding that failing to discuss the downsides of an offer of employment did not create the false impression necessary to state a claim for negligent misrepresentation). Similarly, under Florida law, a claim for negligent misrepresentation requires a misrepresentation, so Plaintiff Huling's claim necessarily fails. *Don Slack Ins. v. Fidelity & Cas.*, 385 So. 2d 1061, 1063–64 (Fla. Dist. Ct. App. 1980) ("Essential elements of the tort of misrepresentation are the making of a false statement by the tortfeasor and reasonable reliance thereon by the injured party"; claim dismissed where "no communications or representations were made"); *Kahama VI, LLC v. HJH, LLC*, No. 11-cv-2029, 2013 WL 6511731

---

[8] *See also, e.g., Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 339 (Fla. 1997); *Hollywood Trucking, Inc. v. Watters*, 895 N.E.2d 3, 13 (Ill. App. Ct. 2008); *Cumis Ins. Soc'y. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 47 (Mass. 2009); *Austin v. Ettl*, 286 P.3d 85, 88–89 (Wash. App. Ct. 2012) (quoting *Ross v. Kirner*, 172 P.3d 701 (2007)).

1  *6 (M.D. Fla. Dec. 12, 2013).

2      The economic loss doctrine bars Plaintiffs' Illinois and Washington claims, limiting

3  Plaintiffs to contract remedies when a loss potentially implicates both tort and contract relief.

4  *Alejandre v. Bull*, 159 Wash. 2d 674, 680 (2007) (dismissing negligent misrepresentation claim

5  based on alleged misrepresentations about septic system); *First Midwest Bank v. Stewart Title*

6  *Guar*, 843 N.E.2d 327, 334 (Ill. 2006).  Here, Plaintiffs' claims arise from the purchase of goods,

7  and Plaintiffs allege purely economic loss associated with the goods.

8      The Florida and Illinois negligent misrepresentation claims additionally fail because the

9  CC does not adequately allege that R+F intended to induce reliance.  *Nianni, LLC v. Fox*, No. 11-

10  cv-118, 2011 WL 5357820 (M.D. Fla. Nov. 7, 2011); *Fox Associates, Inc. v. Robert Half Int'l*,

11  777 N.E.2d 603, 606 (Ill. App. Ct. 2002).

12      **J.    Plaintiffs' RICO Claim Must Fail**

13          **1.    Plaintiffs Lack Statutory Standing to Assert a RICO Claim**

14              **(a)    Injury to Business or Property**

15      All Plaintiffs have joined in Count Twenty, which purports to state a RICO claim.  To have

16  RICO standing, Plaintiffs must allege a concrete injury to "business or property" proximately

17  caused by the RICO violation.  18 U.S.C. § 1964(c).  This means "a harm to a specific business or

18  property interest," *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005), which caused a "concrete

19  financial loss," *Canyon County v. Syngenia Seeds*, 519 F.3d 969, 975 (9th Cir. 2008).  RICO's

20  statutory standing requirements preclude claims based on speculative injury.  For example, the

21  Third Circuit found that alleged overpayment for a health plan that lacked certain features the

22  plaintiffs expected was not sufficiently tangible to sustain a claim under RICO.  *Mato v. Aetna*,

23  221 F.3d 472, 488 (3d Cir. 2000); *see also In re Bridgestone/Firestone Tires Products Liability*

24  *Litigation*, 155 F. Supp. 2d 1069, 1077 (S.D. Ind. 2001).

25      Here, Plaintiffs generically allege an "economic harm" in the form of being "deprived of

26  money," but as shown above, really base their claim on disappointed expectations.  Plaintiffs do

27  not specify whether their economic harm consists of the full amount they spent on Lash Boost, or

28  merely that they paid too much for it.  In either event, they have not pled facts to support the

29.

1     existence of harm.

2           If Plaintiffs' injury consists of the full amount they paid for Lash Boost, their allegations

3 are not plausible.  They do not allege that the product failed to make their eyelashes look longer or

4 fuller.  Another court in this district recently rejected a "full price" theory for reasons equally

5 applicable to this case.  *See In re Chysler-Dodge-Jeep Ecodiesel Marketing, Sales, and Product*

6 *Liability Litigation* ("*Ecodiesel*"), 295 F. Supp. 3d (N.D. Cal. 2018).  That case involved the

7 installation of "defeat devices" that altered the vehicles' performance so they could pass emissions

8 tests.  *Id.* at 942–44.  The court found plaintiffs' "total price" theory implausible:  "Even if

9 Plaintiffs theoretically could not have purchased and leased the Class Vehicles 'but for' the

10 fraud . . . , Plaintiffs did purchase and lease the vehicles, and their use of the vehicles must be

11 considered."  *Id.* at 958 (citing *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, &*

12 *Prods. Liab. Litig.*, No. 3:16-cv-1534 2016 WL 6824450 *17 (N.D. Cal. Oct. 25. 2016) ("Class

13 Members could only be entitled to a full refund of the purchase price if they returned their vehicles

14 in the same condition they received it. Such a scenario is virtually inconceivable as it is highly

15 unlikely Class Members never used their vehicles after purchasing them."); *Kruse v. Chevrolet*

16 *Motor*, No. CIV. A. 96-1474 1997 WL 408039 *2 (E.D. Pa. July 17, 1997).

17           As for a potential price premium, the Ninth Circuit has recognized that overpayment may

18 constitute an injury to "business or property", *Canyon*, 519 F.3d at 976, but courts have also

19 carefully distinguished actual injuries from expectation injuries, which do not confer standing.  In

20 *McLaughlin v. American Tobacco*, 522 F.3d 215 (2d. Cir. 2008) *abrogated on other grounds by*

21 *Bridge v. Phoenix Bond & Indemnity*, 553 U.S. 639 (2008), a group of smokers alleged an implicit

22 misrepresentation that "light" cigarettes were healthier than regular cigarettes led them to overpay

23 for light cigarettes.  *Id.* at 220.  The Second Circuit rejected this theory of injury on the ground

24 that it was based on what plaintiffs expected to receive, not any injury to "business or property."

25 *Id.* at 228.  Similarly, in *In re General Motors Ignition Switch Litigation*, 2016 WL 3920353

26 (S.D.N.Y. July 15, 2016), plaintiffs alleged they were injured when they purchased a car that

27 contained a latent defect, and had they had known about the defect, they would have paid less for

28 the car or not bought the car at all.  The court rejected this "benefit-of-the-bargain" theory because

1    it rested on disappointed expectations, not a deprivation of actual business or property.  *Id.* *17.

2          The plaintiffs in *Ecodiesel*, in contrast to Plaintiffs here, specifically alleged that they paid

3    a premium of "between $3,120 and $5,000 more for the EcoDiesel option than for the comparable

4    gasoline vehicles."  *Id.*  They also alleged the cars did not actually perform as Ecodiesels, meaning

5    that plaintiffs may very well have "paid more than fair market value for the Class Vehicles."  *Id.*

6    To the extent Plaintiffs assert an overpayment theory, their allegations track those rejected in

7    *McLaughlin* and *General Motors,* and not the concrete economic harm alleged *Ecodiesel*.

8    Plaintiffs have not alleged that they overpaid in any specific amount for Lash Boost, only that they

9    were "wrongfully deprived of money" because "they did not receive what they paid for when

10   purchasing Lash Boost."  CC ¶ 430.  This bare allegation does not establish standing under RICO.

### (b)        No Proximate Causation

12         Plaintiffs also lack RICO standing because they have not pled facts to show that a RICO

13   predicate offense deprived them of money or property.  A civil RICO plaintiff must "show that a

14   RICO predicate offense 'not only was a but-for cause of his injury, but was the proximate cause as

15   well.'"  *Hemi Grp. v. City of N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Secs. Investor*

16   *Protection Corp.*, 503 U.S. 258, 268 (1992)).  In analyzing proximate cause under RICO, the

17   "central question" is "whether the alleged violation led directly to the plaintiff's injuries."  *Anza v.*

18   *Ideal Steel Supply*, 547 U.S. 451, 461 (2006).

19         "In cases where the RICO claim involves misrepresentations, such as in mail and wire

20   fraud cases, courts often determine whether proximate cause exists by asking whether there was

21   actual reliance on those misrepresentations."  *In re Bextra & Celebrex Marketing Sales Practices*

22   *& Prod. Liab. Litig.*, MDL No. 1699, 2012 WL 3154957 *4 (N.D. Cal. Aug. 2, 2012).  Although

23   reliance is not an explicit element of a RICO claim, some form of reliance must usually be shown.

24   *Bridge*, 553 U.S. 639, 657–58 (2008) (although actual reliance need not be pleaded, "[n]one of

25   this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can

26   prevail without showing that someone relied on the defendant's misrepresentations."); *see also*

27   *Actimmune Marketing Litig.*, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009) (in RICO case

28   involving drug marketing, plaintiffs lacked standing where the complaint did "not put forth any

specific allegations that anyone—the doctors, the plaintiffs themselves, or any other third party—relied on defendants' purportedly fraudulent misrepresentations to cause the injury"); *Bextra*, 2012 WL 3154957 *6–7 (plaintiffs lacked standing to assert aRICO claim despite alleging it was "foreseeable" the fraudulent marketing of a drug would induce doctors to prescribe it as there were no "*specific* allegations that individual physicians actually relied on these misrepresentations").

Here, Plaintiffs have not pled reliance on any affirmative representation.  CC ¶ 121.  Indeed, the only statements allegedly received by any Plaintiff are:  (1) the Lash Boost Plaintiff Buckingham received in the mail in May 2017; and (2) the email she received confirming the shipment of that tube.  CC ¶¶ 417, 419.  The CC does not even allege that Ms. Buckingham read these statements, much less that she relied on them. And as both are communications that occurred *after* Ms. Buckingham purchased Lash Boost, they cannot be the cause of her decision to do so.

To the extent Plaintiffs predicate their RICO claim on omissions, Plaintiffs have failed to show causation for the very same reasons discussed throughout this brief.  The CC is silent on what omissions Plaintiffs relied on or that, in some other fashion, caused their alleged injuries.  Indeed, the RICO allegations do not specifically describe any omissions at all, much less how those omissions proximately deprived Plaintiffs' of money or property.  Plaintiffs also do not allege how R+F's consultants—the other participants in the alleged RICO enterprise—caused Plaintiffs' injuries.  They cite a January 2018 document described as "Distributed information re consultants' compensation plan on the internet," CC ¶ 419, but do not allege that any Plaintiff read this document, or that it says anything about Lash Boost.

### 2.      Plaintiffs Fail to Allege a Racketeering Enterprise

In addition to failing to plead a basis for standing, Plaintiffs have also failed to allege facts stating a claim under RICO.  A claim under 18 U.S.C. §1962(c) requires a plaintiff to allege that the defendant participated, directly or indirectly, in:  (1) the conduct; (2) of an enterprise that affects interstate commerce; (3) through a pattern; (4) of racketeering activity.  *Eclectic Properties East, LLC v. Marcus & Millichap*, 751 F.3d 990, 997 (9th Cir. 2014).

Plaintiffs have failed to plead facts to show that R+F and its consultants jointly operated a criminal enterprise with a common purpose.  To plead the existence of a criminal enterprise,

Plaintiffs must allege facts plausibly showing that two or more individuals had "a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552–53 (9th Cir. 2007). This common purpose must be criminal in nature. Courts have routinely dismissed RICO claims where the defendants merely organized the enterprise to engage in routine commercial activity. For example, in *Shaw v. Nissan*, 220 F. Supp. 3d 1046 (C.D. Cal. 2016), the plaintiffs asserted that certain Nissan entities and a parts supplier engaged in a RICO enterprise to sell Nissan cars with defective timing chains. The court found the allegations inadequate because the only common purpose plausibly pled was to sell vehicles—not to do anything illegal. *Id.* at 1057; *see also Gomez v. Guthy-Renker*, Case No. EDCV 14-01425 2015 WL 4270042 *11 (C.D. Cal. July 13, 2015) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client")

Here, Plaintiffs here have not alleged the existence of any relationship between R+F and its consultants beyond a routine contractual arrangement under which the parties sell a variety of R+F products. Plaintiffs repeatedly affirm that R+F's consultants are innocent of fraudulent intent. CC ¶¶ 387, 393, 395. By definition, the relationship R+F has with its consultants is an ordinary commercial one, insufficient to constitute a criminal enterprise. *See, e.g.*, *In re Countrywide Fin. Mortg.-Backed Sec. Litig.*, No. 2:11-CV-07166-MRP, 2012 WL 10731957 *8 (C.D. Cal. June 29, 2012) ("Every securities issue has an underwriter; if a claim of underwriter complicity were sufficient, then every securities claim could be recast as a RICO claim."); *Jubilerer v. MasterCard Int'l*, 68 F. Supp. 2d 1049, 1053 (W.D. Wisc. 1999) ("Accepting plaintiff's allegations as sufficient to allege a RICO enterprise would lead to the absurd conclusion that each of the many million combinations of merchant, MasterCard, and lender is a RICO enterprise.").

### 3. Plaintiffs Fail to Allege the Requisite Predicate Acts

Plaintiffs have also failed to allege facts plausibly demonstrating that R+F and its consultants engaged in mail or wire fraud, the alleged predicate acts that constitute "racketeering activity." *See* 18 U.S.C. § 1961. The elements of mail and wire fraud are "(A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Properties*, 751 F.3d at 997.

**(a)**     **No Scheme to Defraud**

Plaintiffs claim that R+F formed a scheme to defraud consumers by omitting that Lash Boost can cause side effects and by denying that Lash Boost affects the structure or function of eyelashes, in numerous online advertisements and mailings.  CC ¶¶ 402, 405.  As noted above, however, Plaintiffs do not claim to have relied on any of specific statements or alleged omissions.  Plaintiffs' generic false advertising allegations fail to state a claim.

Courts have rejected similar efforts to convert false advertising claims into mail or wire fraud claims actionable in RICO.  In *In re Countrywide Financial Mortgage Marketing and Sales Practices Litigation*, 601 F. Supp. 2d 1201 (S.D. Cal. 2009), the plaintiffs attempted to assert a RICO class action against Countrywide for misrepresenting the nature of its mortgage products.  The plaintiffs alleged that mortgage brokers misrepresented that loan payments would not increase. The court found these allegations insufficient because they did not specify the time period during which the misrepresentation occurred.  *Id.* at 1215–17.  The plaintiffs also alleged that Countrywide systematically failed to disclose that it was engaged in a fraudulent scheme to sell adjustable-rate mortgages to subprime lenders.  This did not suffice either, because "[a]bsent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme." *Id.* (citing *California Architectural Building Products Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987)).

Here, Plaintiffs have identified two specific misrepresentations as underlying their RICO claim.  With respect to the mailing of the Lash Boost product, the CC does not identify the date when it occurred, what it said, or why it was false.  With respect to the online communication, the CC identifies only one communication made directly to a Plaintiff—an email described as "correspondence re product order and shipment status of Lash Boost."  CC ¶ 419.  Again, Plaintiffs have not explained how this communication was false.  Moreover, Akemi Buckingham did not receive either the mailing or the email until communications until after she purchased Lash Boost, and they therefore could not have defrauded her.

The remainder of Plaintiffs' allegations all trade on the nondisclosure theory discussed above.  This theory fails because Plaintiffs have not pled facts to show that Lash Boost causes

1   serious side effects; that they read or relied on the warnings that R+F did provide; or that Plaintiffs

2   would have seen the additional warnings that they claim R+F should have provided.

3   **(b)     No Intent to Defraud**

4         Plaintiffs also fail to allege facts plausibly supporting an inference that R+F had intent to

5   defraud, and they have not set forth facts showing that R+F knew of the alleged falsity of its

6   statements or omissions.  In the RICO context, intent to defraud may be inferred by examining the

7   scheme itself.  Because the transactions at issue here—sales of cosmetic products—are facially

8   legitimate, greater specificity is required to demonstrate that conduct is part of a fraudulent

9   scheme.  *See Eclectic Properties*, 751 F.3d at 997–98 (when companies engage in "transactions

10  that are facially legitimate" or "otherwise act as routine participants in American commerce, a

11  significant level of factual specificity is required" to plausibly plead a fraudulent scheme).

12        Yet the CC establishes only that R+F engages in the perfectly ordinary activities of

13  advertising and selling of cosmetic products.  This is not a case like *Ecodiesel*, where the

14  defendants employed a purpose-built device to cheat emissions standards.  Plaintiffs' allegation

15  that R+F "committed racketeering acts . . . intentionally and knowingly with the specific intent to

16  advance the illegal scheme," CC ¶ 412, falls far short of the Ninth Circuit's requirement of "a

17  significant level of factual specificity." *Eclectic Properties*, 751 F.3d at 998.

18  **VI.    CONCLUSION**

19        For the reasons stated herein, the Motion to Dismiss should be granted.

20  DATED: October 26, 2018               STEPTOE & JOHNSON LLP

21                                        By:   /s/ *Stephanie Sheridan*

22                                              STEPHANIE A. SHERIDAN
                                                Attorneys for Defendant
23                                              RODAN + FIELDS, LLC

24

25

26

27

28