Jeffrey Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900, Fax (510) 463-3901
jlewis@kellerrohrback.com

Juli E. Farris (SBN 141716)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496, Fax (805) 456-1497
jfarris@kellerrohrback.com

*Interim Class Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| BARBARA LEWIS, AKEMI BUCKINGHAM, BOBBIE JOE HULING, CYNTHIA WHETSELL, MARTHA MERLE, ELAINA HUFNAGEL, TERESA GATTUSO, ELISSA WAGNER, and DIXIE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>                        Plaintiffs,<br><br>     v.<br><br>RODAN + FIELDS, LLC, a California limited liability company,<br><br>                        Defendant. | No. 4:18-cv-02248-PJH<br>(Consol. with No.<br>4:18-cv-02505-PJH)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**CLASS ACTION**<br><br>Date:    February 20, 2019<br>Time:    9:00 a.m.<br>Judge:   Phyllis J. Hamilton |

# TABLE OF CONTENTS

I.      ISSUES PRESENTED ................................................................................................1

II.     INTRODUCTION .....................................................................................................2

III.    SUMMARY OF FACTS ...........................................................................................3

IV.     JURISDICTION .......................................................................................................5

        A.    Legal standard..............................................................................................5

        B.    Plaintiffs have standing ...............................................................................6

              1.    Plaintiffs have suffered an injury in fact.............................................6

              2.    Plaintiffs' injury in fact is fairly traceable to R+F. ...................................7

V.      VALIDITY OF CLAIMS ..........................................................................................7

        A.    Legal standard..............................................................................................7

        B.    Plaintiffs have satisfied Rule 9(b).................................................................9

              1.    Plaintiffs have alleged the circumstances of R+F's
                    omissions with particularity. .................................................................9

              2.    While Plaintiffs are not required to allege the circumstances
                    of their purchases with particularity, they have done so. ..........................11

              3.    Plaintiffs plausibly allege a scientific basis for Lash Boost's
                    serious side effects..................................................................................12

        C.    Plaintiffs Lewis and Buckingham state claims under California
              law. .............................................................................................................13

              1.    Legal standards.......................................................................................13

              2.    Plaintiffs have plausibly alleged an injury in fact and a loss
                    of money. ................................................................................................14

              3.    Plaintiffs have plausibly alleged an actionable failure to
                    disclose Lash Boost's serious side effects. .............................................15

              4.    Plaintiffs have plausibly alleged that R+F knew that Lash
                    Boost had serious side effects, but failed to disclose them.......................17

              5.    Plaintiffs have plausibly alleged justifiable reliance................................19

              6.    Plaintiffs have plausibly alleged R+F's intent to deceive
                    and to induce reliance. ............................................................................19

              7.    At the pleading stage, Plaintiffs need not allege that they
                    lack an adequate remedy at law................................................................19

D.    The other Plaintiffs have stated claims under the consumer protection laws of other states. ............................................20

     1.    Plaintiff Huling has stated a claim under the FDUTPA. ...........................20

     2.    Plaintiff Whetsell has stated a claim under the ICFA. .............................22

     3.    Plaintiff Merle has stated a claim under Massachusetts General Laws Chapter 93A....................................................23

     4.    Plaintiffs Hufnagel, Gattuso, and Wagner state a claim under the New York GBL..........................................24

     5.    Plaintiff Williams has stated a claim under the Washington CPA. ..........................................................26

E.    Plaintiffs state claims under the common law of Florida, Massachusetts, New York, Washington, and Illinois. .........................................26

F.    Plaintiffs state a RICO claim. ............................................27

     1.    Plaintiffs have plausibly alleged that they have statutory standing. ......................................................................27

     2.    Plaintiffs have plausibly alleged that R+F proximately caused their injuries. ...........................................28

     3.    Plaintiffs plausibly allege the existence of a RICO enterprise. ..................................................................29

     4.    Plaintiffs satisfy RICO's predicate-racketeering-acts requirement. ..............................................................31

         a.    Plaintiffs plausibly allege a scheme to defraud. ..........................31

         b.    Plaintiffs plausibly allege use of the mails or wires in furtherance of the scheme......................................32

         c.    Plaintiffs plausibly allege specific intent to defraud....................33

VI.    IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE GRANTED....................................................................34

VII.    CONCLUSION ............................................................34

No. 4:18-cv-02248-PJH            ii            OPPOSITION TO MOTION
(Consol. with No.                                             TO DISMISS
4:18-cv-02505-PJH)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aberin v. Am. Honda Motor Co.*,
No. 16-cv-04384-JST, 2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ..................................20

*Adkins v. Comcast Corp.*,
No. 16-cv-05969-VC, 2017 WL 3491973 (N.D. Cal. Aug. 1, 2017) ....................................20

*Aloudi v. Intramedic Research Group*,
729 F. App'x 514 (9th Cir. 2017) ...........................................................................................13

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-2617-LHK, 2016 WL 3029783 (N.D. Cal. 2016).................................... 9, 10, 11

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ................................................................................................................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................8

*Aspinall v. Philip Morris Cos.*,
813 N.E.2d 476 (Mass. 2004) .................................................................................................23

*Beaver v. Inkmart, LLC*,
No. 12-60028, 2012 WL 3822264 ...........................................................................................21

*Bellermann v. Fitchburg Gas & Elec. Light Co.*,
54 N.E.3d 1106 (Mass. 2016) .................................................................................................24

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013)..............................................................................7, 8, 9

*Bird v. First Alert, Inc.*,
No. C 14-3585 PJH, 2015 WL 3750225 (N.D. Cal. June 15, 2015)........................................11

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ....................................................................................................7

*Block v. Lifeway Foods, Inc.*,
No. 17 C 1717, 2017 WL 3895565 (N.D. Ill. Sept. 6, 2017) .................................................22

*Boyle v. United States*,
556 U.S. 938 (2009) ...........................................................................................................29, 30

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ................................................................................................................28

No. 4:18-cv-02248-PJH
(Consol. with No.
4:18-cv-02505-PJH)

iii

OPPOSITION TO MOTION
TO DISMISS

*Cabrales v. Castle & Cooke Mortg., LLC*,
No. 1:14-cv-01138-MCE-JLT, 2015 WL 3731552 (E.D. Cal. June 12, 2015) ...................20

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ....................................................................................22

*Canyon Cty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ....................................................................................27

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*,
169 So. 3d 164 (Fla. Dist. Ct. App. 2015) ................................................................20

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................8, 9, 10

*Casavant v. Norwegian Cruise Line, Ltd.*,
919 N.E.2d 165 (Mass. App. Ct. 2009) ....................................................................23

*Catalano v. BMW of N. Am., LLC*,
167 F. Supp. 3d 540 (S.D.N.Y. 2016) ......................................................................25

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ..............................................................27, 28

*Cohen v. Trump*,
303 F.R.D. 376 (S.D. Cal. 2014) ..............................................................................28

*Collins v. DaimlerChrysler Corp.*,
894 So. 2d 988 (Fla. Dist. Ct. App. 2004) ...............................................................21

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ...................................................................................14

*Consumer Advocates v. Echostar Satellite Corp.*,
113 Cal. App. 4th 1351 (2003) .................................................................................15

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ....................................................................................12

*CopyTele, Inc. v. E Ink Holdings, Inc.*,
962 F. Supp. 2d 1130 (N.D. Cal. 2013) ......................................................................5

*Corral v. Carter's Inc.*,
No. 1:13-cv-0262 AWI SKO, 2014 WL 197782 (E.D. Cal. Jan. 16, 2014) ...........13

*In re Countrywide Financial Mortgage-Backed Securities Litigation*,
No. 2:11-ML-02265-MRP, 2012 WL 10731957 (C.D. Cal. June 29, 2012) ...........31

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014) ...............................................................................5, 20

*DaCorta v. AM Retail Grp.*,
No. 16-CV-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan 23, 2018) ....................25

*Davidson v. Apple, Inc.*,
No. 16-CV-4942-LHK, 2017 WL 3149305 (N.D. Cal. July 25, 2017) ....................11

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ....................34

*Deegan v. Windermere Real Estate/Center-Isle, Inc.*,
391 P.3d 582 (Wash. Ct. App. 2017) ....................26

*Doe v. SuccessfulMatch.com*,
70 F. Supp. 3d 1066 (N.D. Cal. 2014)....................16

*Eckler v. Wal-Mart Stores, Inc.*,
No. 12-CV-727-LAB-MDD, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012)....................13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ....................31, 33

*Elias v. Hewlett-Packard Co.*,
No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ....................14

*Emergy v. Am. Gen. Fin., Inc.*,
71 F.3d 1343 (7th Cir. 1995) ....................32

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007)....................8

*Ferreira v. Sterling Jewelers, Inc.*,
130 F. Supp. 3d 471 (D. Mass. 2015)....................24

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014)....................25

*Gregorio v. Clorox Co.*,
No. 17-cv-3824-PJH, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018) ....................6

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986) ....................26

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018) ....................23

*Hill v. Hoover Co.*,
899 F. Supp. 2d 1259 (N.D. Fla. 2012) ....................21

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ....................14, 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)...................................................................15

*Izsak v. Wells Fargo Bank, N.A.*,
No. C 13-05362 SI, 2014 WL 1478711 (N.D. Cal. Apr. 14, 2014) ("exact date" not
required; "around June 2011" was sufficient) .............................................. 11, 12

*Johnson v. Harley-Davison Motor Co. Grp. LLC*,
285 F.R.D. 573 (E.D. Cal. 2012) ........................................................................14

*Jubilerer v. MasterCard International*,
68 F. Supp. 2d 1049 (W.D. Wis. 1999).................................................................30

*Just Film, Inc. v. Merch. Servs., Inc.*,
No. C 10-1993 CW, 2012 WL 6087210 (N.D. Cal. Dec. 6, 2012).........................33

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...............................................................................8

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ................................................................................23

*Kwikset v. Superior Court*,
51 Cal. 4th 310 (2011)...................................................................................14, 15

*Lazar v. Superior Court*,
12 Cal. 4th 631 (1996)..........................................................................................15

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005) ................................................................................28

*Lowell Gas Co. v. Att'y Gen.*,
385 N.E.2d 240 (Mass. 1979) ...............................................................................23

*Luong v. Subaru of Am., Inc.*,
No. 17-cv-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018) ..................18

*MacDonald v. Ford Motor Co.*,
37 F. Supp. 3d 1087 (N.D. Cal. 2014)....................................................................8

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000) ...........................................................................27, 28

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009).....................................................................8

*Matheny v. Unumprovident Corp.*,
594 F. Supp. 2d 1212 (E.D. Wash. 2009)..............................................................26

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ....................................................................................6

*McDonnell v. Nature's Way Prods., LLC*,
  No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ................................22

*McLaughlin v. American Tobacco*,
  522 F.3d 215 (2d Cir. 2008) ....................................................................................27

*Miller v. William Chevrolet/GEO, Inc.*,
  762 N.E.2d 1 (Ill. App. Ct. 2001) ...........................................................................23

*Mulligan v. QVC, Inc.*,
  888 N.E.2d 1190 (Ill. 2008) ....................................................................................22

*Myers v. BMW of N. Am., LLC*,
  No. 16-cv-00412-WHO, 2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) ................18

*Nat'l Corp. Tax Credit Funds II, IV, VII v. Potashnik*,
  No. CV 07-3528 PSG, 2008 WL 11337276 (C.D. Cal. Jan. 8, 2008) ...................20

*O'Hara v. Diageo-Guinness, USA, Inc.*,
  306 F. Supp. 3d 441 (D. Mass. 2018).......................................................................24

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) (en banc) ..................................................................18

*Overton v. Bird Brain, Inc.*,
  No. SACV 11-1054 DOC, 2012 WL 909295 (C.D. Cal. Mar. 15, 2012) ..............18

*Perkumpulan Inv'r Crisis Ctr. Dressel—WBG v. Regal Fin. Bancorp. Inc.*,
  781 F. Supp. 2d 1098 (W.D. Wash. 2011) ..............................................................33

*Petrus v. N.Y. Life Ins. Co.*,
  No. 14-cv-2268-BAS-JMA, 2016 WL 1255812 (S.D. Cal. Mar. 31, 2016) ..........15

*In re Porsche Cars N. Am., Inc.*,
  880 F. Supp. 2d 801 (S.D. Ohio 2012)......................................................................25

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ..........................................................................................29, 30

*Shaulis v. Nordstrom, Inc.*,
  865 F.3d 1 (1st Cir. 2017)........................................................................................24

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ................................................................................11

*Solomon v. Bell Atl. Corp.*,
  777 N.Y.S.2d 50 (App. Div. 2004) .........................................................................24

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...................................................................................8

*State Compensation Ins. Fund v. Capen*,
   No. SACV 15-1279 ........................................................................................33

*Stephens v. Omni Ins. Co.*,
   159 P.3d 10 (Wash. Ct. App. 2007) ......................................................................26

*Terrazzino v. Wal-Mart Stores, Inc.*,
   --- F. Supp. 3d ----, 2018 WL 3921301 (N.D. Ill. Aug. 16, 2018).........................22

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)..............................................................................14, 17

*Torres v. JC Penney Corp., Inc.*,
   No. 12-cv-01105-JST, 2013 WL 1915681 (N.D. Cal. May 8, 2013) ...................14

*Underwood v. Risman*,
   605 N.E.2d 832 (Mass. 1993) ................................................................................23

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ................................................................................29

*United States v. Lloyd*,
   807 F.3d 1128 (9th Cir. 2015) ................................................................................32

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   --- F. Supp. 3d ----, 2018 WL 4777134 (N.D. Cal. Oct. 3, 2018)........................27

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................14

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ................................................................................17

*Woods v. Maytag Co.*,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011)....................................................................25

**Statutes**

815 ILCS 505/2..............................................................................................22

18 U.S.C. § 1961(4) .......................................................................................29

18 U.S.C. § 1961(5) .......................................................................................31

Cal. Bus. & Prof'l Code § 17200...................................................................14

Cal. Bus. & Prof'l Code § 17205...................................................................20

Cal. Civ. Code § 1780(a) ............................................................................... 15

California Unfair Competition Law ................................................................. 1

Consumer Legal Remedies Act ...................................................................... 1

False Advertising Law ........................................................................... *passim*

Fla. Stat. § 501.204(1) ................................................................................ 20

Florida Deceptive and Unfair Trade Practices Act ........................................ 1

Illinois Consumer Fraud Act .......................................................................... 1

Mass. Gen. Laws Ch. 93A .................................................................... 1, 23

New York General Business Law ........................................................ 1, 24, 25

Washington Consumer Protection Act .......................................................... 1

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................. 6, 8, 20

Fed. R. Civ. P. 9(b) .............................................................................. *passim*

Fed. R. Civ. P. 15 ...................................................................................... 34

# I.    ISSUES PRESENTED

(1)    Do Plaintiffs' allegations, when taken as true, contain a short and plain statement showing that they have suffered injuries in fact that are fairly traceable to Defendant? *See infra* 6-7.

(2)    Plaintiffs claim that Defendant deceptively omitted information about its product's serious side effects.  Do Plaintiffs allege the circumstances of those omissions with particularity? *See infra* 9-13.

(3)    Have Plaintiffs Lewis and Buckingham plausibly alleged that Defendant violated the California Unfair Competition Law (UCL), False Advertising Law (FAL), Consumer Legal Remedies Act, and California common law? *See infra* 13-20.

(4)    Has Plaintiff Huling plausibly alleged that Defendant violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and Florida common law? *See infra* 20-21.

(5)    Has Plaintiff Whetsell plausibly alleged that Defendant violated the Illinois Consumer Fraud Act (ICFA) and Illinois common law? *See infra* 22-23.

(6)    Has Plaintiff Merle plausibly alleged that Defendant violated Massachusetts General Laws chapter 93A and Massachusetts common law? *See infra* 23-24.

(7)    Have Plaintiffs Hufnagel, Gattuso, and Wagner plausibly alleged that Defendant violated New York General Business Law (GBL) sections 349 and 350 and New York common law? *See infra* 24-25.

(8)    Has Plaintiff Williams plausibly alleged that Defendant violated the Washington Consumer Protection Act (CPA) and Washington common law. *See infra* 26.

(9)    Have Plaintiffs plausibly alleged the elements of a civil claim against the Defendant under the Racketeer Influenced and Corrupt Organizations (RICO) Act? *See infra* 27-34.

## II. INTRODUCTION

Defendant Rodan + Fields ("R+F") sells Lash Boost as an eyelash-enhancing serum, but it does not disclose that Lash Boost's active ingredient is a prostaglandin analog, a type of chemical that is known to produce serious side effects, including cysts, blurred vision, sunken eyes, droopy eyelids, eye pain, darkening of the skin, and change in eye color. The nine Plaintiffs, kept in the dark about Lash Boost's side effects, bought the product. Each suffered a known side effect of Lash Boost's active ingredient—some of them serious enough to require medical attention. They now bring this action to recover the money they spent on Lash Boost due to R+F's deception.

R+F defends itself against Plaintiffs' claims mostly by ignoring what the Consolidated Complaint ("Complaint" or "CC") actually alleges. Plaintiffs suggest a review of their detailed Complaint, which alleges precisely what R+F claims it does not:

***Proven side effects.*** Scientists have found that the ingredient in Lash Boost, just like other prostaglandin analogs, has serious side effects. R+F denies this science. Later in this case, R+F will be entitled to try to marshal evidence to support its denialism, but it cannot rest on its denials now, when Plaintiffs, relying on the scientific literature, have advanced specific factual allegations about Lash Boost's side effects. Nor can R+F defend its concealment of Lash Boost's side effects by pointing to its packaging and labeling, which is deathly silent about Lash Boost's most serious side effects, and whose nebulous reference to "irritation" tells, at best, a misleading half-truth.

***Injury.*** The Complaint alleges compensable, cognizable economic injuries. It explains in some detail why Plaintiffs would not have spent money to buy Lash Boost if they had known of its side effects. The Complaint also alleges what common sense suggests: that a cosmetic that routinely harms its users' bodies is worth less than one that does not.

***Causation.*** Plaintiffs lost money on Lash Boost because R+F utterly failed to disclose the product's side effects. According to R+F, however, the Complaint never alleges whether Plaintiffs

read, and thus relied on, R+F's statements about Lash Boost. But precisely because R+F never

disclosed the side effects, Plaintiffs would have remained unaware of those side effects *whether or not*

they had read everything R+F said about Lash Boost. (What is more, the Complaint alleges that

Plaintiffs *were* exposed to Lash Boost's packaging and labeling. CC ¶ 109.) The Complaint suggests

several ways in which R+F could have disclosed those side effects—and alleges that if it had done so,

Plaintiffs would have learned of the side effects and never spent money on Lash Boost. *See infra* 9-11.

**State of mind.** A wide array of allegations plausibly show that R+F knew of Lash Boost's

serious side effects, but decided not to disclose them. It is improbable that R+F, a company that boasts

of its ownership by two doctors, did not know of the ample body of scientific literature on

prostaglandin analogs' side effects, including an FDA warning letter about precisely the same

ingredient that is in Lash Boost. And if that were not enough, R+F explicitly acknowledged on its

website that other lash-enhancing products were known to cause side effects—while denying, contrary

to the science, that the ingredient in its own product lacks those side effects. R+F ignores these

allegations, but that does not make them go away. Its motion to dismiss should be denied.

## III. SUMMARY OF FACTS[1]

**Lash Boost and its side effects.** Lash Boost, marketed as an eyelash-enhancing serum,

contains a chemical called isopropyl cloprostenate. CC ¶ 2. Isopropyl cloprostenate is in a family of

chemicals called prostaglandin analogs, which are used to treat glaucoma. CC ¶¶ 83, 86. The

scientific literature has found that prostaglandin analogs have serious side effects, including cysts,

blurred vision, sunken eyes due to changes in the surrounding cells, darkening of the skin, eye pain,

droopy eyelids, change in eye color, burning, stinging, and excessive tearing. *Id.* ¶¶ 88–91.

R+F claims that there is no evidence that the ingredient in Lash Boost—isopropyl

cloprostenate—causes these side effects. The scientific literature disagrees. Studies find that these

---

[1] Further details are discussed in the body of this Opposition where relevant.

side effects are common to *all* prostaglandin analogs. *E.g., id.* ¶¶ 89 n.41, 91. This is confirmed by a 2011 warning letter from the FDA that specifically concerned isopropyl cloprostenate, the same ingredient in Lash Boost. *Id.* ¶ 83. There, the FDA noted that harmful side effects are associated with prostaglandin analogs as a class, *id.*—side effects that are well-known among eye doctors, *id.* ¶ 3.

**R+F's omissions about Lash Boost.** Despite the science on prostaglandin analogs, R+F has chosen not to disclose the side effects associated with Lash Boost's active ingredient. Nowhere in any of its communications—neither on its packaging, labeling, its website, or in its communications with the consultants who sell Lash Boost—has R+F disclosed that Lash Boost's ingredient can cause serious side effects. Instead, on Lash Boost's packaging and labeling, it has told consumers merely to "[d]iscontinue use" if there is irritation, and that if the irritation "persists" or "is significant," to consult a physician. *Id.* ¶¶ 100, 106-07. This says nothing about the many other serious side effects of Lash Boost, and indeed does not even disclose that serious irritation is a known side effect. *See infra* 15-16.

These omissions are part of R+F's larger strategy to portray Lash Boost as a cosmetic rather than a drug. Because consumers expect that cosmetics, unlike drugs, will not have serious side effects, R+F's strategy is intended to increase sales of Lash Boost. *See id.* ¶¶ 242, 386.

**R+F's business.** R+F portrays itself as a "source of trusted information" owned by "doctors, not businesswomen." *Id.* ¶¶ 119, 133. R+F sells Lash Boost online and through a multi-level marketing program. *Id.* ¶¶ 72, 74. This multi-level marketing program uses independent contractors—called "consultants"—to sell R+F products through social media. *Id.* ¶ 74. These consultants also have relationships with each other. Indeed, R+F hosts conventions and Facebook groups for them—forums where they network with, learn from, and support each other. *Id.* ¶¶ 389, 399. R+F does not tell its consultants about Lash Boost's side effects. *Id.* ¶ 118.

**Plaintiffs and other consumers.** Plaintiffs are nine of the many consumers who purchased Lash Boost. Even though they were all exposed to Lash Boost's packaging, *see id.* ¶ 109, R+F's

omission of Lash Boost's serious side effects from all of its consumer communications rendered Plaintiffs unaware of them.  *Id.* ¶¶ 21, 28, 35, 42, 49, 55, 60, 64, 68.  After using the product, all of them suffered side effects, some of which were quite serious.[2]  Two Plaintiffs were even forced to go to physicians for treatment.  *See id.* ¶¶ 26, 58.  None of them would have chosen to purchase Lash Boost if they had known about its potential side effects.  *Id.* ¶¶ 23, 30, 37, 44, 51, 57, 61, 65, 69.

Plaintiffs are not alone.  Many consumers have made vehement complaints about Lash Boost's serious side effects.  *Id.* ¶ 140.  Yet R+F has taken pains on its website to affirmatively *deny* that Lash Boost has potential adverse effects.  *Id.* ¶ 133.  Because the public is unaware of its side effects, Lash Boost commands a higher price than it would if R+F made full disclosure.  *See, e.g.*, *id.* ¶¶ 117, 386.

## IV.   JURISDICTION

### A.   Legal standard

A party may mount either a "factual" or a "facial" challenge to subject-matter jurisdiction. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014).  A factual challenge relies on "evidence properly before the court to contest the truth of the complaint's allegations."  *Id.* at 780 (citation and quotation omitted).  A facial challenge does not contest allegations.  Instead, it asserts that, even if they are true, they do not invoke the court's jurisdiction.  *Id.* at 780.

R+F brings a facial challenge.  It submits no evidence to challenge the Court's jurisdiction. While it (erroneously) asks the Court to take judicial notice of certain materials,[3] a facial challenge permits a court to consider judicially noticeable facts along with a complaint.  *See, e.g.*, *CopyTele, Inc. v. E Ink Holdings, Inc.*, 962 F. Supp. 2d 1130, 1135–36 (N.D. Cal. 2013).  In a facial challenge, a court determines whether a complaint's factual allegations, if taken as true, *Planet*, 750 F.3d at 780, contain

---

[2] *Id.* ¶¶ 24-26 (infection of eyelid oil gland), 31 (burning, stinging, red and flaky skin on eyelid), 38-39 (red and itchy eyes and change of eye color), 45 (impaired vision), 52 (dry and itchy eyes), 58 (darker skin around eyes, puffy eyes), 62 (eye pain, blurry vision), 66 (white discharge from eyes), 70 (discolored eyelid, permanent bump on eyelid).

[3] *See* Plaintiffs' Opposition to Defendant's Request for Judicial Notice (filed herewith).

a "'short and plain statement' of the grounds for jurisdiction." *Doe v. Holy See*, 557 F.3d 1066, 1074 (9th Cir. 2009) (quoting Fed. R. Civ. P. 8(a)(1)).

**B.    Plaintiffs have standing**

R+F argues incorrectly that Plaintiffs do not satisfy two of the three requirements for standing: (1) an injury in fact (2) that is fairly traceable to R+F.  *See* Motion to Dismiss ("MTD") 7-8.

### 1.    *Plaintiffs have suffered an injury in fact*

Plaintiffs that "spen[d] money that, absent defendants' actions, they would not have spent," allege a "quintessential injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011); *accord, e.g.*, *Gregorio v. Clorox Co.*, No. 17-cv-3824-PJH, 2018 WL 732673, at *5 (N.D. Cal. Feb. 6, 2018).  Here, Plaintiffs allege just that—in detail.  They allege that prostaglandin analogs, including the active ingredient of Lash Boost, have serious side effects that scientists have extensively documented.  These side effects include droopy eyelids, cysts, darkening of eyelid skin, impaired vision, and changes in eye color.  *See, e.g.*, CC ¶¶ 88-91 (citing to medical literature).  They allege that none of them were aware of any of these possible side effects before purchasing Lash Boost.  *Id.* ¶¶ 21, 28, 35, 42, 49, 55, 60, 64, 68.  They allege that consumers wishing to lengthen and improve the appearance of their eyelashes may determine that the risk of "potentially vision impairing, painful, and permanent consequences" outweighs any cosmetic benefit they may receive from Lash Boost.  *Id.* ¶ 92; *see also id.* ¶¶ 129-30.  And they allege that they themselves would not have purchased or used Lash Boost had they known of its possible side effects.  *Id.* ¶¶ 23, 30, 37, 44, 51, 57, 61, 65, 69.

R+F does not confront these allegations, let alone explain why they are insufficient under Rule 8(a)(1).  Instead, it argues that Plaintiffs lack standing because it failed to warn them "about side effects that they never experienced."  MTD 7.  This argument misses the mark.  Plaintiffs *did* experience side effects about which R+F failed to warn.  CC ¶¶ 24-26, 31, 38-39, 45, 52, 58, 62, 66, 70.  More importantly, the relevant injury in fact is not the side effects themselves but the money they

spent on a product that failed to warn them of the side effects. R+F next maintains that Lash Boost did not cause Plaintiffs any pregnancy-related harm, MTD 7, but that does not negate the economic injuries they *did* suffer, which stemmed from a failure to disclose side effects that could afflict not just pregnant women, but anyone. Finally, R+F analogizes this case to *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) (cited by MTD 8), but in that case the plaintiffs lacked standing under the UCL for two reasons. First, the iPods' diminution in value due to the risk of hearing loss was not actual or imminent, stemming as it did from a customer's own possible decision to listen to an iPod too loud. *Id.* at 961. Second, the plaintiffs had not lost the benefit of their bargain, since they *admitted* that Apple had warned "against listening to music at loud volumes." *Id.* Here, by contrast, it is an ingredient in Lash Boost, not consumers, that causes side effects, *see* CC ¶¶ 83, 88-91, 123, and R+F failed to warn about Lash Boost's side effects, *id.* ¶¶ 106-07, 130, 133.

### 2. Plaintiffs' injury in fact is fairly traceable to R+F.

R+F maintains that Plaintiffs have failed to allege a fairly traceable injury because they do not allege that they read R+F's statements about Lash Boost. MTD 8. But Plaintiffs' case is not based on affirmative misrepresentations. Because Plaintiffs allege that R+F's *omission* of side effects injured them, they need only allege that if R+F had properly disclosed the side effects, they would not have purchased Lash Boost (or would have bought it at a lower price). *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 931 (N.D. Cal. 2013). As Plaintiffs discuss below, they have alleged in detail that R+F failed to disclose the side effects, and that if it had, Plaintiffs would not have purchased Lash Boost. *See infra* 9-11, 15-17.

## V. VALIDITY OF CLAIMS

### A. Legal standard

In evaluating whether a complaint states a claim, courts assume that the allegations of the complaint are true so long as they "contain sufficient allegations of underlying facts to give fair notice

and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Those allegations must then "plausibly suggest an entitlement to relief." *Id.* This standard "is not akin to a 'probability requirement," and the complaint need not contain "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Rather, a plaintiff's entitlement to relief need only be a "reasonable inference" to draw from the factual allegations. *Id.*

As opposed to allegations about other matters, which need only comply with Rule 8(a), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under this rule, fraud must be alleged in terms "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotation and citation omitted). In cases involving fraudulent omissions, like this one, Rule 9(b) applies, but the plaintiff "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007). "Because the plaintiffs are alleging a failure to act instead of an affirmative act," they "cannot point out the specific moment when the Defendant failed to act." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (quotation, alteration, and citation omitted). Moreover, if the plaintiffs are alleging—as here—that certain information was omitted from *all* labeling, advertising, and other communications by the defendant, and not just one particular communication, they need not allege that they relied on certain communications in making their purchase. *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1113 (N.D. Cal. 2015) (distinguishing *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009)); *MacDonald*, 37 F. Supp. 3d at 1096 (same). At most, their complaint must "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *Bias*, 942 F. Supp. 2d at 932 (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)), and allege facts suggesting that if

the defendant had properly disclosed the omitted fact, the plaintiffs would have been aware of it and behaved differently, *see, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-2617-LHK, 2016 WL 3029783, at *35 (N.D. Cal. 2016); *Carrier IQ*, 78 F. Supp. 3d at 1114.

**B.     Plaintiffs have satisfied Rule 9(b).**

> ### *1.     Plaintiffs have alleged the circumstances of R+F's omissions with particularity.*

Plaintiffs have alleged the circumstances of R+F's omissions with particularity.  First, they have explained in detail why R+F's omissions were "false and misleading."  *Bias*, 942 F. Supp. 2d at 932 (quoting *GlenFed*, 42 F.3d at 1548).  Lash Boost's prostaglandin analog has serious side effects that the Complaint alleges with specificity.  CC ¶¶ 88-91.  R+F's omissions were false and misleading because they failed to disclose those "serious adverse side effects."  CC ¶ 101; *see also id.* ¶¶ 105-07, 113 (same).  R+F never disclosed these side effects *anywhere*: "The materials provided to consultants who sell Lash Boost, the Rodan + Fields website, and the product labeling all suffer from the same material omissions."  *Id.* ¶ 102.  Plaintiffs have included quotations or samples of these documents in the Complaint, explaining what they failed to disclose.  *Id.* ¶¶ 100, 106-07, 125, 128, 130.

Plaintiffs have specifically alleged where and how R+F *could* have disclosed the truth to consumers.  It "could have advised consultants, updated [its] website, included new packaging materials, or modified their product label to advise Plaintiffs of the adverse [side] effects."  *Id.* ¶ 120.  Plaintiffs have even pointed to the product insert sold with Latisse as an example of such warnings.  *See id.* ¶¶ 96-98.  Lash Boost contains none of those warnings.  *Id.* ¶ 99.

Finally, Plaintiffs have alleged facts from which to infer that if R+F had properly advised its consultants, updated its website, included new packaging materials, and modified its product label to include side-effect warnings, Plaintiffs would have become aware of those side effects and would have decided not to purchase Lash Boost.  *Anthem Data Breach Litig.*, 2016 WL 3029783, at *35; *Carrier IQ*, 78 F. Supp. 3d at 1114.  Recall that Plaintiffs could have purchased through two channels: through

consultants or online. CC ¶¶ 72, 74. If R+F had directed consultants to disclose Lash Boost's side effects to customers, *id.* ¶ 120, Plaintiffs who purchased Lash Boost from consultants, *id.* ¶¶ 40, 67, would *necessarily* have become aware of the side effects. If the Plaintiffs purchased Lash Boost online and R+F had included side-effect warnings, *see id.* ¶ 120, it is likewise inevitable that Plaintiffs would have learned of those side effects. Even if Plaintiffs still could have somehow remained ignorant, the Complaint alleges that all class members were exposed to Lash Boost's packaging. *Id.* ¶ 109. Naturally, then, purchasers would have noticed an "extensive package insert" of the kind that accompanies Latisse. *Id.* ¶ 95. Indeed, such an insert, containing proper warnings, would have been difficult to ignore. *See id.* ¶ 98 (noting that the Latisse insert measured 14 by 22 inches).

Similarly, it is reasonable to infer that Plaintiffs, once made aware of Lash Boost's side effects, would have decided not to purchase the product. That is precisely what they allege. *See id.* ¶¶ 23, 30, 37, 44, 51, 57, 61, 65, 69; *see also Anthem Data Breach Litig.*, 2016 WL 3029783, at *35 (noting that plaintiffs had alleged that they would not have enrolled in Anthem services if Anthem had made proper disclosure); *Carrier IQ*, 78 F. Supp. 3d at 1114 (noting that plaintiffs had alleged that they would not have purchased the relevant product if the defendants had made proper disclosure). The vehement consumer complaints about Lash Boost online show the same thing:

- "Used this product for one month. Well a month in and my left eye will NOT stop tearing. Terrible!"

- "Not worth the pain or risk."

- Lash Boost "made my skin dark and gave me a sunken in eye look.... I have aged ten years in 7 weeks. But I have lashes. NOT WORTH IT! RF needs to put warnings on [the product]."

CC ¶ 140. The "intensity" of this "outcry" demonstrates "the materiality" of what R+F omitted and underscores that Plaintiffs would have acted differently if R+F had told them the truth. *Carrier IQ*, 78

F. Supp. 3d at 1114; *see also Anthem Data Breach Litig.*, 2016 WL 3029783, at *35 (pointing to "public response" to data breach to support a similar proposition).

R+F maintains that Plaintiffs have failed to identify where it should have disclosed Lash Boost's side effects and to allege that Plaintiffs would have seen that disclosure. MTD 11. But as Plaintiffs have just shown, they have done both. R+F simply ignores Plaintiffs' allegations.

R+F also maintains that Plaintiffs needed to identify a "representation by R+F" that they relied on. *Id.* Because Plaintiffs allege actionable omissions, they need not allege that they have relied on representations. They merely need to allege, as they do, that if R+F had made proper disclosures, they would have noticed those disclosures and behaved differently. *See Davidson v. Apple, Inc.*, No. 16-CV-4942-LHK, 2017 WL 3149305, at *14 (N.D. Cal. July 25, 2017).

### 2. *While Plaintiffs are not required to allege the circumstances of their purchases with particularity, they have done so.*

R+F argues that Plaintiffs are required to allege the circumstances of their purchases with particularity, but R+F confuses the circumstances of its own fraud, which *are* required to be pleaded with particularity, with the circumstances of Plaintiffs' *injury*, which are not. *Bird v. First Alert, Inc.*, No. C 14-3585 PJH, 2015 WL 3750225, at *9 (N.D. Cal. June 15, 2015), is not to the contrary, because the discussion R+F cites concerns the defendant's disclosures, not the plaintiff's purchase.

In any event, Plaintiffs *have* pleaded their purchases with particularity. They allege the price of Lash Boost. CC ¶ 16. They each allege the specific month they made their purchases. *Id.* ¶¶ 20, 27, 33, 40, 47, 53, 59, 63, 67. An exact date is not required to give R+F fair notice. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) ("relatively definite time frame" was sufficient); *Izsak v. Wells Fargo Bank, N.A.*, No. C 13-05362 SI, 2014 WL 1478711, at *3 (N.D. Cal. Apr. 14, 2014) ("exact date" not required; "around June 2011" was sufficient). Plaintiffs also allege facts plausibly suggesting that they made their purchases in their places of residence. *See CC*

¶¶ 17, 79.  Two Plaintiffs allege that they made the purchases through a consultant, *id.* ¶¶ 40, 67, while the others purchased Lash Boost either through a consultant or online, *id.* ¶ 72.  Further specificity is not required.  Each Plaintiff gives a narrow date range for their purchases, so specifically alleging consultants' names or the channel through which a Plaintiff made a purchase is not necessary to "reduce the burdens of a necessary records search," *Izsak*, 2014 WL 1478711, at *3, or to allow R+F to "prepare an adequate answer," *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (citation and quotation omitted) (complaint satisfied Rule 9(b) even though it did not "describe in detail a single specific transaction").

### 3. *Plaintiffs plausibly allege a scientific basis for Lash Boost's serious side effects.*

The Complaint contains detailed allegations about Lash Boost's side effects.  The active ingredient in Lash Boost is isopropyl cloprostenate, a synthetic prostaglandin analog.  CC ¶¶ 2, 83. The FDA has noted that isopropyl cloprostenate, like other prostaglandin analogs, has serious side effects.  *Id.* ¶ 83.  Plaintiffs also allege—with citations—that a large scientific literature has developed on the serious side effects of prostaglandin analogs.  *Id.* ¶¶ 88-91.  And to further show isopropyl cloprostenate's side effects, the Complaint alleges: (1) that each of the Plaintiffs developed a side effect consistent with the scientific literature on prostaglandin analogs, *see id.* ¶¶ 24-25, 31, 38-39, 45, 52, 58, 62, 66, 70; and (2) that online complaints about Lash Boost document those side effects, *see id.* ¶ 140.

Yet R+F contends that Plaintiffs have failed to "allege[] scientific facts to show that Lash Boost actually causes" side effects.  MTD 12.  It says that allegations about other prostaglandin analogs or about the FDA warning letter do not show that Lash Boost itself causes side effects.  But the FDA's warning letter was *specifically* about isopropyl cloprostenate.  *Id.* ¶ 83.  And Plaintiffs allege—with support from the literature—that *all* prostaglandin analogs cause the same constellation of side effects. *See* CC ¶¶ 5 (all have the same "side effect profile[]"), 87 & n.5 (citing to article about prostaglandin

analogs), 89 n.41 (discussing "[c]ommon known side effects of *these drugs*" (emphasis added)), 91 (side effect "*associated with all the drugs in the class*"). Because isopropyl cloprostenate is a prostaglandin analog, *id.* ¶ 83, it necessarily shares these side effects.

R+F also insists that the Complaint merely alleges that "R+F lacked evidence of safety." MTD 12. The Complaint alleges not a lack of evidence, but a profusion of affirmative evidence that the ingredient in Lash Boost causes serious side effects. *Id.* ¶¶ 88-91.

Finally, R+F cites *Aloudi v. Intramedic Research Group*, 729 F. App'x 514 (9th Cir. 2017), which, it claims, shows that the Complaint is deficient. In *Aloudi*, the plaintiffs claimed that the defendant had falsely asserted that its product JavaSLIM could produce weight loss. They supported this claim by relying on a study that did not test "the same active ingredients" contained in JavaSLIM "in a dose similar to that in JavaSLIM." *Id.* at 516. Here, however, Plaintiffs not only cite an FDA warning letter about precisely the same ingredient that is in Lash Boost, CC ¶ 83, but allege that all prostaglandin analogs, including the prostaglandin analog in Lash Boost, have been shown in the literature to cause the same side effects when used topically, *see id.* ¶¶ 5, 87 & n.5, 89 & n.41, 91.[4]

## C. Plaintiffs Lewis and Buckingham state claims under California law.

### 1. *Legal standards*

Plaintiffs Lewis and Buckingham assert claims under the CLRA, UCL, and FAL, as well as claims under California law for negligent misrepresentation and fraudulent concealment.

---

[4] Plaintiffs have cited an FDA warning letter about exactly the same ingredient that Lash Boost contains, but nothing in *Aloudi* suggests that the citation is necessary. Plaintiffs may rely on studies about the *category* of prostaglandin analogs so long as they allege plausibly, as they have, that Lash Boost contains a prostaglandin analog and that all prostaglandin analogs have the same side effects. Hence, studies of prostaglandin analogs are highly relevant. The other cases R+F cites are not apposite. *See Corral v. Carter's Inc.*, No. 1:13-cv-0262 AWI SKO, 2014 WL 197782, at *4 (E.D. Cal. Jan. 16, 2014) (where there was more than one "type of crib bumper[]," a single study about crib bumpers as a whole, without more, did not show that the defendant's crib bumper was dangerous); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012) (studies did not show falsity when they merely showed that a different formulation could not treat a different condition than the one that the defendant said its formulation could "help").

Under the CLRA, the concealment or suppression of a fact about a product is actionable if the defendant had a duty to disclose the fact, the omission is likely to mislead a reasonable consumer, *see Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255-56 (2011), and the consumer has suffered "any damage," *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) (quoting Cal. Civ. Code § 1780(a)).  R+F does not deny that it had a duty to disclose the side effects of Lash Boost.[5]

Both the FAL and UCL require a "loss of money or property" that constitutes an "injury in fact." *Kwikset v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Under the FAL, a plaintiff must also establish that the defendant engaged in advertising by which a "reasonable consumer" is "likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  The UCL prohibits "fraudulent" business practices, among others.  Cal. Bus. & Prof'l Code § 17200.  A "fraudulent" practice is one likely to deceive members of the public.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).

R+F correctly states the elements of claims for fraudulent concealment and negligent misrepresentation under California law.  *See* MTD 14.  R+F does not dispute that Lash Boost's serious side effects were a "material fact," that it was "under a duty to disclose" that fact, that Plaintiffs were "unaware" or "ignoran[t]" of those side effects, or that it lacked "reasonable grounds for believing" Lash Boost not to have serious side effects.  *Id.* at 14:9-11, :19-20 (quotation and citation omitted).

### 2. *Plaintiffs have plausibly alleged an injury in fact and a loss of money.*

R+F says that Plaintiffs have failed to allege that they suffered an injury in fact and lost money as a result of R+F's misconduct (elements of the UCL or FAL), that they suffered "any damage" (an

---

[5] While R+F does not contest the point, it had a duty to disclose Lash Boost's side effects because it had exclusive knowledge of them, *see, e.g.*, *Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014); *Johnson v. Harley-Davidson Motor Co. Grp. LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012); *see also* CC ¶¶ 112, 113, and because it made misleading partial representations, *see, e.g.*, *Torres v. JC Penney Corp., Inc.*, No. 12-cv-01105-JST, 2013 WL 1915681, at *5 (N.D. Cal. May 8, 2013); *see also* CC ¶¶ 106-07, 109; *infra* at 15-16, 32.

element of the CLRA, Cal. Civ. Code § 1780(a)), and that they suffered damages due to R+F's negligent misrepresentation or fraudulent concealment. MTD 13, 14, 19. R+F is wrong.

As Plaintiffs have noted, they have alleged an injury in fact because they paid for a product they would not have purchased absent R+F's deception. *See supra* 6-7. Plaintiffs have also established a loss of money under the UCL and FAL; they have alleged that they "would not have bought the product but for" R+F's omission of Lash Boost's side effects. *Kwikset*, 51 Cal. 4th at 330; *see also, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1072 (N.D. Cal. 2012) (plaintiffs had standing because they alleged that if the defendant had made full disclosure, they would have paid less or would not have purchased the product). And, finally, because Plaintiffs have established a loss of money under the UCL and FAL, they have necessarily established that they suffered "any damage" under the CLRA. *See Hinojos*, 718 F.3d at 1108.

Plaintiffs have likewise established damages under their California common-law claims, under which they are, "at a minimum, . . . entitled to out-of-pocket and related damages." *Petrus v. N.Y. Life Ins. Co.*, No. 14-cv-2268-BAS-JMA, 2016 WL 1255812, at *6 (S.D. Cal. Mar. 31, 2016); *see also Lazar v. Superior Court*, 12 Cal. 4th 631, 646 (1996) ("[F]raud plaintiffs may recover 'out-of-pocket' damages in addition to benefit-of-the-bargain damages."). Here, Plaintiffs plausibly allege that they would not have paid money for Lash Boost if R+F had not concealed the side effects from them, so they have suffered out-of-pocket damages in the amount that they paid for Lash Boost.

### 3. Plaintiffs have plausibly alleged an actionable failure to disclose Lash Boost's serious side effects.

R+F claims that it disclosed *one* of Lash Boost's side effects: its capacity to cause irritation.[6] MTD 15. But R+F merely told consumers to "[d]iscontinue use" if there was irritation, *id.* ¶¶ 100,

---

[6] Plaintiffs assume that this and similar arguments are directed to (1) whether the omission is likely to deceive a reasonable consumer under the UCL, FAL, and CLRA, *Consumer Advocates v. Echostar*

107, and that if the irritation "persists" or "is significant," to consult a physician, *id.* ¶¶ 106-07. With respect to irritation, these statements are deceptive half-truths, because while they raise the possibility that irritation *may occur*, they do not disclose that the irritation is an inherent side effect of Lash Boost's active ingredient rather than due to a customer's sensitive skin, other individual trait, or mere happenstance.[7] *Cf. Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1079 (N.D. Cal. 2014) (disclosure that online profiles "may" be shared did not disclose that they would always be shared, and shared widely). And even if these statements *did* qualify as a disclosure that irritation is a side effect, they do not disclose Lash Boost's many other serious side effects, including changed eye color, darkened skin, droopy eyelids, and cysts. *Compare* CC ¶¶ 88-91, *with id.* ¶¶ 100, 102, 106-07, 118, 120.

R+F also suggests that Plaintiffs have not alleged facts to show "what a reasonable consumer believes," and thus cannot show that R+F's omission would be likely to mislead reasonable consumers. MTD 14. In fact, Plaintiffs have alleged ample facts showing what a reasonable consumer believes. Plaintiffs allege that R+F purposely marketed Lash Boost as a cosmetic rather than a drug precisely to "defraud customers" and gain "higher profits." CC ¶ 386; *see also, e.g.*, *id.* ¶¶ 12, 81-82, 85, 98-99, 103, 133, 242. From this allegation, one may reasonably infer that reasonable consumers expect that

---

*Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003); and (2) whether R+F omitted a fact, an element of Plaintiffs' common-law claims, *see* MTD 14. R+F does not challenge materiality.

[7] This is well illustrated by the websites that R+F cites in arguing that "most consumers would likely know that cosmetics used around the eye can cause irritation." MTD 16. One of those websites complains of the writer's "insanely sensitive, dry eyes that get red and irritated really easily," Stephanie Saltzman, *The Best Mascaras for Sensitive Eyes*, Allure Blog (Oct. 27, 2014), https://www.allure.com/story/mascara-for-sensitive-eyes, while the other post is directed to readers who "have sensitive eyes," Erin Lukas, *10 Hypoallergenic Mascaras for When Your Eyes Are Just As Sensitive As You*, InStyle Blog, https://www.instyle.com/beauty/eyes/best-mascaras-sensitive-eyes (last visited Dec. 17, 2018). These websites indicate that consumers know that irritation can result *if they have sensitive eyes*—not that they expect cosmetics used around the eyes to *contain ingredients known to cause serious irritation*.

drugs may cause side effects, but expect that if a cosmetic—particularly one that they apply to their eyes—caused serious side effects, the cosmetic maker would disclose those side effects prominently. *See also id.* ¶¶ 364, 375 (consumer reasonably expects that cosmetic applied to eyelids will fully disclose side effects). Plaintiffs also allege that many consumers complained vehemently about the side effects they experienced when using Lash Boost, *id.* ¶¶ 140-41—which suggests that reasonable consumers did not expect serious side effects. Consumers complained precisely because Lash Boost confounded their expectations. Finally, Plaintiffs allege that R+F portrays itself as a "source of trusted information," a reliable company owned by "doctors, not businesswomen." *Id.* ¶¶ 119, 133. A reasonable consumer would thus expect that R+F would not sell a cosmetic that causes serious side effects, or would sell such a cosmetic only after full disclosure of its risks.

R+F next argues that "because Plaintiffs do not claim to have read R+F's existing disclosures, they cannot show that additional disclosures would have mattered." MTD 15. In fact, the Complaint alleges not only that Plaintiffs were exposed to existing disclosures, CC ¶ 109, but also that additional disclosures would have prompted Plaintiffs to behave differently, *see supra* 9-11. R+F also repeats that Plaintiffs do not identify what R+F should have disclosed. That is not true. *See supra* 9, 12-13.

### 4. Plaintiffs have plausibly alleged that R+F knew that Lash Boost had serious side effects, but failed to disclose them.

According to R+F, the UCL, FAL, and CLRA require Plaintiffs to allege that when R+F sold Plaintiffs Lash Boost, it knew that it had serious side effects or acted with reckless disregard for whether it did.[8] A heightened pleading standard does *not* apply to Plaintiffs' allegations that R+F knew of Lash Boost's serious side effects. "Malice, intent, knowledge, and other conditions of a

---

[8] The CLRA contains such a requirement, but the FAL and the "fraudulent" prong of the UCL do not. *See Tobacco II*, 46 Cal. 4th at 312. The UCL contains that requirement only if the plaintiff is proceeding under the UCL's "unlawful" prong and asserts that the other law that the defendant's business practice has violated is a law, like the CLRA, that requires knowledge of falsity. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-46 (9th Cir. 2012).

person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (en banc).

Plaintiffs have easily satisfied this pleading standard. They have alleged that there is an extensive literature testifying to the serious side effects of prostaglandin analogs, *see* CC ¶¶ 88-91, making it highly probable that a company manufacturing a product containing a prostaglandin analog, particularly a company owned by two doctors, would know about its side effects. Making this knowledge even more probable is the warning letter that the FDA issued in 2011 about the side effects of isopropyl cloprostenate, Lash Boost's active ingredient. *Id.* ¶ 83. Indeed, there is even direct evidence of R+F's knowledge: R+F has *explicitly acknowledged* that other lash products have side effects—while denying, contrary to the science, that Lash Boost somehow lacks those side effects. *Id.* ¶ 130. R+F's knowledge of Lash Boost's side effects is further suggested by the sheer number of customer complaints about those side effects, *id.* ¶ 140, and the pains that R+F has taken to *deny* that Lash Boost has the "potential adverse effects" of which its customers have complained. *Id.* ¶ 133; *see also id.* ¶ 130. Together, all these allegations make it improbable that R+F would *not* have known that Lash Boost causes serious side effects—indeed, the very same side effects as other drugs containing prostaglandin analogs. Allegations that are similar to, if less detailed than, Plaintiffs' have been consistently deemed sufficient to allege knowledge. *See Luong v. Subaru of Am., Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646, at *6 (N.D. Cal. May 2, 2018) (knowledge of falsity supported by allegations of "prior testing, analysis, and consumer complaints"); *Myers v. BMW of N. Am., LLC*, No. 16-cv-00412-WHO, 2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016) (customer complaints may support knowledge when they are submitted to a forum the defendant is likely to view); *Overton v. Bird Brain, Inc.*, No. SACV 11-1054 DOC, 2012 WL 909295, at *6 (C.D. Cal. Mar. 15, 2012) (knowledge adequately alleged by citing past lawsuits about product in question).

R+F's only contrary argument is that it "warn[ed] consumers of irritation" and that Plaintiffs do

"not allege scientific facts" to show that Lash Boost causes serious side effects. MTD 17. But R+F did *not* properly warn consumers that one of Lash Boost's side effects was irritation, and Plaintiffs do allege detailed "scientific facts" to assert that Lash Boost causes serious side effects. *See supra* 12, 15.

### 5. Plaintiffs have plausibly alleged justifiable reliance.

Plaintiffs have plausibly alleged that, if R+F had properly disclosed Lash Boost's side effects, they would not have purchased the product. *See supra* 10-11.

### 6. Plaintiffs have plausibly alleged R+F's intent to deceive and to induce reliance.

R+F asserts that Plaintiffs have failed to allege that R+F intended to deceive and to induce reliance, an element of fraudulent concealment. MTD 19. R+F again ignores Plaintiffs' extensive factual allegations showing that R+F knew of Lash Boost's side effects but failed to disclose them. *See supra* 17-19. R+F also ignores Plaintiffs' allegations showing that R+F concealed those side effects as part of a larger strategy of marketing Lash Boost as a cosmetic—a strategy intended to increase sales precisely by deceiving customers and inducing their reliance on R+F's omissions. *See* CC ¶¶ 103 (making of Latisse claimed that another company marketing isopropyl cloprostenate as a cosmetic caused Latisse to lose sales, i.e., *boosted* sales of the product containing isopropyl cloprostenate), 133 (noting that R+F stressed that Lash Boost was "not a drug product"), 242 (alleging that R+F's omissions were intended to induce consumers "to believe that Lash Boost did not have the same side effects as other drug products on the market"), 386 ("Marketing Lash Boost as a cosmetic enables Rodan + Fields to evade disclosure requirements of the FDA and defraud consumers. This scheme of failing to disclose adverse side effects translated into higher profits....").

### 7. At the pleading stage, Plaintiffs need not allege that they lack an adequate remedy at law.

According to R+F, Plaintiffs' equitable claims under the UCL and FAL must be dismissed. Because Plaintiffs are seeking damages for the same conduct, they necessarily have an adequate remedy at law. MTD 18. The UCL, however, requires no showing that legal remedies are inadequate.

As the UCL states, "Unless otherwise specifically provided, the remedies or penalties provided by this chapter are cumulative to each other, *and to the remedies or penalties available under all other laws of this state.*" Cal. Bus. & Prof'l Code § 17205 (emphasis added); *see Cabrales v. Castle & Cooke Mortg., LLC*, No. 1:14-cv-01138-MCE-JLT, 2015 WL 3731552, at *4 (E.D. Cal. June 12, 2015).

R+F also ignores that Plaintiffs may "state as many separate claims or defenses as [they] ha[ve], regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, Plaintiffs' UCL and FAL claims cannot be dismissed simply because Plaintiffs also seek damages. *See, e.g., Nat'l Corp. Tax Credit Funds II, IV, VII v. Potashnik*, No. CV 07-3528 PSG (FMOx), 2008 WL 11337276, at *7 (C.D. Cal. Jan. 8, 2008) (citing *Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460, 563 (9th Cir. 1977)) (refusing to dismiss negligence claim simply because it sought contract damages). District courts increasingly decline, at the pleading stage, to dismiss claims seeking equitable relief simply because the plaintiff also seeks damages. *See, e.g., Aberin v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018); *Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017); *Cabrales*, 2015 WL 3731552, at *4; *see also Adkins*, 2017 WL 3491973, at *3 (noting that "[a] few federal courts" have ruled otherwise). Indeed, dismissal at this stage is premature, for if a claim for damages should fail later in the case, an adequate remedy at law would indeed be lacking. *See Cabrales*, 2015 WL 3731552, at *4 (noting that plaintiff may pursue an equitable claim should "legal remedies be unavailing").

## D. The other Plaintiffs have stated claims under the consumer protection laws of other states.

### 1. Plaintiff Huling has stated a claim under the FDUTPA.

The FDUTPA outlaws "deceptive acts or practices" in "trade or commerce," Fla. Stat. § 501.204(1), which include an "omission . . . that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of*

*Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (quotation and citation omitted). Here, for the reasons given above, Plaintiffs have alleged just such an omission. *See supra* 15-17.

Consumers may plead causation and damages under the FDUTPA by alleging that because the defendant deceived them, they either bought a product they would not have otherwise bought, or received a product that was worth less than they paid for it. *See Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1264-65 (N.D. Fla. 2012); *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. Dist. Ct. App. 2004). As noted above, Plaintiffs have alleged that but for R+F's omissions, they would not have purchased Lash Boost. *See supra* 10-11. Nor is it "speculative" or "subjective," MTD 20 (citation and quotation omitted), to allege that a cosmetic that causes serious side effects is worth less than one that does not.

R+F claims that Plaintiff Huling cannot show causation because she has not alleged that she read "information or materials regarding" Lash Boost. *Id.* But Huling's FDUTPA claim is based on omissions, not misrepresentations. R+F omitted information about Lash Boost's side effects from *all* its communications—so *whether or not* Huling read Lash Boost materials, she would still have purchased it. Causation is shown because Huling alleges that if R+F had not concealed Lash Boost's side effects, she would not have bought it. *See Beaver v. Inkmart, LLC*, No. 12-60028, 2012 WL 3822264, at *4 ("With regard to causation, Plaintiffs allege that Beaver would not have decided to purchase the Inkmart franchise had Beaver known of Paras' failed business venture in TechHero.").

R+F also argues that Huling fails to allege that the purchase took place in Florida. MTD 20-21. But that fact may easily be inferred from the Complaint, which alleges that Huling lives in Florida, CC ¶ 32, and that all sales take place through consultants or online, *id.* ¶ 72. It would be remarkably *unreasonable* to infer that Huling travelled outside her state to buy Lash Boost when she could have easily purchased it online.

### 2. *Plaintiff Whetsell has stated a claim under the ICFA.*

IFCA prohibits unfair or deceptive business practices, which include "the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission."  815 ILCS 505/2.

While proving actual damages under IFCA requires plaintiffs to allege more than simply that they would not have purchased the product but for defendant's deceptive practice, plaintiffs may support actual damages by alleging that they paid more for a product than it was worth due to the deception.  *See Terrazzino v. Wal-Mart Stores, Inc.*, --- F. Supp. 3d ----, 2018 WL 3921301, at *5 (N.D. Ill. Aug. 16, 2018); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910, at *2 (N.D. Ill. Oct. 26, 2017); *Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL 3895565, at *5 (N.D. Ill. Sept. 6, 2017).  Here, the Complaint alleges facts showing that Lash Boost was worth less than Plaintiff Whetsell paid—or, to put it differently, that Lash Boost commanded a higher price because consumers did not know of its side effects.  The Complaint alleges that Whetsell, like the public generally, was not aware of Lash Boost's side effects.  *See* CC ¶¶ 42-44, 140-41.  This ignorance translates to a higher price for the product.  *See id.* ¶ 386.  As a result, Whetsell paid a higher price for Lash Boost than she would have if R+F had disclosed Lash Boost's serious side effects.  *See id.* ¶ 117 ("Plaintiffs lost money as a result of Rodan + Fields' omissions, in that they did not receive what they paid for....").

To argue that Whetsell has not alleged actual damages, R+F relies on inapposite cases.  It cites cases in which a plaintiff claimed that he or she was deceived by a seller's claim that an item's retail price was higher than the price at which the seller listed the item.  In those cases, however, the plaintiffs received the benefit of the bargain because they could not "establish that the value of what [they] received was less than the value of what [they were] promised."  *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. 2008); *accord Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739-40

(7th Cir. 2014); *Kim v. Carter's Inc.*, 598 F.3d 362, 365-66 (7th Cir. 2010). It also cites a case that did not address actual damages. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334 (7th Cir. 2018) (plaintiff's "claims fail for a different reason altogether").

R+F argues that Whetsell must plead, but has failed to plead, "reliance." MTD 21-22; *but see Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 12 (Ill. App. Ct. 2001). Plaintiffs *have* alleged reliance in detail, *see supra* 9-11, which satisfies ICFA. *Miller*, 762 N.E.2d at 12.

### 3. *Plaintiff Merle has stated a claim under Massachusetts General Laws Chapter 93A.*

Massachusetts General Laws chapter 93A, section 2, prohibits deceptive acts or practices in the conduct of any trade or commerce. Mass. Gen. Laws Ch. 93A, § 2(a). A practice is deceptive "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Lowell Gas Co. v. Att'y Gen.*, 385 N.E.2d 240, 249 (Mass. 1979). Here R+F's omissions could reasonably be found to have caused consumers to act differently. *See supra* 16-17.[9]

R+F says that Merle has not pleaded reliance. Although chapter 93A does not require reliance, *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 486 (Mass. 2004), Merle alleges it. *See supra* 9-11.

R+F next argues that Merle has not alleged "an actionable injury" because she has failed to allege facts showing a difference in value between what she paid and what she received. MTD 22, 23. R+F is incorrect. Under chapter 93A, a plaintiff may establish economic injury by alleging that during the plaintiff's "usage or ownership" of a product, the product "did not deliver the full anticipated and advertised benefits, and therefore were worth less, as used or owned, than what the plaintiffs had paid."

---

[9] R+F also claims that Merle has failed to properly allege that it "failed to disclose anything it had a duty to disclose." MTD 22. Under chapter 93A, however, "a duty exists . . . to disclose material facts known to a party at the time of a transaction." *Underwood v. Risman*, 605 N.E.2d 832, 835 (Mass. 1993). Plaintiffs have amply alleged that R+F knew of Lash Boost's side effects when it sold the product to Merle. *See supra* 17-19. Under chapter 93A, "[t]o determine if the nondisclosure of a material fact," courts "ask whether the plaintiff likely would have acted differently but for the nondisclosure." *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 170 (Mass. App. Ct. 2009). Plaintiffs have alleged detailed facts to show that Merle would indeed have acted differently if Lash Boost's side effects had been disclosed. *See supra* 9-11.

*Bellermann v. Fitchburg Gas & Elec. Light Co.*, 54 N.E.3d 1106, 1112 (Mass. 2016); *see also Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 479 (D. Mass. 2015) (economic injury established by ownership of a product "whose value was artificially inflated by a deceptive act or practice at the time of purchase" (quotation and citation omitted)). Here, for the reasons given above, the Complaint plausibly alleges that due to R+F's omissions, Merle paid a higher price for Lash Boost than she would have if R+F had disclosed Lash Boost's serious side effects. *See supra* 22; *see also* CC ¶ 117.

*Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017), on which R+F relies, is inapplicable. *Shaulis* is a case about comparative price deception. Shaulis claimed that she had been injured because Nordstrom had falsely claimed that the sweater she bought was sold elsewhere at a higher price. *See id.* at 5. The First Circuit rejected this theory because Shaulis had "fail[ed] to identify any bargained-for characteristic of the sweater that she ha[d] not received." *Id.* at 12. Here, by contrast, Merle alleges that she did not receive a bargained-for characteristic of Lash Boost: a product that would not cause serious side effects. Because Lash Boost was "deficient" in an "objectively identifiable way," Lash Boost was worth less than Merle paid for it. *Id.*; *see also O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 459-60 (D. Mass. 2018) (noting that there is a reasonable inference of overpayment if the product is held out as safer or healthier than it really is); *supra* 22.

### 4. Plaintiffs Hufnagel, Gattuso, and Wagner state a claim under the New York GBL.

"[T]o prevail in a cause of action under GBL §§ 349 and 350, the plaintiff must prove that the defendant made misrepresentations or omissions that were likely to mislead a reasonable consumer in the plaintiff's circumstances, that the plaintiff was deceived by those misrepresentations or omissions and that as a result the plaintiff suffered injury." *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (App. Div. 2004). Here, contrary to R+F's assertion, MTD 24, Plaintiffs have plausibly alleged that R+F's omissions were likely to mislead reasonable consumers in their circumstances. *See supra* 16-17.

R+F again insists that Plaintiffs have merely alleged that they would not have bought Lash Boost but for R+F's omissions. MTD 24. But they have alleged that "'the price of [Lash Boost] was inflated as a result of [the] defendant's deception,'" a theory they "may properly allege . . . in conjunction" with their allegations that they would not have purchased Lash Boost but for the omissions. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014) (quoting *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007)).[10] *See supra* 22.

R+F next asserts that Plaintiffs have failed to allege causation, apparently because, according to R+F, Plaintiffs have not asserted that they read R+F's representations about Lash Boost. MTD 25. While an affirmative-misrepresentation claim under GBL sections 349 or 350 requires specific allegations about a defendant's statements and whether a plaintiff was exposed to them, a claim premised on an omission need not make such allegations. *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 562 (S.D.N.Y. 2016); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 860 (S.D. Ohio 2012); *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011). R+F did not disclose Lash Boost's serious side effects *anywhere*, so Plaintiffs would have purchased Lash Boost at an inflated price *whether or not* they read R+F's statements.

Finally, R+F maintains that Plaintiffs have not properly alleged that they "made their purchases within New York." MTD 25. But the Complaint alleges that Plaintiffs all reside in New York, CC ¶¶ 53, 59, 63, and since Lash Boost is sold online or through individual consultants, *id.* ¶ 72, it is highly plausible to infer that Plaintiffs made their purchases in New York. *See supra* 21.

---

[10] R+F cites *DaCorta v. AM Retail Grp.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *9 (S.D.N.Y. Jan 23, 2018) for the proposition that GBL sections 349 and 350 do not recognize this as an injury. MTD 25 n.7. *DaCorta* did not reject the legal theory, but merely held that the plaintiff's allegations were conclusory. Here, the allegations are detailed. *See supra* 22. The other case that R+F cites does not appear to be available on Westlaw.

R+F says Plaintiff Williams has not alleged a "misleading or untrue statement," MTD 26, but the Complaint satisfies Washington's broad capacity-to-deceive standard. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986) (deceptiveness turns on whether a practice "had the *capacity* to deceive a substantial portion of the public," and noting that the "purpose of the capacity-to-deceive test is to deter deceptive conduct *before* injury occurs"); *supra* 15.

R+F also contends that Williams has failed to allege causation or injury. But since Williams has established that R+F omitted a material fact, her allegations have created—at the least—a question of fact as to causation. *See Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 391 P.3d 582, 587-88 (Wash. Ct. App. 2017) (a material omission raises a rebuttable presumption of reliance and hence causation). Williams has also established injury under the Washington CPA, which recognizes a "broad" scope of cognizable injuries. *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 25 (Wash. Ct. App. 2007). She has suffered an injury because she received a product that was worth less than she paid for it. *See Matheny v. Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1226 (E.D. Wash. 2009) (the "amount of actual damages" awarded under CPA was "Plaintiff's benefit of the bargain").

**E. Plaintiffs state claims under the common law of Florida, Massachusetts, New York, Washington, and Illinois.**

R+F's arguments against Plaintiffs' common-law claims simply restate arguments discussed above. R+F asserts that Plaintiffs have failed to allege "deceptive conduct." MTD 27. That is false. *See supra* 15-17. It says that Plaintiffs have failed to allege "justifiable reliance," MTD 27, which is likewise false, *see supra* 9-11. It contends that Plaintiffs have failed to allege "resulting harm." MTD 27. Again, that is incorrect. *See supra* 14-15, 22. Finally, R+F maintains that Plaintiffs "do not allege particularized facts to support their claim that R+F intended to defraud consumers." MTD 27. In fact, Plaintiffs satisfy the correct pleading standard on that element. *See supra* 19.

**F.    Plaintiffs state a RICO claim.**

    *1.    Plaintiffs have plausibly alleged that they have statutory standing.*

Plaintiffs have plausibly alleged a cognizable harm to business or property that has resulted in concrete financial loss. CC ¶¶ 23, 30, 37, 44, 51, 57, 61, 65, 69, 431. Overpayment due to deception confers statutory standing under RICO. "In the ordinary context of a commercial transaction, a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 342 (1979)). Thus, in cases like this one, "[w]hen a plaintiff alleges that he or she overpaid for a good or service because of anticompetitive or deceptive conduct . . . such an injury is one to 'property,' not merely 'expectation interests.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 961 (N.D. Cal. 2018); *accord In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, --- F. Supp. 3d ----, 2018 WL 4777134, at *14 (N.D. Cal. Oct. 3, 2018). "Money has physical form; and the overpayment of money. . . is a tangible injury" and there is a "relatively low threshold for plaintiffs to adequately plead a 'concrete' RICO injury." *EcoDiesel Mktg.*, 295 F. Supp. 3d at 261-62.

R+F relies on certain out-of-circuit decisions where courts have rejected "expectation-interest" theories under RICO. MTD 29:20-24, 30:19-31:1. As Judge Chen has noted, however, overpayment "for a good or service because of . . . deceptive conduct" is an injury "to 'property,' not merely 'expectation interests.'" *See EcoDiesel Mktg.*, 295 F. Supp. 3d at 960. This case, in which Plaintiffs overpaid due to R+F's deception, is thus distinguishable from *McLaughlin v. American Tobacco*, 522 F.3d 215 (2d Cir. 2008), the principal case on which R+F relies, for there the plaintiffs were not actually alleging that they had paid "an artificially inflated price" for a product. *EcoDiesel Mktg.*, 295 F. Supp. 3d at 960. R+F also relies on the inapposite *Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000), where the plaintiffs had not actually alleged that they had each received inferior health care due to the

defendant's actions. *Id.* at 487. Finally, while Plaintiffs need not allege a specific dollar amount by which they overpaid, they have alleged that they overpaid by approximately $150—the retail purchase price of the product. CC ¶ 16; *see, e.g.*, *EcoDiesel Mktg.*, 295 F. Supp. 3d at 962-63; *see also Cohen v. Trump*, 303 F.R.D. 376, 388-89 (S.D. Cal. 2014) (allowing plaintiffs to prove that their RICO damages equaled the purchase price of the education for which they paid due to the defendant's deception).

### 2. Plaintiffs have plausibly alleged that R+F proximately caused their injuries.

The central question in the RICO causation inquiry is "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Here, there are no more direct victims of the wrongful conduct than Plaintiffs. All Plaintiffs allege in detail that they would not have purchased or used Lash Boost had R+F not omitted from its website, and from its other mail and wire communications, that Lash Boost has serious side effects.

R+F argues, however, that Plaintiffs must plead reliance and have failed to do so. MTD 31-32. Both the Supreme Court and the Ninth Circuit, however, have held that reliance is not an element of a RICO claim. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008); *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 363 (9th Cir. 2005).

R+F has also failed to point to a RICO case in which a court required plaintiffs to show reliance when they alleged that the defendant had made fraudulent *omissions* rather than only affirmative misrepresentations. Because Plaintiffs allege that R+F universally failed to disclose the physical dangers of Lash Boost, and because they allege that they were deceived by that omission into purchasing Lash Boost—something they would not have done but for the omission—they have sufficiently alleged proximate causation. While R+F argues that the Complaint "is silent on what omissions" caused Plaintiffs' injuries, and does not "specifically describe any omissions," MTD 32, these statements once again ignore the many allegations in the Complaint that allege these matters in

detail.[11]  The Complaint also alleges how the "consultants . . . caused Plaintiffs' injuries," *id.*: because R+F kept the consultants in the dark, consumers who bought from the consultants did not learn of Lash Boost's side effects.  *See* CC ¶ 391 ("Consultants similarly fail to disclose adverse side effects. . . when they interact directly with customers to sell Rodan + Fields products."); *see also id.* ¶¶ 102, 118, 120, 387, 391.  R+F cannot make these allegations disappear simply by ignoring them.

### 3.  Plaintiffs plausibly allege the existence of a RICO enterprise.

A RICO "enterprise" consists of "any individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact, although not as a legal entity." 18 U.S.C. § 1961(4).  The Ninth Circuit has referred to this definition as "expansive" and "not very demanding."  *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quotation and citation omitted).  R+F asserts that for an association-in-fact to count as an enterprise, the "common purpose must be criminal in nature."  MTD at 33.  But the Supreme Court has already laid out the required structural features for an "association-in-fact" enterprise: "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit those associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  Notably, these elements simply require a *purpose*, not a solely criminal purpose.  And the Supreme Court has already rejected the view that civil RICO claims should be limited to cases where the defendant has been convicted of a criminal offense that constitutes a RICO predicate act.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S.

---

[11] *See, e.g.*, CC ¶¶ 101 ("[T]he information accompanying the product . . . failed to include the serious adverse side effects associated with the prostaglandin analog in Lash Boost."), 102 (R+F's "Frequently Asked Questions" fact sheet did not "disclose all of the side effects associated with prostaglandin analogs"), 110-11 (after stating verbatim the warnings on Lash Boost packaging, noting that the labels do "not adequately disclose and warn of adverse effects," and explaining why), 118 (R+F "did not fully and adequately advise [its] consultants about the adverse effects"), 125-38 (alleging in detail the substance of advertising statements and statements on the R+F website, and explaining why these statements fail to disclose Lash Boost side effects).

479, 493 (1985); *see also id.* at 499 (Congress wanted to reach both legitimate and illegitimate enterprises).

What matters under *Boyle* is that Plaintiffs plausibly allege that two or more individuals had the common purpose of increasing sales of Lash Boost through fraudulent means. Although the independent consultants were unwitting co-conspirators, they were used by R+F in furtherance of its scheme to defraud consumers by knowingly concealing Lash Boost's serious side effects. Drs. Rodan and Fields—as individuals distinct from the R+F corporate entity and from the independent consultants—also had the common purpose of perpetuating the fraudulent scheme by touting their status as doctors to hold the company out as a source of trusted information and to distinguish their company from other cosmetic companies. CC ¶¶ 119, 252.

Plaintiffs also plausibly allege that the enterprise featured relationships among those associated with it. The enterprise was more than a mere routine contractual relationship. Instead, Plaintiffs allege strong relationships both *among* the consultants and between the consultants and R+F. The strong relationships among the consultants are shown by the annual conventions and Facebook groups R+F hosts—which the consultants then use to network with, learn from, and support each other. *Id.* ¶¶ 389, 399. The relationship between R+F and its consultants is also highly structured, with compensation plans for consultants, *id.* ¶ 419, and a "nurse line" to answer consultants' product-related questions, *id.* ¶ 427. R+F thus has the organizational structure sufficient to form an enterprise and the longevity necessary to accomplish the enterprise's purpose.

These strong and close relationships distinguish this case from those on which R+F relies. In *Jubilerer v. MasterCard International*, 68 F. Supp. 2d 1049 (W.D. Wis. 1999), a gambler lost money at an online casino and sued his credit card company and bank under RICO. The district court ruled that the plaintiff had not alleged an enterprise because each party was simply conducting its own affairs, without any hierarchical or consensual decision making. *Id.* at 1052-53. Here, by contrast,

R+F's consultants sell Lash Boost on behalf of, and at the directions of, R+F. *See* CC ¶¶ 387-88, 390, 395. In *In re Countrywide Financial Mortgage-Backed Securities Litigation*, No. 2:11-ML-02265-MRP (MANx), 2012 WL 10731957 (C.D. Cal. June 29, 2012), the non-Countrywide entities were "actively competing with each other," and there were no facts suggesting coordinated behavior. *Id.* at *9. Here, however, R+F consultants worked directly with R+F to further its goals, and consultants collaborated among themselves. *See, e.g.*, CC ¶¶ 387-89.

### 4. Plaintiffs satisfy RICO's predicate-racketeering-acts requirement.

A "pattern of racketeering activity" requires the commission of at least two predicate acts within a ten-year period. *See* 18 U.S.C. § 1961(5). These predicate acts may be mail or wire fraud, *id.* § 1961(1), whose elements are (1) the formation of a scheme to defraud, (2) the use of the mails or wires in furtherance of that scheme, and (3) the specific intent to defraud. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Plaintiffs have alleged these elements. They have identified a fraudulent scheme—a scheme of consciously concealing Lash Boost's side effects to gain higher profits for R+F. *See* CC ¶¶ 386, 391, 394, 395. They have identified multiple uses of the mails or wires in furtherance of the scheme between 2016 and 2018. These include mailings of the Lash Boost product itself, which included knowingly deceptive warning labels, *id.* ¶¶ 417-18; fraudulent misrepresentations made on R+F's website, transmitted via wire-communication technology, *id.* ¶¶ 124-25, 130, 133, 137, 419; and promotional materials posted elsewhere on the internet—materials that failed to disclose the product's harmful side effects, *id.* ¶ 422. And finally, they have alleged ample facts from which to infer fraudulent intent. *See supra* 19.

### a. Plaintiffs plausibly allege a scheme to defraud.

R+F appears to argue that Plaintiffs have failed to plead a fraudulent scheme because they have not properly alleged that Lash Boost had serious side effects, that Plaintiffs relied on R+F's warnings, or that Plaintiffs would have become aware of Lash Boost's side effects if R+F had properly disclosed

them.  MTD 34-35.  But Plaintiffs *have* properly alleged that Lash Boost has serious side effects and that Plaintiffs would have become aware of these dangers if they had been properly disclosed.  *See supra* 9-11.  And R+F does not explain why reliance is relevant to whether it had a fraudulent scheme, as opposed to whether that fraudulent scheme proximately caused Plaintiffs' injuries.

R+F also argues that it had no duty to disclose Lash Boost's side effects.  That is incorrect.  R+F had a duty to disclose those side effects because it made affirmative misrepresentations and misleading half-truths about Lash Boost.  *See United States v. Lloyd*, 807 F.3d 1128, 1153 (9th Cir. 2015) (citing *United States v. Laurienti*, 611 F.3d 530, 541 (9th Cir. 2010)) (duty to disclose arises from affirmatively telling a misleading half-truth); *accord, e.g.*, *Emergy v. Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995).  For example, on the packaging to which all Plaintiffs were exposed, CC ¶ 109, R+F told consumers to stop using Lash Boost if they experienced irritation, without disclosing that irritation was a known side effect of Lash Boost's active ingredient.  This is, at best, a misleading half-truth about skin irritation.  *See supra* 15-16.  R+F also told consumers that they should not be concerned about Lash Boost's side effects because it is a cosmetic, CC ¶ 130; that some consumers "may report temporary tingling or redness," when the truth is that the side effects may be permanent and far more severe than tingling or redness, *id.* ¶¶ 125-26; and that Lash Boost is safe, non-irritating, and would not affect the structure or function of lashes, when the truth is that Lash Boost is unsafe, irritating, and does affect the structure of lashes, *id.* ¶¶ 133-35.  All these half-truths and affirmative misrepresentations obliged R+F to disclose the truth.  When R+F consciously decided not to tell the truth in its mail and wire communications, it committed fraud.

b.  Plaintiffs plausibly allege use of the mails or wires in furtherance of the scheme.

Although the thrust of its argument is not entirely clear, R+F appears to suggest that two of its predicate acts directed at Plaintiff Buckingham could not have been performed in furtherance of the fraudulent scheme because the acts did not cause harm.  *See* MTD 34:19-26.  But "Plaintiffs need not

plead or prove that they have suffered harm as a result of each individual predicate act, but rather that the predicate acts are all part of a pattern of racketeering activity and that they have suffered harm as a direct result of at least one predicate act," *Just Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2012 WL 6087210, at *14 (N.D. Cal. Dec. 6, 2012), which these Plaintiffs have done. *See supra* 28-29. Moreover, to be in furtherance of a fraudulent scheme, a wire or mail "communication itself need not be fraudulent, so long as it is 'either incident to an essential part of the scheme' or a 'step in the plot.'" *Perkumpulan Inv'r Crisis Ctr. Dressel—WBG v. Regal Fin. Bancorp. Inc.*, 781 F. Supp. 2d 1098, 1111 (W.D. Wash. 2011) (quoting *United States v. Rude*, 88 F.3d 1538, 1544 (9th Cir. 1996)). This accurately describes R+F's mailing and wire communication to Buckingham, because they were a necessary incident to the sale of Lash Boost.

### c. Plaintiffs plausibly allege specific intent to defraud.

R+F argues that Plaintiffs failed to plead a specific intent to defraud or R+F's knowledge of the falsity of its statements or omissions. MTD 35. Plaintiffs have alleged, however, that R+F knew that its statements and omissions about Lash Boost were false when it made them, and that it made them with an intent to induce reliance. *See supra* 17-18, 19. This satisfies the specific-intent requirement under the federal mail and wire fraud statutes.

R+F maintains that because cosmetics sales are facially legitimate, Plaintiffs must meet a heightened pleading standard. But *Eclectic Properties*, the case on which R+F relies, "did not alter the requirements of Rule 9(b) that allegations of scienter may be alleged generally." *State Compensation Ins. Fund v. Capen*, No. SACV 15-1279 AG (CWx), 2015 WL 13322034, at *6 (C.D. Cal. Dec. 18, 2015). And the Complaint contains "a significant level of factual specificity." *Eclectic Props.*, 751 F.3d at 998. It alleges detailed facts to show that the scheme of concealing Lash Boost's serious side effects was "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* at 997 (quotation and citation omitted); *see also supra* 15-17 (citing CC ¶¶ 119, 133 140-41, 364, 375,

386). It also alleges detailed facts (1) about the volume and unanimity of the scientific literature on the side effects of prostaglandin analogs, including an FDA warning letter about the very same ingredient in Lash Boost, CC ¶¶ 88-91; (2) about R+F's explicit acknowledgment that other lash products, which contain prostaglandin analogs, cause side effects, *id.* ¶ 130; (3) about R+F's expertise and resources, which would have alerted them to this literature, *see id.* ¶¶ 119, 133; and (4) about consumers' complaints that Lash Boost had side effects, *id.* ¶¶ 140-41. Together, these allegations create a reasonable inference that when R+F failed to disclose Lash Boost's side effects, it did so with fraudulent intent.

## VI. IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE GRANTED

For the reasons given above, Plaintiffs have stated valid claims. Should the Court conclude that Plaintiffs have not alleged facts sufficient to establish any of their claims, however, Plaintiffs respectfully seek leave to amend. Under Rule 15(a), leave to amend "shall be freely given when justice so requires," and since this case is still at the pleadings stage, this request is timely, and R+F will not suffer prejudice, leave to amend should be granted. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987).

## VII. CONCLUSION

R+F's motion to dismiss should be denied.

DATED this 19th day of December, 2018.

KELLER ROHRBACK L.L.P.

By: /s/ *Juli E. Farris*
Juli E. Farris (Bar No. 141716)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
(805) 456-1496; Fax: (805) 456-1497
jfarris@kellerrohrback.com

Jeffrey D. Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900; Fax: (510) 463-3901
jlewis@kellerrohrback.com

Michael D. Woerner, *admitted pro hac vice*
Benjamin Gould (Bar No. 250630)
Erika M. Keech, *admitted pro hac vice*
Ryan P. McDevitt, *pro hac vice forthcoming*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900; Fax: (206) 623-3384
mwoerner@kellerrohrback.com
bgould@kellerrohrback.com
ekeech@kellerrohrback.com
rmcdevitt@kellerrohrback.com

***Interim Lead Counsel for Plaintiffs***

Marc Godino (Bar No. 182689)
GLANCY PRONGAY & MURRAY
1925 Century Park E, Suite 2100
Los Angeles, CA 90067
(310) 201-9150; Fax: (310) 201-9160
mgodino@glancylaw.com

***Interim Class Counsel***

Rosemary Rivas (Bar No. 209147)
LEVI & KORINSKY
44 Montgomery Street, Suite 650
San Francisco, CA 94104
(415) 291-2420; Fax (415) 484-1294
RRivas@zlk.com

Joseph Sauder
SAUDER & SCHELKOPF
555 Lancaster Avenue
Berwyn, PA 19312
(888) 711-9975; Fax: (610) 421-1326
jgs@sstriallawyers.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 19, 2018

/s/ *Juli E. Farris*
Juli E. Farris (Bar No. 141716)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
(805) 456-1496; Fax: (805) 456-1497
jfarris@kellerrohrback.com