1  **STEPTOE & JOHNSON LLP**
   STEPHANIE A. SHERIDAN, State Bar No. 135910
2  ssheridan@steptoe.com
   ANTHONY J. ANSCOMBE, State Bar No. 135883
3  aanscombe@steptoe.com
   MEEGAN B. BROOKS, State Bar No. 298570
4  mbrooks@steptoe.com
   Steuart Tower, 1 Market Street, Suite 1800
5  San Francisco, CA 94105
   Telephone: (415) 365-6700
6  Facsimile:  (415) 365-6678

7  Attorneys for Defendant,
   RODAN & FIELDS, LLC

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA
                            OAKLAND DIVISION
10

11

12  BARBARA LEWIS, AKEMI                      Case No. 4:18-cv-02248-PJH
    BUCKINGHAM, BOBBIE JOE HULING,            (Consol. with No. 4:18-cv-02505-PJH)
13  CYNTHIA WHETSELL, MARTHA MERLE,
    ELAINA HUFNAGEL, TERESA GATTUSO,          **DEFENDANT'S REPLY IN SUPPORT OF
14  ELISSA WAGNER, and DIXIE WILLIAMS,        ITS MOTION TO DISMISS PLAINTIFFS'
    individually and on behalf of all others  CONSOLIDATED COMPLAINT**
15  similarly situated,

16                                            Assigned To: Judge Phyllis J. Hamilton
                       Plaintiffs,
17                                            Hearing Date:   February 20, 2019
            vs.                               Hearing Time:   9:00 a.m.
18                                            Courtroom:      3—3rd Floor
    RODAN & FIELDS, LLC, a California
    limited liability,                        Action Filed: April 13, 2018
19

20                     Defendant.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION..................................................................................................1

II.   PLAINTIFFS HAVE NOT IDENTIFIED ANY INJURY-IN-FACT CAUSED BY R+F AND THEREFORE LACK ARTICLE III AND STATUTORY STANDING....................1

      A.   Plaintiffs Do Not Claim that Lash Boost Caused Their Irritation............................1

      B.   Plaintiffs Have Not Suffered Any "Economic Injury".............................................2

      C.   Plaintiffs' Alleged Economic Injuries Are Not Traceable to R+F ...........................3

      D.   The Out-of-State Plaintiffs' Newly Asserted Price Premium Theory Should Be Disregarded ...........................................................................................................5

III.  PLAINTIFFS FAIL TO STATE A CLAIM ......................................................................6

      A.   Plaintiffs Do Not Satisfy Rule 9's Heightened Standards........................................6

            1.   Plaintiffs Do Not Allege the Circumstances of their Alleged Deception .....6

            2.   Plaintiffs Fail to Allege a Plausible Scientific Basis for Their Claim that Lash Boost Causes "Serious Side Effects" ...................................................7

      B.   The California Plaintiffs Fail to State a Claim .......................................................8

            1.   R+F Did Not Fail to Disclose Anything It Had a Duty to Disclose.............8

            2.   Plaintiffs Fail to Allege Facts Showing that R+F Acted with Scienter........9

            3.   Plaintiffs Fail to Allege that They Lack an Adequate Remedy at Law, Thus Requiring Dismissal of Their UCL and FAL Claims ........................10

            4.   The California Common Law Fraud Claims Fail for Additional Reasons .11

      C.   The Out-of-State Plaintiffs Have Not Stated a Claim Under Their States' Consumer Protection Laws .................................................................................11

            1.   Huling Has Not Stated a Claim Under the FDUTPA................................11

            2.   Whetsell Has Not Stated a Claim Under the ICFA ...................................12

            3.   Merle Has Not Stated a Claim Under Chapter 93(A) ...............................13

            4.   Hufnagel, Gattuso, and Wagner Do Not State a New York GBL Claim....14

            5.   Williams Has Not Stated a Claim Under the Washington CPA ................15

            6.   Plaintiffs Fail to State Common Law Claims Under Florida, Massachusetts, New York, Washington, or Illinois Law ..........................15

IV.    PLAINTIFFS CANNOT SALVAGE THEIR RICO CLAIM ............................................. 15

       A.    Plaintiffs' New Overpayment Theory Cannot Establish Standing under RICO ..... 16

       B.    Plaintiffs Have Not Shown Proximate Causation ...................................................... 17

       C.    Routine Commercial Activity Is Not a Criminal Enterprise ................................... 18

       D.    Plaintiffs Fail to Allege a Scheme to Defraud ......................................................... 19

V.    THIS COURT SHOULD DENY LEAVE TO AMEND ................................................. 20

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................................1

*Azoulai v. BMW of N.A., LLC*,
   16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017)...........................................2

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007)...............................................................................................3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................1

*Birdsong v. Apple Inc.*,
   2008 WL 7359917 (N.D.Cal. June 13, 2008), *aff'd*, 590 F.3d 955...........................................2

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009)...........................................................................................1, 2

*Boysen v. Walgreen Co.*,
   11cv06262-SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ......................................2, 8, 9

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016)...................................................................................14

*Cohen v. Trump*,
   303 F.R.D. 376 (S.D. Cal. 2014).....................................................................................16, 17

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
   332 F. App'x 565 (11th Cir. 2009)........................................................................................12

*Community Bank of Trenton v. Schnuck Markets, Inc.*,
   887 F.3d 803 (7th Cir. 2018)................................................................................................4

*Contreras v. Toyota Motor Sales U.S.A. Inc.*,
   484 F. App'x 116 (9th Cir. 2012)............................................................................................2

*Corral v. Carter's Inc.*,
   1:13-CV-0262 AWI, 2014 WL 197782 (E.D. Cal. Jan. 16, 2014) ...........................................8

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009)................................................................................................18

*DaCorta v. AM Retail Group, Inc.*,
    16-CV-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ................................5, 12, 14

*Edlow v. RBW, LLC*,
    688 F.3d 26 (1st Cir. 2012) ..............................................................................13

*Ehrlich v. BMW of N.A., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010) .............................................................4

*Ferreira v. Sterling Jewelers, Inc.*,
    130 F. Supp. 3d 471 (D. Mass. 2015) .............................................................13

*Fisher v. Monster Beverage Corp.*,
    125 F. Supp. 3d 1007 (C.D. Cal. 2013), *aff'd in relevant part*, 656 F. App'x 819
    (9th Cir. 2016) ..................................................................................................2

*Foman v. Davis*,
    371 U.S. 178 (1962) .........................................................................................20

*Frye v. L'Oreal USA, Inc.*,
    583 F. Supp. 2d 954 (N.D. Ill. 2008) ..........................................................5, 8

*Gardner v. Safeco Ins. Co.*,
    2014 WL 2568895 (N.D. Cal. June 6, 2014) ..................................................11

*Garner v. Healy*,
    184 F.R.D. 598 (N.D. Ill. 1999) ......................................................................17

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y 2014) ..................................................................14

*Gomez v. Guthy-Renker, LLC*,
    Case No. EDCV 14-01425 JGB, 2017 WL 4270042 (C.D. Cal. July 13, 2015) ...............16, 18

*Hall v. Sea World Ent., Inc.*,
    3:15-CV-660-CAB, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)...........................................7

*Herrington v. Johnson & Johnson Consumer Cos.*,
    09cv1597-CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)..........................................8, 9, 14

*Hill v. Hoover Co.*,
    899 F. Supp. 2d 1259 (N.D. Fla. 2012) ..........................................................12

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................4

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018)........................................................16, 17

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,
    277 F.R.D. 586 (S.D. Cal. 2011)......................................................................17

*In re Facebook Advertising Litig.*,
    No. 5:09-cv-03043, 2010 WL 3341062 (N.D.Cal. Aug. 25, 2010) ............................................6

*In re Fruit Juice Prods.*,
    831 F.Supp.2d 507 (D.Mass.2011) ...........................................................................8, 9, 13

*In re Johnson & Johnson Talcum Powder Products Mktg., Sales Practices and*
    *Liab. Litig.*,
    903 F.3d 278 (3d Cir. 2018) ...........................................................................................6

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ............................................................................14

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007) ....................................................................................13

*Izquierdo v. Mondelez Int'l, Inc.*,
    No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..................................14

*Jubiler v. MasterCard International*,
    68 F. Supp. 2d 1049 (W.D. Wisc. 1999) ..........................................................................18

*Justice v. Rheem Mfg.*,
    318 F.R.D. 687 (S.D. Fla. Apr. 27, 2016) ..........................................................................4

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .........................................................................................6

*Kennedy v. Jackson Nat'l Life Ins. Co.*,
    No. C 07-0371 CW, 2010 WL 2524360 (N.D. Cal. June 23, 2010) .......................................17

*Lassen v. Nissan N.A., Inc.*,
    211 F.Supp.3d 1267 (C.D.Cal. 2016) ...............................................................................2

*Leppert v. Champion Petfoods USA Inc.*,
    Case No. 18 C 4347, Dkt. 33 (N.D. Ill. Jan. 16, 2019) ......................................................8, 9

*Lombardo v. Johnson & Johnson Consumer Cos.*,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015) ...........................................................................12

*Maple v. Costco Wholesale Corp.*,
    649 Fed. Appx. 570, 572 (9th Cir. 2016) ...........................................................................5

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ..............................................................................6

*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
    62 F. Supp. 2d 236 (D. Mass. 1999) ..............................................................................13

*McVicar v. Goodman Global, Inc.*,
    1 F. Supp. 3d 1044 (C.D. Cal. 2014) ................................................................................4

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016) ................................................................. 11

*Mullins v. Premier Nutrition Corp.*,
    No. 13-CV-01271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ........................ 10

*Munning v. The Gap, Inc.*,
    2017 WL 2377867 (N.D. Cal. June 1, 2017) ........................................................... 11

*Nguyen v. Nissan N. Am.*,
    2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ......................................................... 11

*Nordyke v. King*,
    644 F.3d 776 (9th Cir. 2011) .................................................................................. 20

*Orshan v. Apple Inc.*,
    5:14-CV-05659-EJD, 2018 WL 5858643 (N.D. Cal. Nov. 6, 2018) ......................... 7

*Pardini v. Unilever U.S., Inc.*,
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) .................................................................... 4

*Philips v. Ford Motor Co.*,
    2015 WL 4111448 (N.D. Cal. July 7, 2015) ........................................................... 10

*Phillips v. Apple Inc.*,
    15-CV-04879-LHK, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ........................... 3

*Rhynes v. Stryker Corp.*,
    2011 WL 2149095 (N.D. Cal. May 31, 2011) ......................................................... 11

*Robins v. Global Fitness Holdings, LLC*,
    838 F. Supp. 2d 631 (N.D. Ohio 2012) ................................................................... 18

*Robinson v. C.R. Bard, Inc.*,
    2016 WL 3361825 (N.D. Cal. June 17, 2016) ......................................................... 11

*Rodi v. S. New Eng. Sch. of L.*,
    532 F.3d 11 (1st Cir. 2008) ............................................................................... 5, 13

*Sabo v. Wellpet LLC*,
    250 F. Supp. 3d 332 (N.D. Ill. 2017) ..................................................................... 12

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
    2016 WL 7486600*14 (C.D. Cal. Sept. 27, 2016) .................................................. 10

*Simpson v. California Pizza Kitchen, Inc.*,
    989 F. Supp. 2d 1015 (S.D. Cal. 2013) .................................................................... 2

*Smith v. LG Elecs.*,
    No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ......................... 10

*Summit Estate, Inc. v. Cigna Healthcare of CA, Inc.*,
    2017 WL 4517111 (N.D. Cal. Oct. 10, 2017)........................................................11

*Weiner v. Snapple Beverage Corp.*,
    No. 07 CIV. 8742 DLC, 2011 WL 196930 (S.D.N.Y. Jan. 21, 2011).......................14

*Williamson v. Reinalt-Thomas Corp.*,
    No. 11-3548, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2013) .......................................4

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011)..................................................................14

**California Cases**

*Alliance Mortg. Co. v. Rothwell*,
    10 Cal. 4th 1226 (1995)..........................................................................................11

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009)............................................................................................2

*Prudential Home Mortg. v. Superior Court*,
    66 Cal. App. 4th 1236 (1998).................................................................................10

*Stout v. Turney*,
    22 Cal.3d 718 (1978)..............................................................................................11

**Other State Cases**

*Avery v. State Farm Mut. Auto. Ins.*,
    835 N.E.2d 801 (Ill. 2005) ....................................................................................13

*Bellermann v. Fitchburg Gas & Elec. Light Co.*,
    54 N.E.3d 1106 (Mass. 2016) ...............................................................................13

*Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*,
    61 N.E.3d 1155 (Ill. Ct. App. 2016).......................................................................12

*Collins v. DaimlerChrysler Corp.*,
    894 So. 2d 988 (Fla. 5th Dist. App. 2004) .............................................................12

*Deegan v. Windermere Real Estate/Center-Isle, Inc.*,
    391 P.3d 582 (Wash. Ct. App. 2017) .....................................................................15

*Gale v. Int'l Bus. Machines Corp.*,
    781 N.Y.S.2d 45 (2nd Dep't 2004) (GBL) ...............................................................4

*Gomez-Jimenez v. N.Y. Law Sch.*,
    36 Misc. 3d 230 (Sup. Ct. N.Y. Cty. 2012)...........................................................14

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002).............................................................................................15

*Makaryan v. Volkswagen Grp of Am., Inc.*,
    17cv5086-PA, 2017 WL 6888254 at*5 (C.D. Cal. Oct. 13, 2017) ...............................................2

*Underwood v. Risman*,
    605 N.E.2d 832 (Mass. 1993) ...................................................................................................14

**California Statutes**

Cal. Bus. & Prof. Code
    § 17204 ...............................................................................................................................3

**Other State Statutes**

815 Ill. Comp. Stat. Ann. 505/10a...................................................................................................13

# I.    INTRODUCTION

Plaintiffs' Complaint does not allege, nor does their Opposition argue, that Lash Boost *caused* them to experience possible side effects not disclosed on R+F's labels. Nor do they claim to have read the warnings they admit that R+F gave, or explain why they would have seen additional disclosures if they had been given. Their Opposition, like their Complaint, does not identify a scientific basis for their claim that Lash Boost can cause the side effects which they contend that R+F failed to disclose. They do not explain why reasonable consumers would care about side effects associated with Lash Boost's ingredients, but not associated with Lash Boost.

Recognizing their failure to plead critical evidentiary facts, Plaintiffs' Opposition repeatedly asks the Court to "infer" allegations that do not exist. Opp. at 9, 10, 16, 21, 25, 31, 34. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (cited in Opp. at 8). Although a Court may draw "reasonable" legal inferences from facts appearing in the complaint, it has no power to infer facts that a plaintiff has not pled. This Court should dismiss Plaintiffs' Complaint. Plaintiffs lack standing and have failed to state a claim.

# II.   PLAINTIFFS HAVE NOT IDENTIFIED ANY INJURY-IN-FACT CAUSED BY R+F AND THEREFORE LACK ARTICLE III AND STATUTORY STANDING

Article III and each cause of action require each Plaintiff to demonstrate the existence of an injury-in-fact caused by R+F. *See, e.g. Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009). They have failed to do so.

## A.    *Plaintiffs Do Not Claim that Lash Boost Caused Their Irritation*

Plaintiffs claim that they "developed a side effect *consistent with* the scientific literature on *prostaglandin analogs*." Opp. at 12 (emphasis added); *see also id*. at 6. This allegation, which describes correlation, does not demonstrate causation. Plaintiffs argue that "some" of the Plaintiffs experienced serious side effects (Opp. at 5 & n.2), but others allege nothing more than irritation (*see, e.g.* CC ¶ 31, 52)—which they admit that R+F does warn about (*id*. ¶¶ 100, 106, 107)—and none of the Plaintiffs claim to have experienced droopy eyelids, inflammation of the

iris or ciliary body, reactivate herpes, corneal scarring, increased prominence of lid vessels, or any pregnancy-related issues. Standing is individual, not collective—each Plaintiff has the burden of pleading that Lash Boost caused her an actual injury. *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009). Without an allegation of causation, *none* of Plaintiffs' allegations support standing.

## B.    Plaintiffs Have Not Suffered Any "Economic Injury"

Plaintiffs disavow that eye irritation constitutes their injury. Instead, their alleged injury rests on their allegation that they would not have bought Lash Boost if R+F had disclosed its purported risks. Opp. at 6 ("the relevant injury in fact is not the side effects themselves but the money they spent on a product that failed to warn them of the side effects.") Thus, "the Court must evaluate whether Plaintiffs have alleged facts showing injury-in-fact derived from those [economic] theories," rather than from Plaintiffs' alleged physical injuries. *Azoulai v. BMW of N.A., LLC*, 16-CV-00589-BLF, 2017 WL 1354781 *4 (N.D. Cal. Apr. 13, 2017).

Countless federal courts in recent years have dismissed for lack of standing "no-injury" products cases brought as consumer deception claims—cases where plaintiffs have alleged that they would not have purchased the product had they known of the alleged risk—absent allegations that they actually experienced the physical condition as a result of the exposure. *See, e.g. Lassen v. Nissan N.A., Inc.*, 211 F.Supp.3d 1267, 1281-82, and fn. 10 (C.D.Cal. 2016). In *Birdsong v. Apple Inc.*, 590 F.3d 955 and n.4 (9th Cir. 2009), for example, the Ninth Circuit agreed with the lower court that the plaintiffs lacked Article III and statutory standing, despite allegations in the complaint that "Had Plaintiffs known that the iPod had a defect . . . they would not have purchased the iPod." *Birdsong v. Apple Inc.*, 2008 WL 7359917, at *2 (N.D.Cal. June 13, 2008), *aff'd,* 590 F.3d 955.[1]

///

---

[1] *See also, e.g., Contreras v. Toyota Motor Sales U.S.A. Inc.*, 484 F. App'x 116, 118 (9th Cir. 2012) (no standing despite plaintiffs' bare allegation "that they would not have purchased the vehicles had they known of the defect"); *Fisher v. Monster Beverage Corp.*, 125 F. Supp. 3d 1007, 1021 (C.D. Cal. 2013), *aff'd in relevant part*, 656 F. App'x 819, 822 (9th Cir. 2016); *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013); *Makaryan v. Volkswagen Grp of Am., Inc.,* 17cv5086-PA, 2017 WL 6888254 at*5 (C.D. Cal. Oct. 13, 2017); *Boysen v. Walgreen Co.*, 11cv06262-SI, 2012 WL 2953069, at *5 (N.D. Cal. July 19, 2012).

### C.     Plaintiffs' Alleged Economic Injuries Are Not Traceable to R+F

Plaintiffs do not have standing, either constitutional or statutory, to pursue their omissions claims, because they have not alleged facts to show a causal link between R+F's alleged omissions and Plaintiffs' purported economic injuries.  *See, e.g. Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (for Article III standing, injury must be "fairly traceable" to the challenged action of the defendant); Cal. Bus. & Prof. Code § 17204 (UCL standing requires Plaintiffs' injury to occur "as a result of" defendant's misconduct); *id.* § 17535 (same, for FAL standing).

Plaintiffs argue that "the Complaint alleges not only that Plaintiffs were exposed to existing disclosures, CC ¶ 109, but also that additional disclosures would have prompted Plaintiffs to behave differently."  Opp. at 17; *see also id.* at 3, 4, 10, 17, 32 (each citing CC ¶ 109).  In Paragraph 109, Plaintiffs allege that "all Class Members were exposed to one or another of [the] two warnings."  However, "exposure" does not mean that any class member, let alone Plaintiffs themselves, ***actually read*** the warnings.  Plaintiffs nowhere allege that they read these actual warnings, nor do they say anything about their own review of the labels, websites, or package instructions.

Plaintiffs ask the Court to presume causation, arguing that if R+F had directed consultants to warn of alleged side effects, disclosed the side effects online, or used a more "extensive" packaging insert, Plaintiffs "*necessarily*" and "inevitabl[y]" would have learned of the alleged risks. Opp. at 10 (emphasis in original).  These allegations do not appear in the Complaint. Rather, the face of the Complaint suggests the opposite is true:  that is, R+F *does* include disclosures online and in its packaging, CC ¶¶ 100, 106–07, but Plaintiffs simply did not read or rely on them.  "[F]or Plaintiffs' [injury] to be caused by [R+F], Plaintiffs must have . . . taken action based on what they saw–in other words, Plaintiffs must have actually relied on the . . . omissions to have been harmed by them." *Phillips v. Apple Inc.*, 15-CV-04879-LHK, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) (collecting cases).  Here, Plaintiffs ignored Lash Boost's existing warnings, so additional warnings could not have made a difference.

///

1    *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) is readily distinguishable.

2    There, the plaintiffs alleged that the defendants designed and embedded software on consumers'

3    mobile devices that intercepted and transmitted the consumers' personal data to the developer and

4    third parties who bought that data.  The Court held that, "[w]hile a close issue," the flurry of media

5    attention and government investigation spurred by news of the defendant's alleged misconduct

6    made it likely that if the defendants had disclosed their activities earlier, the plaintiffs, as members

7    of the buying public, would have heard about it.  *Id.* at 1114 (citing, *inter alia*, *Ehrlich v. BMW of*

8    *N.A., LLC*, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010)).   Plaintiffs, by contrast, make no

9    allegations to support a conclusion that even if they did not read the Lash Boost warnings, they

10   would have learned of the alleged side effects through the news or similar public sources.  *See also*

11   *Ehrlich*, 801 F. Supp. 2d at 920 ("the FAC is devoid of allegations that Plaintiff would have

12   plausibly been aware of the . . . defect before he purchased his MINI had BMW publicized this

13   information.").

14           Plaintiffs ask the Court to excuse their failure to allege that they reviewed Lash Boost's

15   disclosures, arguing that they "would have remained unaware of those side effects *whether or not*

16   *they had read everything R+F said about Lash Boost.*"  Opp. at 3; *see also id.* at 21.  This not only

17   distinguishes this case from *In re Carrier IQ*—it turns causation on its head.  If Plaintiffs admit

18   that they did not read the warnings that R+F did give, they cannot claim they would have seen

19   additional information on their product literature.  Their own admission, not the content of R+F's

20   packaging, defeats causation.[2]

---

21          [2] *See, e.g. Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) (*UCL and*
22   *CLRA*: no standing where plaintiff failed to plead she "ever looked at the nutrition panel" and it
     was thus "implausible that she was deceived by its lack of disclosures"); *McVicar v. Goodman*
23   *Global, Inc.*, 1 F. Supp. 3d 1044, 1052 (C.D. Cal. 2014) (same); *Williamson v. Reinalt-Thomas*
     *Corp.*, No. 11-3548, 2012 WL 1438812, at *8–9 (N.D. Cal. Apr. 25, 2013) (same); *Justice v.*
24   *Rheem Mfg.*, 318 F.R.D. 687, 697 (S.D. Fla. Apr. 27, 2016) (*FDUTPA*: plaintiffs could not prove
     causation on a classwide basis because "many consumers do not review central AC system
25   product brochures . . . and thus would be unlikely to be exposed to a disclosure of an alleged
     defect"); *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 822 (7th Cir. 2018)
26   (to show proximate cause under the *ICFA*, a "'plaintiff must actually be deceived by [an]
     omission' . . . [and] cannot rest on vague accusations about inadequate disclosures and resulting
27   price effects in the marketplace."); *Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45, 47 (2nd
28

---

Case No.: 4:18-cv-02248-PJH

**D.** **The Out-of-State Plaintiffs' Newly Asserted Price Premium Theory Should Be Disregarded**

In support of their FDUTPA, ICFA, Chapter 93A, GBL, and CPA claims, the out-of-state Plaintiffs argue that R+F's alleged omissions caused them to pay a premium for Lash Boost. Opp. at 5, 21, 22, 24, 25, 26. Allegations to support this price premium theory appear nowhere in the Complaint.

Plaintiffs rely on Paragraph 117, which states that they "did not receive what they paid for when purchasing Lash Boost." However, Plaintiffs bought Lash Boost because they wanted longer-looking lashes, and they do not claim that Lash Boost failed to deliver on those expectations. Plaintiffs' allegation that they received something different than what they expected is conclusory, and *not* the same as claiming that they paid more for Lash Boost than it was actually worth.

Plaintiffs have not alleged any facts to support their new theory. For example, they do not allege how much they paid,[3] how much Lash Boost is worth, or that the latter exceeds the former. *See*, *e.g. Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) ("plaintiff alleges that had the presence of lead been revealed, she would not have purchased the lipstick at issue. But she does not allege . . . that she would have purchased cheaper lipstick, or that the lipstick in question had a diminished value because of the lead."); *DaCorta v. AM Retail Group, Inc.*, 16-CV-01748 (NSR), 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018) ("In the absence of facts related to the value or the purchased product, or how the product fell short of what it purported to be, the [] Complaint only reflects Plaintiff's subjective disappointment."). This court cannot "presume that [Plaintiffs] would spend more for safe [lash conditioner] than [they] would for

Dep't 2004) (GBL); *Rodi v. S. New Eng. Sch. of L.*, 532 F.3d 11, 19 (1st Cir. 2008) (requiring reliance under *Chapter 93A*); *Maple v. Costco Wholesale Corp.*, 649 Fed. App'x 570, 572 (9th Cir. 2016) (*Washington CPA*: "To the extent that Plaintiff's claim challenges . . . the failure to describe the caffeine and other ingredients as 'unnatural,' the claim fails because Plaintiff has not alleged that he read those parts of the label. Accordingly, he cannot establish causation.").

[3] Plaintiffs' Opposition cites Paragraph 16 to the contrary (Opp. at 11), but that paragraph merely states the "approximate" cost of Lash Boost, and not what each Plaintiff actually paid.

unsafe [lash conditioner]," or "that this difference in price constitutes an economic injury sufficient to confer Article III standing." *In re Johnson & Johnson Talcum Powder Products Mktg., Sales Practices and Liab. Litig.*, 903 F.3d 278, 288–90 (3d Cir. 2018) ("We cannot conclude that we have jurisdiction by presuming that Estrada would pay less for unsafe powder when she fails to even plead as much.")

## III.    PLAINTIFFS FAIL TO STATE A CLAIM

### A.    *Plaintiffs Do Not Satisfy Rule 9's Heightened Standards*

#### 1.    Plaintiffs Do Not Allege the Circumstances of their Alleged Deception

Plaintiffs argue that they "are not required to allege the circumstances of their purchases with particularity." Opp. at 11. They read Rule 9 too narrowly. Plaintiffs must "set forth *more* than the neutral facts necessary to identify the transaction," including "the who, what, when, where, and how" of the conduct charged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (Rule 9(b)'s particularity requirements apply to omissions claims) (citations omitted). They cannot satisfy Rule 9(b) without offering factual details to demonstrate how R+F specifically deceived them.

Plaintiffs fail to allege what deceived them (statements online, on Lash Boost packaging, or statements made by R+F's consultants?); the specific content of those representations and/or names of the consultants who made them; or which statements they found material. Each of these deficiencies provides a separate basis for dismissal. *Kearns*, 567 F.3d at 1125–26 (upholding dismissal under Rule 9(b) where plaintiff failed to specify which alleged misrepresentations she relied on, "when [s]he was exposed" to them, "who made the statement," and "which ones [s]he found material.").

Plaintiffs argue that Rule 9(b) merely obliges them to plead what disclosures R+F "could have" made, and where. Opp. at 9–10. But this misses the point. Plaintiffs must identify the "representations that [they] relied on to make [their] purchase and that failed to include the allegedly omitted information." *Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). By failing to identify the specific representations they reviewed, they fail to satisfy Rule 9(b). *See, e.g. In re Facebook Advertising Litig.,* No. 5:09-cv-03043, 2010 WL 3341062, at

*10 (N.D.Cal. Aug. 25, 2010) ("Plaintiffs still should be able to identify with particularity at least the specific policies and representations that they reviewed"); *Hall v. Sea World Ent., Inc.*, 3:15-CV-660-CAB, 2015 WL 9659911, at *14 (S.D. Cal. Dec. 23, 2015) (same); *Orshan v. Apple Inc.*, 5:14-CV-05659-EJD, 2018 WL 5858643, at *5 (N.D. Cal. Nov. 6, 2018) ("[Plaintiffs'] allegations do not allow Apple to pinpoint which of its representations (or materials containing omissions) gave rise to the alleged mistaken expectations which underlie Plaintiffs' theory of deception.").

## 2. Plaintiffs Fail to Allege a Plausible Scientific Basis for Their Claim that Lash Boost Causes "Serious Side Effects"

Plaintiffs reflexively assume that, because isopropyl cloprostenate ("ICP," an ingredient in Lash Boost) and bimatoprost (an ingredient in prescription product Latisse) are both prostaglandin analogs, Lash Boost must cause all the same side effects as Latisse. Plaintiffs' Opposition, like their Complaint, offers no support for this assumption, but relies solely on articles concerning bimatoprost and other prostaglandins. Plaintiffs' Opposition makes several inaccurate assertions:

- *"The FDA has noted that [ICP], like other prostaglandin analogs, has serious side effects."* Opp. at 12; *see also id.* at 4. This is not true. The letter merely states that there may be "potential adverse events associated with prostaglandin analogs for ophthalmic use." These statements are not scientific findings as to ICP. *See* Motion at 6.

- *"Scientists have found that [ICP] has serious side effects."* Opp. at 2–3. Plaintiffs do not cite a single authority to support this claim. Nor do they actually *"allege—with support from the literature—that all prostaglandin analogs cause the same [] side effects."* Opp. at 12 (citing CC ¶¶ 5, 87 & n.5); *see also id.* at 3–4 (citing ¶ 89 n.41, 91). Each of the articles cited by Plaintiffs concerns glaucoma medication applied directly onto the eye.[4] They say nothing of ICP or Lash Boost.

Plaintiffs' focus on the ingredient ICP itself, rather than on Lash Boost, is likewise a distraction. None of the Plaintiffs claim to have applied ICP by itself. They only applied Lash

---

[4] The articles cited in paragraph 5 and 87 are titled "Medication Review: Prostaglandin Analogs for Glaucoma" and "Prostaglandin Analogs in the Treatment of Glaucoma." Similarly, the case report cited in footnote 41 concerns only "prostaglandin medications in the treatment and management of glaucoma."

Boost.  Plaintiffs argue that Lash Boost must be dangerous because ICP is dangerous, Opp. at 12–13 & n.4, but a host of cases have dismissed complaints where products contained a purportedly dangerous ingredient but failed to allege facts showing that the product itself creates an appreciable risk of injury.  *See, e.g. Herrington v. Johnson & Johnson Consumer Cos.*, 09cv1597-CW, 2010 WL 3448531 *8 (N.D. Cal. Sept. 1, 2010) (carcinogens in baby products); *Boysen v. Walgreen Co.*, 11cv06262 SI, 2012 WL 2953069, at *5 (N.D. Cal. July 19, 2012) (arsenic and lead in fruit juice); *In re Fruit Juice Prods.,* 831 F.Supp.2d 507, 512 (D.Mass.2011) (same); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954 (N.D. Ill. 2008) (lead in lipstick); *Leppert v. Champion Petfoods USA Inc.*, Case No. 18 C 4347, Dkt. 33 at *12, 20–21 (N.D. Ill. Jan. 16, 2019) ("Plaintiffs' allegations that the mere presence of heavy metals and BPA in [pet food] renders these products 'unsafe' is mere speculation").

### B.     The California Plaintiffs Fail to State a Claim[5]

#### 1.     R+F Did Not Fail to Disclose Anything It Had a Duty to Disclose

Plaintiffs recognize that R+F warns Lash Boost customers that irritation may occur.  Opp. at 16.  They ignore R+F's warnings about "significant irritation," "swelling," "styes," and "irregularities in appearance of lashes," and contend that consumers would "reasonably conclude that the product was safe and non-irritating."  Motion at 5 (citing ¶¶ 107, 113).  This makes no sense, and ignores the common experience of women who know that virtually any cosmetic can cause irritation under some circumstances.[6]

Plaintiffs have not alleged facts supporting a duty to disclose other side effects, because they do not adequately allege that Lash Boost causes those side effects.  *Corral v. Carter's Inc.*,

---

[5] Plaintiffs' Opposition does not argue that they have stated a claim under the "unlawfulness" or "unfairness" prongs of the Unfair Competition Law.  For the reasons stated in R+F's Motion, those claims should be dismissed. *See* Motion at 17.

[6] The existence of consumer complaints does not "suggest[] that reasonable consumers did not expect serious side effects."  Opp. at 17.  Anyone could be unhappy about experiencing eye irritation—whether or not they knew it was possible.  Plaintiffs also argue that customers would not expect side effects because R+F presents itself as a "source of trusted information."  Opp. at 17; *see also id.* at 4.  This, similarly, has nothing to do with whether reasonable consumers would understand that a product applied in the eye area may, in some instances, cause irritation.  *See also* Motion at 15–16.

1:13-CV-0262 AWI, 2014 WL 197782 at *4 (E.D. Cal. Jan. 16, 2014); *see also Leppert v. Champion Petfoods USA Inc*., Case No. 18 C 4347, Dkt. 33 at *20-21 (N.D. Ill. Jan. 16, 2019) (agreeing that the plaintiffs' fraud claims must fail because "without pleading what levels of heavy metals and/or BPA are considered safe for pets, Plaintiffs cannot establish that [defendant pet food manufacturer] made misrepresentations or failed to disclose any relevant information.")

Moreover, they fail to explain why side effects that they did not experience, and will not experience, are material to them. *Compare* Opp. at 16 n.6 ("R+F does not challenge materiality.") *with* Motion at 15 (citing *Herrington*, 2010 WL 3448531 *8).

Rather than focusing on Lash Boost, Plaintiffs argue that R+F should have disclosed risks associated with ICP or prostaglandins more generally. For example, the first sentence of the Opposition criticizes R+F for failing to "disclose that Lash Boost's active ingredient is a prostaglandin analog, a type of chemical that is known to produce serious side effects . . . ." Opp. at 2. But as shown above, Plaintiffs have not shown that Lash Boost causes these side effects. Plaintiffs thus stand in no different position than the plaintiff in *Herrington,* who failed to show that formaldehyde in infant shampoo causes illness, or the plaintiffs in *Boysen* and *In re Fruit Juice,* who failed to allege plausible facts showing that lead and arsenic in fruit juice is unsafe. *See* pp. 7-8, *supra*; *see also* Motion at 16.

Plaintiffs argue that R+F's warnings about irritation are insufficient because "they do not disclose that the irritation is an *inherent side effect* of Lash Boost's active ingredient." Opp. at 15 (emphasis added); *see also id*. at 2 (suggesting that Lash Boost "routinely harms its users' bodies"); *id*. at 4 ("irritation is a known side effect"). The Complaint makes no allegations to support this assertion, nor could it. The Complaint only describes the alleged side effects as "possible side effects." *See, e.g.* CC ¶ 30; *see also id*. ¶ 88 (alleging that products containing prostaglandins "*can* cause redness in the eyes") (emphasis added). Even the warnings for Latisse, which Plaintiffs argue R+F should emulate, state that Latisse "may cause" side effects. *Id.* ¶ 98.

### 2. Plaintiffs Fail to Allege Facts Showing that R+F Acted with Scienter

In its Motion, R+F argued that Plaintiffs fail to allege "facts—as opposed to conclusory assertions—that [R+F was] aware of or had any reason to know of [the other alleged side effects]

at the time of sale."  Motion at 16 (quoting *Smith v. LG Elecs.*, No. C 13-4361 PJH, 2014 WL 989742, at *11–12 (N.D. Cal. Mar. 11, 2014)).  In response, Plaintiffs again rely on the 2011 Lifetech letter, and articles concerning different products and ingredients.  Opp. at 18.  These products do not support Plaintiffs' claim that R+F had knowledge of such side effects at the time of Plaintiffs' purchases.  Indeed, these articles do not, even now, demonstrate that Lash Boost causes serious side effects.  Plaintiffs also do not offer support for their conclusory allegation that R+F saw the handful of customer complaints cited in the Complaint.  Opp. at 5, 18.

### 3. Plaintiffs Fail to Allege that They Lack an Adequate Remedy at Law, Thus Requiring Dismissal of Their UCL and FAL Claims

Plaintiffs argue that at the pleadings stage, they need not allege that they lack an adequate remedy at law.  Opp. at 19–20.  The California Court of Appeal has implicitly rejected this argument by dismissing at the pleadings stage a plaintiff's request for equitable relief under the UCL.  *Prudential Home Mortg. v. Superior Court*, 66 Cal. App. 4th 1236, 1250 (1998). ("[W]e must assume the statutory remedies are adequate, thus precluding equitable relief under the Business and Professions Code.").  This District's decision in *Mullins v. Premier Nutrition Corp.* is also instructive.  No. 13-CV-01271-RS, 2018 WL 510139, at *4 (N.D. Cal. Jan. 23, 2018) (currently on appeal).  Similar to Plaintiffs here, the plaintiff in *Mullins* argued that "[b]ecause the UCL and the CLRA expressly provide a statutory right to restitution regardless of what other remedies may or may not be available . . . a plaintiff seeking relief under those statutes is not required to plead an inadequate remedy at law [and] that proof of inadequate remedy at law is not required to obtain relief under the UCL."  *Id.* at *3; *see also* Opp. at 19–20.  The Court nevertheless dismissed the plaintiff's claims for equitable relief, explaining that the "cumulative" nature of remedies under the UCL "does not explicitly eliminate or undermine the requirement that equitable remedies are subject to fundamental equitable principles, including inadequacy of a legal remedy." *Id.* at *3–4 (quoting *Salas v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 7486600*14 (C.D. Cal. Sept. 27, 2016) and also citing *Prudential Home*). [7]

---

[7] *See also Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015);

**4. The California Common Law Fraud Claims Fail for Additional Reasons**

Plaintiffs' Opposition fails to address R+F's arguments that the Complaint does not properly allege justifiable reliance or intent to induce reliance, therefore requiring dismissal of their California fraudulent concealment and negligent misrepresentation claims. *See also* Section II(C), *supra*. Plaintiffs' Opposition also fails to acknowledge R+F's arguments and case law holding that negligent misrepresentation claims cannot rest on an omission, but only on a positive representation. Motion at 19. They do not claim to have relied on any such representation by R+F.

The California Plaintiffs' common law claims also fail because Plaintiffs have not alleged any cognizable damage. *See* Section II(D), *supra*. In their Opposition, they claim to have paid "out-of-pocket damages" for Lash Boost because they would not have bought Lash Boost but for R+F's alleged omissions. Opp. at 15. But the "out-of-pocket" measure of damages "is directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received." *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995) (quoting *Stout v. Turney*, 22 Cal.3d 718, 725 (1978)). Here, Plaintiffs have not alleged facts to show that they paid more for Lash Boost than its actual value. Out-of-pocket damages are not available.

**C. The Out-of-State Plaintiffs Have Not Stated a Claim under Their States' Consumer Protection Laws**

**1. Huling Has Not Stated a Claim under the FDUTPA**

Like the California Plaintiffs, Huling claims to have established damages because "but for R+F's omissions, [she] would not have purchased Lash Boost." Opp. at 21. This purported injury

*Munning v. The Gap, Inc.*, 2017 WL 2377867, at *2 (N.D. Cal. June 1, 2017); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016); *Robinson v. C.R. Bard, Inc.*, 2016 WL 3361825, at *3 n.3 (N.D. Cal. June 17, 2016); *Gardner v. Safeco Ins. Co.*, 2014 WL 2568895, at *7 (N.D. Cal. June 6, 2014); *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011); *Summit Estate, Inc. v. Cigna Healthcare of CA, Inc.*, 2017 WL 4517111, at *12 (N.D. Cal. Oct. 10, 2017); *Nguyen v. Nissan N. Am.*, 2017 WL 1330602 *5 (N.D. Cal. Apr. 11, 2017).

is not actionable under the FDUTPA. *See, e.g., Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).

Two cases cited by Plaintiffs—*Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1264-65 (N.D. Fla. 2012) and *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th Dist. App. 2004) (cited in Opp. at 21)—do not say otherwise, as those cases involved products that were allegedly worth less than the amount paid. Here, Huling does not raise a price premium theory in the Complaint. *See* Section II(D), *supra*. Rather, she received exactly what she paid for: a lash conditioning serum that made her eyelashes appear longer. She asks the Court to read a price premium theory into the Complaint, arguing that it is not "speculative" to "allege that a cosmetic that causes serious side effects is worth less than one that does not." Opp. at 21. However, the applicable standard is whether she has alleged facts to satisfy Rules 8 and 9. She has not.

Huling does not respond to R+F's argument that she has failed to allege that a reasonable consumer "in the same circumstances" would be deceived. Motion at 20 (citing *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009)).

### 2. Whetsell Has Not Stated a Claim under the ICFA

Whetsell recognizes that, to state a claim under the IFCA, she cannot just allege "that [she] would not have purchased the product but for [R+F's] deceptive practice." Opp. at 22; *see also* Motion at 21. Her Opposition reframes her alleged injury, arguing for the first time that "Lash Boost was worth less than Plaintiff Whetsell paid." Opp. at 22. Whetsell's claim fails for the reasons stated in Section II(D) above. *See also Sabo v. Wellpet LLC*, 250 F. Supp. 3d 332, 334 (N.D. Ill. 2017) (plaintiff failed to allege that he paid an actual premium for pet food products that were allegedly falsely advertised as being "Made in the USA").

In the alternative, Whetsell claims (also for the first time) that she "paid a higher price for Lash Boost than she would have if R+F had disclosed Lash Boost's serious side effects." Opp. at 22 (citing CC ¶ 386, 117). This theory is nothing more than a variation on the theme that she would not have purchased Lash Boost at all. *See, e.g. Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 61 N.E.3d 1155, 1161-62 (Ill. Ct. App. 2016) (no damage even though car was being offered for more than the price plaintiff was willing to pay); *DaCorta v. AM*

1  *Retail Group, Inc.*, 16-CV-01748, 2018 WL 557909, at *7–8 (S.D.N.Y. Jan. 23, 2018).

2  Whetsell's subjective valuation of the product does not establish an injury.

3        Whetsell does not respond to R+F's arguments that she failed to allege that R+F intended

4  to induce her reliance, or that she failed to allege that the purchase at issue took place in Illinois.

5  *See Avery v. State Farm Mut. Auto. Ins.*, 835 N.E.2d 801, 850 (Ill. 2005) (to state a claim, plaintiff

6  must the allege the defendant's intent that the plaintiff rely on the deception); 815 Ill. Comp. Stat.

7  Ann. 505/10a (private right of action exists only for transactions that take place "primarily and

8  substantially" in Illinois); *see also* Rule 9(b) (requiring Plaintiff to allege where she was injured).

9        **3.**      **Merle Has Not Stated a Claim under Chapter 93(A)**

10        While Section 93A actions do not always require reliance, a plaintiff must plead it where,

11  as here, the plaintiff asserts a violation of Chapter 93A based on deception.  *Mass. Laborers'*

12  *Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 242 n.3 (D. Mass. 1999); *see*

13  *also In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 398 (D. Mass. 2007) ("In some

14  cases . . . reliance constitutes an 'essential link' in the chain of causation that does have to be

15  proven under Chapter 93A.").  Merle bases her claim on a fraudulent misrepresentation.  (She does

16  not dispute R+F's argument that she has no claim based on unfairness.)  Motion at 23.  Merle's

17  claim therefore fails based on her failure to allege reasonable reliance.  *Rodi v. S. New Eng. Sch. of*

18  *L.*, 532 F.3d 11, 19 (1st Cir. 2008); *Edlow v. RBW, LLC*, 688 F.3d 26, 39 (1st Cir. 2012).

19        As to injury, the cases cited by Merle say that a plaintiff may establish economic injury by

20  alleging that a product "did not deliver the full anticipated and advertised benefits, and therefore

21  were worth less, as used or owned, than what the plaintiffs had paid."  Opp. at 23–24 (quoting

22  *Bellermann v. Fitchburg Gas & Elec. Light Co.*, 54 N.E.3d 1106, 1112 (Mass. 2016) and citing

23  *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 479 (D. Mass. 2015)).  But Merle does

24  not claim that Lash Boost failed to make her eyelashes more beautiful, or was otherwise worth less

25  than what she paid.  *See In re Fruit Juice Prods.*, 831 F.Supp.2d at 512 ("Because Plaintiffs are

26  unable to show that *any* actual harm resulted from consumption of the fruit juice products [that

27  allegedly contained lead], their allegation of 'economic' injury lacks substance.").

28  ///

In a footnote, Merle claims that R+F had a duty to disclose any "material facts known to [it] at the time of a transaction." Opp. 23 at 9 (citing *Underwood v. Risman*, 605 N.E.2d 832, 835 (Mass. 1993)). However, the side effects alleged—which Merle does not claim to have experienced, and which she does not causally attribute to Lash Boost—are not material. *See, e.g. Herrington*, 2010 WL 3448531, at *8.

### 4. Hufnagel, Gattuso, and Wagner Do Not State a New York GBL Claim

In the Complaint, the New York Plaintiffs claim to have been damaged because they would not have bought Lash Boost if they had known of the alleged side effects. Their Opposition abandons this theory. *See also* Motion at 24-25. Now, they purport to rely on the Opposition's price premium theory. Opp. at 25. As discussed in Section II(D), this claim should be rejected. *See also, e.g. Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) ("Simply because Plaintiff[] here recite[s] the word 'premium' multiple times in [her] Complaint does not make [her] injury any more cognizable."); *Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC, 2011 WL 196930, at *3 (S.D.N.Y. Jan. 21, 2011) (plaintiffs must "allege sufficient facts to show that they in fact paid a premium"); *Gomez-Jimenez v. N.Y. Law Sch.*, 36 Misc. 3d 230, 246 (Sup. Ct. N.Y. Cty. 2012) (finding the measure of damages to be too speculative).[8]

Plaintiffs do not dispute that causation is required under the GBL. They misinterpret R+F's causation argument (*see* Section II(C), *supra*), and cite cases concerning the amount of detail required to establish causation for an omissions claim. *See, e.g.* Opp. at 25 (citing *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 562 (S.D.N.Y. 2016)). *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129, 117 (E.D.N.Y. 2011) does not discuss causation or reliance, but the plaintiff there expressly alleged reliance on the defendant's representations. *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 860 (S.D. Ohio 2012) is an irrelevant products liability case.

---

[8] Plaintiffs' reliance on *Goldemberg* is misplaced. A price premium existed in *Goldemberg* because plaintiffs alleged that they "would not have paid a premium for [those] unnatural products." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 472 (S.D.N.Y 2014). "The operative fact was that a premium was paid because the product was marketed as natural, when in reality it was not." *DaCorta*, 2018 WL 557909, at *9. Plaintiffs do not allege any such facts here.

Finally, Plaintiffs also fail to allege the location of their purchases. *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002) ("our General Business Law analysis does not turn on the residency of the parties").

**5.    Williams Has Not Stated a Claim under the Washington CPA**

Plaintiff Williams' new price premium theory should be rejected out-of-hand.  Opp. at 26; Section II(D), *supra*.  As to causation, Williams is wrong that alleging that R+F failed to disclose material information is, in itself, enough to satisfy her pleading burden.  Opp. at 26; *see also* Section II(C), *supra*. The "rebuttable presumption" discussed in *Deegan v. Windermere Real Estate/Center-Isle, Inc.*, only applies "in franchise fraud and securities fraud cases." 391 P.3d 582, 587–88 (Wash. Ct. App. 2017) (footnotes omitted).

Williams does not purport to have stated a claim for unlawfulness. *See* Motion at 26.

**6.    Plaintiffs Fail to State Common Law Claims under Florida, Massachusetts, New York, Washington, or Illinois Law**

The out-of-state Plaintiffs dedicate a short paragraph to respond to R+F's three pages of arguments as to why they have failed to state common law claims.  This paragraph merely asserts, in conclusory fashion, that they have alleged all elements of their claims and satisfied Rule 9. Opp. at 26.  As discussed above, Plaintiffs have failed to make any of these requisite showings.

Plaintiffs ignore R+F's state-specific arguments, including that the Washington and Florida negligent misrepresentation claims fail because Plaintiffs do not claim to have relied on any affirmative misrepresentation; that the economic loss doctrine bars claims under Illinois and Washington law for negligent misrepresentation; and the Florida and Illinois negligent misrepresentation claims additionally fail because the Complaint does not adequately allege that R+F intended to induce reliance. *See* Motion at 28–29.

**IV.    PLAINTIFFS CANNOT SALVAGE THEIR RICO CLAIM**

Plaintiffs' Opposition exposes their RICO claim as nothing more than a common law fraud claim, adorned with a paper-thin allegation about an "enterprise," half of which—R+F's consultants—Plaintiffs admit are completely innocent.  Courts have routinely rejected similar efforts to bootstrap conventional fraud claims into RICO claims by alleging that an ordinary

commercial relationship is a criminal enterprise.  *See, e.g.*, *Gomez v. Guthy-Renker, LLC*, Case No. EDCV 14-01425 JGB (KKx), 2017 WL 4270042, at *8 (C.D. Cal. July 13, 2015) ("Courts have overwhelmingly rejected attempts to characterize routine commercial relationship as RICO enterprises.") (collecting cases).  Plaintiffs' RICO claim also fails for the same reasons as their other fraud claims:  they have alleged no injury, no reliance on any misrepresentation or omission, and have not otherwise shown that R+F and its consultants (or anyone else) engaged in a scheme to defraud them through the wires or mails.

### A.     *Plaintiffs' New Overpayment Theory Cannot Establish Standing under RICO*

Plaintiffs' Complaint does not clearly state whether Plaintiffs' RICO injury is that they paid too much for Lash Boost, or that they spent any money at all.  Motion at 29.  Neither theory supports their standing here.  Courts have rejected total payment theories as too speculative in the RICO context, and have rejected overpayment theories where plaintiffs fail to allege facts to demonstrate the existence of specific price premiums.  *Id.* at 30.

Plaintiffs now argue that they did allege a price premium—namely, "$150—the retail purchase price of the product."  Opp. at 28.  Plaintiffs have not alleged that they paid this price, nor have they alleged that Lash Boost is actually worthless, or that it fails to beautify eyelashes as advertised.  Plaintiffs cite to the *Ecodiesel* opinion as supporting this total price-price premium theory.  But that case merely stands for the proposition that plaintiffs who allege a specific *part* of the overall price of the good was attributable to fraud have standing under RICO.  It never suggests that plaintiffs can satisfy RICO's standing requirements by claiming to have overpaid in an amount equal to the total price paid for the good.  To the contrary, *Ecodiesel* suggests that such a theory would be too speculative.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 962–63 (N.D. Cal. 2018).  Plaintiffs' citation to *Cohen v. Trump*, 303 F.R.D. 376 (S.D. Cal. 2014) is similarly unavailing.  That case involved a RICO claim seeking full refunds for students of Trump University, on the contention that the classes offered by Trump University were, in fact, worthless.  *Id.* at 388.[9]

---

[9] The court in this opinion also did not consider RICO standing—rather, the opinion was on

Because Plaintiffs cannot identify, with any specificity, the amount they allegedly overpaid for Lash Boost, they have failed to plead a concrete injury sufficient to establish standing under RICO. *See Ecodiesel*, 295 F. Supp. 3d at 963.

### B. *Plaintiffs Have Not Shown Proximate Causation*

Plaintiffs argue they need not allege reliance to prove causation under RICO. Yet Plaintiffs must still identify some causal linkage between their claimed injury and R+F's alleged scheme to defraud. For example, courts have permitted RICO plaintiffs to show causation inferentially, such as "where the behavior of plaintiffs and the members of the class cannot be explained in any way other than reliance upon the defendant's conduct." *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 277 F.R.D. 586, 603 (S.D. Cal. 2011); *see also Garner v. Healy*, 184 F.R.D. 598, 602 (N.D. Ill. 1999) (inferring reliance where the plaintiffs "paid money for a 'wax,' but instead received a worthless 'non-wax' product"); *Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C 07-0371 CW, 2010 WL 2524360, at *8 (N.D. Cal. June 23, 2010) (inferring reliance where product offered had no benefit in relation to its cost). But Plaintiffs nowhere allege that the only reason they purchased Lash Boost, or paid a premium for it (whatever that might be), was because R+F omitted alleged side effects from its marketing materials. Nor would such allegations be plausible absent factual allegations that disclosing the alleged side effects would make Lash Boost cost less or be worthless to consumers.

Plaintiffs nonetheless assert they have pled enough to establish ***proximate*** causation because they would not have purchased Lash Boost "but for the omission . . . ." Opp. at 28. Yet "but for" and proximate causation are two different things, both of which must be pleaded to establish standing to assert a RICO claim. *See Countrywide*, 277 F.R.D. at 603 ("Absent reliance, Plaintiffs still must prove that Countrywide's conduct was *both* the "but for" and proximate cause of their injuries.") (emphasis added). Even if Plaintiffs have alleged omissions that are the "but for" cause of their injury (and that much is doubtful, *see* Section II(C) above) Plaintiffs have not

///

class certification, and so evaluated only whether Plaintiffs' damages theory was consistent with his liability theory. *See Cohen*, 303 F.R.D. at 388.

alleged how the purported scheme proximately caused them to purchase Lash Boost or pay more for it, either by inducing their reliance or causing their purchases in some other plausible manner.

### C. *Routine Commercial Activity Is Not a Criminal Enterprise*

Plaintiffs acknowledge that to plead a RICO enterprise, they must "plausibly allege that two or more individuals had the common purpose of increasing sales of Lash Boost through fraudulent means." Opp. at 30. But by the allegations of the Complaint, one half of the alleged "enterprise"—the consultants—were unaware of the alleged fraudulent scheme, and thus cannot have had a common purpose to defraud. *See* CC ¶¶ 387, 393, 395. Plaintiffs argue that this does not matter, because the consultants and R+F enjoy a "strong relationship[]." Opp. at 30. But courts have repeatedly rejected this exact pleading ploy—transforming business partners engaged in ordinary commercial activity int a RICO enterprise by alleging their relationship is "strong," despite no evidence of an underlying criminal purpose. *See, e.g.*, *Gomez*, 2015 WL 4270042 *6 ("Using this pleading strategy, [plaintiffs'] counsel can construct a novel 'enterprise' out of nothing more than the allegation that Provider provides services to Business; it just requires elaborating verbosely on what a Servicer/Client relationship means."); *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 652–53 (N.D. Ohio 2012) ("Because it is undisputed that the payment processors provided ordinary wire transfers to [Defendant], ignorant of any fraudulent scheme, Plaintiffs cannot establish they were members along with [Defendant] of an associated-in-fact enterprise under RICO."); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009) ("[Plaintiff] has done no more than describe the ordinary operation of a garden-variety marketing arrangement between Golden Rule and the Federation.").

Plaintiffs argue that cases rejecting RICO claims on this basis are really just cases involving parties that were not in sufficiently close relationships. But this is a red herring. The relevant inquiry is whether the parties to the relationship have a common purpose to commit fraud, or, by contrast, simply to conduct routine commercial activity. Indeed, even where the business partner knows of the fraud, this has been held insufficient to support RICO liability if the relationship between the parties was still a purely commercial one. *See, e.g.*, *Jubiler v. MasterCard International*, 68 F. Supp. 2d 1049 (W.D. Wisc. 1999) ("[T]he law is clear that

merely having a business relationship with and performing services for [a fraudulent] enterprise . . . does not support RICO liability . . . . This is true even though the service provider knows of the enterprise's illicit nature . . . .").

Aware that they have pleaded themselves out of a viable RICO claim, Plaintiffs alternately argue that an enterprise exists between R+F and its founders, Drs. Rodan and Fields. This theory is manufactured out of whole cloth, and has no foundation in the Complaint or in reality. The paragraphs of the Complaint cited for support—119 and 252—merely establish that R+F is proud to have been founded by doctors. Neither paragraph supports an inference that R+F and Drs. Rodan and Fields have formed a criminal enterprise. Indeed, Plaintiffs do not allege that Drs. Rodan and Fields have any significant participation in the development, marketing, or sale of Lash Boost, much less that their involvement rises to a level of constituting a RICO enterprise.

### D. *Plaintiffs Fail to Allege a Scheme to Defraud*

Plaintiffs concede that omissions cannot form the basis for a scheme to defraud under the mail or wire fraud statutes absent a duty to disclose. Rather, they claim such a duty exists because R+F made "affirmative misrepresentations and misleading half-truths about Lash Boost." Opp. at 32. This is assertion contradicts what Plaintiffs claim throughout the rest of their opposition—namely, that they are proceeding on a fraudulent omission theory and thus need not allege reliance on affirmative statements. And in any event, Plaintiffs do not identify these alleged misrepresentations or half-truths, or explain how they give rise to a duty to disclose.

Plaintiffs likewise fail to tie the alleged fraud to any specific use of the wires or mails. Plaintiffs argue that they need only show the use of the mails or wires is "essential" to the fraudulent scheme, not that it contains any fraudulent statement or omission. But Plaintiffs have not shown as much. The only specific use of the wires or mails—other than public marketing statements they do not claim to have seen or relied on—consist of an email to Plaintiff Buckingham confirming her purchase, and the shipment of Lash Boost itself. These are not essential to any scheme because they occurred *after* Plaintiff Buckingham made her decision to purchase the product.

///

Nor have Plaintiffs identified anything about R+F's marketing and sale of Lash Boost that supports an inference of specific intent to defraud. *See also* Section III(B)(2), *supra*. Plaintiffs point to literature they claim shows that prostaglandin analogs are associated with certain side effects, but none of these relate specifically to isopropyl cloprostenate or to Lash Boost. Nothing else about R+F's alleged activity—marketing and selling a cosmetic—takes it out of the realm of "transactions that are facially legitimate," or supports an inference of intent to defraud. *Eclectic Properties*, 751 F.3d 990, 997–98 (Ninth Cir. 2014). Plaintiffs were required to plead, with a "significant level of factual specificity," why R+F, "act[ing] as a routine participant[] in American commerce," *id.*, has perpetrated a RICO scheme. They have failed to do so.

## V.     THIS COURT SHOULD DENY LEAVE TO AMEND

Leave to amend may be denied where any amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amended complaint is futile if it would immediately be subject to dismissal. *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011). Here, Plaintiffs' Opposition confirms that they have no set of facts which they could plead to salvage their claims. Plaintiffs suffered no legally cognizable injury, and lack standing. They have failed to allege that the relied on any affirmative misrepresentations or omissions. And they have alleged facts that make the existence of a RICO enterprise impossible—namely, that part of the enterprise had no idea what the other part was doing. For these reasons, any proposed amendment would be futile. Plaintiffs' complaint should be dismissed with prejudice.

DATED: January 18, 2019                STEPTOE & JOHNSON LLP

                                       By:    /s/ *Stephanie Sheridan*
                                       _____
                                       STEPHANIE A. SHERIDAN
                                       Attorneys for Defendant
                                       RODAN + FIELDS, LLC