UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BARBARA LEWIS, et al.,
　　　　Plaintiffs,
　　v.
RODAN & FIELDS, LLC,
　　　　Defendant.

Case No. 18-cv-02248-PJH

**ORDER RE MOTION TO DISMISS**
Re: Dkt. No. 33

Defendant Rodan & Fields, LLC's ("Rodan") motion to dismiss came on for hearing before this court on February 20, 2019. Plaintiffs appeared through their counsel, Michael Woerner, Benjamin Goulds, and Erika Keech. Defendant appeared through its counsel, Stephanie Sheridan and Meegan Brooks. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES IN PART and GRANTS IN PART defendant's motion, for the following reasons.

**BACKGROUND**

Nine plaintiffs bring this consolidated putative class action alleging that Rodan failed to disclose that its Enhancement Lash Boost eye serum ("Lash Boost" or the "product"), which Rodan advertised as a cosmetic designed to make eye lashes longer and more beautiful, "had harmful side effects linked to an ingredient in" the product. Dkt. 25, Consol. Compl. ¶¶ 1, 8, 122. Specifically, defendant allegedly failed to disclose the side effects associated with isopropyl closprostenate ("ICP"), a type of synthetic prostaglandin analog, a class of drugs used to manage glaucoma. Id. ¶¶ 2, 3. The nine named plaintiffs, each of whom purchased and used the product, experienced a range of

1    side effects after using the product.  Id. ¶¶ 19-70.  For example, after using the product,
2    plaintiff Bobbie Huling's eyes changed color, id. ¶ 39, plaintiff Cynthia Whetsell
3    "developed a grey spot in her vision and had central serious retinopathy," id. ¶ 45, plaintiff
4    Teresa Gattuso's eye lashes fell out and not all of them have grown back, id. ¶ 62, and
5    plaintiff Dixie Williams "developed a rash on her eyelid[,] [ ] her eyelid became discolored
6    and darkened, . . . and lashes no longer grow where [a] bump" had developed, id. ¶ 70.
7    Many of these side effects match those associated with all prostaglandin analogs.  Id. ¶ 4
8    (side effects), ¶ 5 (side effects are common to the prostaglandin analog class of drugs).

Indeed, noting the side effects associated with prostaglandin analogs, the FDA previously warned another manufacturer of "cosmetic" lash-enhancement products that used ICP, that the products violated the Food, Drug, and Cosmetic Act because they were unapproved new and misbranded drugs.  Id. ¶ 83; see also Consol. Compl. ¶ 5 n.10 ("FDA Letter").  The same letter stated that the company's labeling "makes misleading statements," "fails to reveal material facts with respect to consequences that may result from the use of the product," and "fail[ed] to include warnings about possible adverse affects [sic] associated with the active ingredients used in your products."  FDA Letter.

Rodan, however, did not disclose any of the serious side effects associated with ICP.  Consol. Compl. ¶¶ 99, 101.  "The disclosures that accompany the Lash Boost Product are a short set of warnings in small print on the outside of the cylindrical container, and again as part of a small insert . . . inside the [product] tube, along with instructions on how to apply the product and an ingredient list."  Id. ¶ 99.  The warning states, as relevant here, "For external use only.  Avoid getting in the eye; in the event of direct contact rinse with cold water.  If you develop irritation or swelling discontinue product usage."  Id. ¶¶ 100, 106.  Defendant's website and marketing materials also fail to disclose the serious side effects associated with ICP and, in some instances, affirmatively distinguish "drugs" that cause those side effects from Lash Boost's side effects.  Id. ¶ 122, 125, 130 ("The only serious side effects we have heard about are those associated with drug products, not cosmetics." The product "is a cosmetic.").

2

Plaintiffs allege that defendant's failure to include warnings about the serious side effects associated with ICP was a material omission that rendered the product's packaging misleading. Consol. Compl. ¶¶ 112-16. Specifically, while the included (but inadequate) warning discloses the risk of irritation and swelling, it fails to disclose the serious side effects associated with ICP and prostaglandin analogs—material information to a consumer's decision to buy the product. Id. ¶¶ 100, 107, 112-16. Plaintiffs further allege that they were "exposed" to the misleading warning because it was included in the product's packaging, id. ¶ 109, and that had defendant included an adequate and "full[ ] disclos[ure about the] adverse side effects of Lash Boost, plaintiffs would have decided not to purchase Lash Boost." Id. ¶¶ 29, 37, 44, 51, 57, 61, 65, 69, 116. And plaintiffs allege that "they did not receive what they paid for when purchasing Lash Boost," id. ¶ 117, because they paid for a product with, at most, side effects limited to irritation but instead received a product that had serious and sometimes permanent side effects.

Based on the above allegations, plaintiffs assert nineteen causes of action under six states' respective common laws and false advertising laws. Consol. Compl. ¶¶ 184-377, and one cause of action for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO"), id. ¶¶ 378-433.

**DISCUSSION**

**A.  Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). In addition, when, as here, the allegations involve fraud, heightened pleading standards apply. "[T]he circumstances constituting

3

1 fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

2 **B.     Analysis**

3      **1.     False Advertising Claims**

All of plaintiffs' false advertising and common law causes of action assert the same omissions-based theory of liability: The product's packaging fraudulently induced plaintiffs to purchase the product by omitting warnings about the serious side effects associated with ICP and/or prostaglandin analogs.

"To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (addition in original; internal quotation marks omitted). Often, however, "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." Gold v. Lumber Liquidators, Inc., 2015 WL 7888906, *10 (N.D. Cal. Nov. 30, 2015).

"Cast in the context of fraud by omission, application of the [above] rule requires that the complaint adequately allege why the omitted fact is true, as well as being material to consumer decision-making." Corral v. Carter's Inc., No. 1:13-CV-0262 AWI SKO, 2014 WL 197782, at *5 (E.D. Cal. Jan. 16, 2014) (emphasis omitted). "A non-disclosed fact is material if the omitted information would cause a reasonable consumer to behave differently if he or she was aware of it." Elias v. Hewlett–Packard Company, 2014 WL 493034, at *6 (N.D. Cal. Feb. 2, 2014). Plaintiffs must also allege reliance, which "can be proved in a fraudulent omission case by establishing that had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently." Hoffman v. 162 North Wolfe LLC, 228 Cal. App. 4th 1178, 1193-94 (2014) (addition in original; quotation marks omitted). Lastly, plaintiffs must allege that they experienced an injury-in-fact. "[T]he economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." Davidson v.

Kimberly-Clark Corp., 873 F.3d 1103, 1111 (9th Cir. 2017).

Despite defendants' numerous arguments to the contrary, the court finds that plaintiffs have adequately alleged an omission-based false advertising claim under the relevant state statutes and state common laws. First, plaintiffs have plausibly alleged that the purported omitted fact—that the product can cause serious side effects that are associated with ICP and other prostaglandin analogs—is true. Second, the court finds (and the Consolidated Complaint alleges) that that omitted fact is material because a reasonable consumer would have acted differently had he or she been aware that the product allegedly caused more serious side effects than the packaging warned of.

Third, while a closer issue, given the materiality of the omission and the other allegations in the Consolidated Complaint, the court finds that the Consolidated Complaint contains sufficient allegations to infer that had Rodan reasonably and adequately disclosed the serious side effects associated with the product's ingredients, plaintiffs would have been aware of the disclosure and acted differently. That is, plaintiffs have adequately pled reliance.[1]

Fourth, the court finds that plaintiffs have adequately alleged an injury because they allege that they would not have bought the product if the material had not been omitted. Consol. Compl. ¶¶ 29, 37, 44, 51, 57, 61, 65, 69, 116. In addition, contrary to defendant's assertion, plaintiffs allege that they did not receive the benefit of the bargain. Id. ¶ 117 ("Plaintiffs lost money as a result of Rodan + Fields' omissions, in that they did not receive what they paid for," a minimal-side-effect product, "when purchasing Lash Boost," a product with allegedly serious side effects).

Lastly, for those claims that require it, the court finds that plaintiffs have adequately alleged "that defendants were aware of or had [ ] reason to know of" the allegedly omitted information. Smith v. LG Elecs. U.S.A., Inc., No. C 13-4361 PJH, 2014 WL 989742, at *12 (N.D. Cal. Mar. 11, 2014) (applying requirement to UCL, FAL, CLRA);

---

[1] Defendants remain free, however, to explore plaintiffs' reliance during discovery and, if necessary, re-raise this argument during class certification or summary judgment.

5

1 CACI Nos. 1901 (fraudulent concealment), 1903 (no reasonable grounds for believing

2 something to be true).

3 In sum, the court finds that plaintiffs have plausibly alleged an omission-based

4 false advertising claim premised on defendant's failure to disclose the potential side

5 effects associated with the product by virtue of it containing ICP. Though the above

6 discussion focuses on California's false advertising laws and though the court recognizes

7 that Florida, Illinois, New York, Massachusetts and Washington's false advertising

8 statutes and common laws are subtly different, the court finds that plaintiffs' allegations

9 also plausibly state claims under those laws. Accordingly, defendant's motion with

10 respect to causes of action one through nineteen is DENIED.

### 2. RICO

12 The court however finds that plaintiff's RICO claim must be dismissed because

13 plaintiff has failed to adequately allege the existence of an enterprise.

14 "The RICO statute sets out four elements: a defendant must participate in (1) the

15 conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of

16 racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c). In addition, the

17 conduct must be (5) the proximate cause of harm to the victim." Eclectic Properties E.,

18 LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014). "To show the

19 existence of an enterprise under the second element, plaintiffs must plead that the

20 enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity

21 necessary to accomplish the purpose." Id. While "whether the common purpose must be

22 fraudulent is still unclear in the Ninth Circuit[,]" Lomeli v. Jackson Hewitt, Inc., No.

23 217CV02899ODWKSX, 2018 WL 1010268, at *8 (C.D. Cal. Feb. 20, 2018), "[c]ourts

24 have overwhelmingly rejected attempts to characterize routine commercial relationships

25 as RICO enterprises." Shaw v. Nissan N. Am., Inc., 220 F. Supp. 3d 1046, 1054 (C.D.

26 Cal. 2016). Courts are "mindful of the guidance that entities engaged in ordinary

27 business conduct and an ordinary business purpose do not necessarily constitute an

28 'enterprise' bound by common purpose under RICO." Id. (quotation marks omitted).

Here, plaintiffs allege that the enterprise consists of the defendant and its "independent contractors" or "consultants," who sell the product to consumers. Consol. Compl. ¶¶ 72, 74, 383, 387. The death knell of the claim, however, is that the Consolidated Complaint affirmatively alleges that the "consultants [ ] unwittingly perpetuated the[ ] omissions," id. ¶ 395, "unknowingly . . . failed to disclose the" ICP-related side effects to consumers, id. ¶ 387, and were "un-witting co-conspirators in the enterprise," id. See also id. ¶ 118. And nothing in the complaint suggests that the consultants and Rodan's relationship was anything other than an ordinary business relationship. See Gomez v. Guthy-Renker, LLC, No. EDCV1401425JGBKKX, 2015 WL 4270042, at *9-11 (C.D. Cal. July 13, 2015) (collecting cases) ("The consensus among courts reflects the judgment that the statutory requirements of RICO cannot be circumvented by attempting to characterize a routine contractual relationship for service as an independent enterprise." (internal quotation marks omitted)); Lomeli, 2018 WL 1010268, at *8 (dismissing RICO claim because no allegations suggesting that the alleged enterprise participant acted outside its "primary business activities").[2]

Because plaintiffs have not adequately alleged the existence of an enterprise, the court DISMISSES plaintiffs' RICO claim WITH PREJUDICE.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is DENIED with respect to causes of action one through nineteen and GRANTED with respect to cause of action twenty.

**IT IS SO ORDERED.**

Dated: February 28, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[2] Nothing in the Consolidated Complaint supports plaintiffs' alternative argument that an enterprise existed between Rodan and its founders. See Consol. Compl. ¶¶ 119, 152.