1 | Juli E. Farris (Bar No. 141716)
2 | KELLER ROHRBACK L.L.P.
   | 801 Garden Street, Suite 301
3 | Santa Barbara, CA 93101
   | (805) 456-1496; Fax: (805) 456-1497
4 | jfarris@kellerrohrback.com

5 | **Interim Lead Counsel for Plaintiffs**
   | **(Additional Attorneys Listed Below)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| BARBARA LEWIS, AKEMI BUCKINGHAM, BOBBIE JOE HULING, CYNTHIA WHETSELL, MARTHA MERLE, ELAINA HUFNAGEL, TERESA GATTUSO, ELISSA WAGNER, AND DIXIE WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | No. 4:18-cv-02248-PJH |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| v. | |
| RODAN + FIELDS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, | Judge:   Phyllis J. Hamilton |
| Defendant. | |

# TABLE OF CONTENTS

I.  FACTUAL BACKGROUND ................................................................................1

    A.  Rodan + Fields, a skincare products company, launches Lash Boost in 2016. .......1

        1.  Prostaglandin analogs and their side effects ................................................2

        2.  ICP is a ███████ prostaglandin analog, ██████████████████
            ██████████████ . ...................................................................................3

    B.  ████████████████████████████████████████████ ...........3

        1.  █████████████████████████████████████ .......................3

        2.  ██████████ testing .......................................................................5

    C.  R + F never disclosed—anywhere—that Lash Boost has serious side effects. .......6

    D.  After bringing Lash Boost to market, R + F continued to sell it despite
        ████████ ████ ███████████████ and complaints of side effects. .....................8

    E.  Each of the named Plaintiffs purchased Lash Boost, experienced unexpected
        side effects, and now assert claims that seek to recover damages attributable
        to R + Fs' deceptive omission of Lash Boost's side effects. ................................10

II.  LEGAL STANDARD ................................................................................10

III.  ARGUMENT ................................................................................................11

    A.  The proposed classes satisfy the prerequisites of Rule 23(a). ...............................11

        1.  Numerosity is satisfied. ................................................................................11

        2.  Commonality is satisfied. ...........................................................................12

        3.  Typicality is satisfied. .................................................................................14

        4.  Adequacy is satisfied. .................................................................................15

    B.  The proposed classes satisfy the requirements of Rule 23(b)(3). .........................16

        1.  Predominance is satisfied. ...........................................................................16

        2.  Superiority is satisfied. ...............................................................................23

IV.  CONCLUSION ................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ....................................................................17

*Allen v. Conagra Foods, Inc.*,
331 F.R.D. 641 (N.D. Cal. 2019) ...........................................................................18

*In re Aris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018) ...........................................................................19

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ...................................................................................9

*Aspinall v. Philip Morris Cos. Inc.*,
813 N.E.2d 476 (Mass. 2004) ...........................................................................13, 17

*Baranco v. Ford Motor Co.*,
294 F. Supp. 3d 950 (N.D. Cal. 2018) ....................................................................17

*Barnes v. Bd. of Trs.*,
369 F. Supp. 1327 (W.D. Mich. 1973) ...................................................................10

*Breeden v. Benchmark Lending Grp., Inc.*,
229 F.R.D. 623 (N.D. Cal. 2005) ...........................................................................20

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ...............................................................................20

*Broomfield v. Craft Brew Alliance, Inc.*,
No. 17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) .........................18, 19

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*,
169 So. 3d 164 (Fla. Dist. Ct. App. 2015) ...............................................................13

*Casavant v. Norwegian Cruise Line, Ltd.*,
919 N.E.2d 165 (Mass. App. Ct. 2009) ...................................................................13

*Celano v. Marriott Int'l, Inc.*,
242 F.R.D. 544 (N.D. Cal. 2007) .............................................................................9

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (II)*,
2016 WL 2930964 (N.D. Cal. May 19, 2016) ..........................................................18

*Columbia Physical Therapy, Inc. P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*,
  228 P.3d 1260 (Wash. 2010) .......................................................................................14

*In re ConAgra Foods, Inc.*,
  90 F. Supp. .................................................................................................................14

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) .......................................................................8, 20

*Connick v. Suzuki Motor Co. Ltd.*,
  675 N.E.2d 584 (Ill. 1996) ......................................................................................13, 18

*Consumer Advocates v. Echostar Satellite Corp.*,
  8 Cal. Rptr. 3d 22 (Ct. App. 2003) ...............................................................................8

*Davis v. Powertel, Inc.*,
  776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ....................................................................13

*De Bouse v. Bayer AG*,
  922 N.E.2d 309 (Ill. 2009) ......................................................................................17, 18

*Deegan v. Windermere Real Estate/Center-Isle, Inc.*,
  391 P.3d 582 (Wash. Ct. App. 2017) ................................................................12, 14, 15

*In re Dial Complete Mktg. & Sales Practices Litig.*,
  320 F.R.D. 326 (D.N.H. 2017) ......................................................................................18

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008) ................................................................................9, 18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .........................................................................................11

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D. 592 (N.D. Cal. 2018) .........................................................................9, 13, 18

*Gold v. Lumber Liquidators, Inc.*,
  323 F.R.D. 280 (N.D. Cal. 2017) ..............................................................................14, 19

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  317 F.R.D. 374 (S.D.N.Y. 2016) .........................................................................14, 17, 18

*Goldemberg v. Johnson & Johnson Consumer Cos. Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...............................................................................13

*Guido v. L'Oreal, USA, Inc.*,
    Nos. CV 11-1067 CAS, CV 11-5465 CAS, 2013 WL 3353857 (C.D. Cal. July
    1, 2013) ...................................................................................................................19

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................................10, 11

*Harte v. Ocwen Fin. Corp.*,
    No. 13-cv-5410, 2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018) ................................18

*Iannacchino v. Ford Motor Co.*,
    888 N.E.2d 879 (Mass. 2008) ....................................................................................12

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) ....................................................................................10

*Johnson v. Harley-Davidson Motor Co. Group, LLC*,
    285 F.R.D. 573 (E.D. Cal. 2012) ..............................................................................19

*Kautsman v. Carrington Mortg. Servs., LLC*,
    No. C16-1940-JCC, 2018 WL 6199013 (W.D. Wash. Nov. 27, 2018)....................18

*Keegan v. Am. Honda Motor Co. Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ..............................................................................20

*Koch v. Acker, Merrall & Condit Co.*,
    967 N.E.2d 675 (N.Y. 2012) ......................................................................................13

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ....................................................................................19

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ......................................................................................9

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
    270 F.R.D. 45 (D. Mass. 2010)..................................................................................14

*Mackinac v. Arcadia Nat'l Life Ins. Co.*,
    648 N.E.2d 237 (Ill. App. Ct. 1995) ..........................................................................13

*Marty v. Anheuser–Busch Cos. LLC*,
    43 F. Supp. 3d 1333 (S.D. Fla. 2014) ........................................................................17

*Mass. Mut. Life Ins. Co. v. Superior Court*,
    119 Cal. Rptr. 2d 190 (Ct. App. 2002) ......................................................................13

*McRae v. Bolstad*,
    676 P.2d 496 (Wash. 1984)........................................................................................19

*Miller v. P.S.C., Inc.*,
   No. 3:17-cv-05864-RBL, 2018 WL 6249841 (W.D. Wash. Nov. 29, 2018) ........................18

*In re Myford Touch Consumer Litig.*,
   No. 13-CV-03072-EMC, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) ................................14

*In re NJOY Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ...............................................................................20

*O'Hara v. Diageo-Guinness, USA, Inc.*,
   306 F. Supp. 3d 441 (D. Mass. 2018) ...................................................................................17

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. Feb. 27, 2015) ..................................................................................10

*Pfaff v. Whole Foods Market Grp., Inc.*,
   No. 1:09-cv-02954, 2010 WL 3834240 (N.D. Ohio Sept. 29, 2010) ....................................19

*Reichert v. Keefe Commissary Network, L.L.C.*,
   331 F.R.D. 541 (W.D. Wash. 2019) .....................................................................................18

*Rikos v. Procter & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) ..........................................................................................13, 14

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ..............................................................................................11

*S37 Mgmt., Inc. v. Advance Refrigeration Co.*,
   961 N.E.2d 6 (Ill. App. Ct. 2011) .........................................................................................14

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ...................................................................................14, 18

*Simpson v. Fireman's Fund Ins. Co.*,
   231 F.R.D. 391 (N.D. Cal. 2005) ...........................................................................................9

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) ..................................................................................................19

*Stutman v. Chem. Bank*,
   731 N.E.2d 608 (N.Y. 2000) ................................................................................................12

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ..................................................................................................13, 14

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. Aug. 31, 2016) ...............................................................................11

*Vasquez v. Superior Court*,
    484 P.2d 964 (1971) ............................................................................................13

*Waste Pro USA v. Vision Constr. ENT, Inc.*,
    282 So. 3d 911 (Fla. Dist. Ct. App. 2019) ........................................................12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................................20

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ..............................................................................9

*Young v. Toyota Motor Sales, U.S.A.*,
    442 P.3d 5 (Wash. Ct. App. 2019) ......................................................................14

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001), *amended*, 273 F.3d 1266 (9th Cir. 2001) ........................19, 20

**Statutes**

FDUTPA ........................................................................................................................20

Florida Deceptive and Unfair Trade Practices Act ......................................................13

Illinois Consumer Fraud and Deceptive Business Practices Act .................................15

Massachusetts Consumer Protection Act .....................................................................14

MCPA .....................................................................................................................14, 18

N.Y. Gen. Bus. L. § 349(h) .........................................................................................19

New York General Business Law § 349
    .....................................................................................................9, 14, 15, 18

Washington Consumer Protection Act ..........................................................................15

WCPA ..............................................................................................................15, 18, 19

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................................................9

Fed. R. Civ. P. 23(a) .......................................................................................................9

Fed. R. Civ. P. 23(a)(1) ...................................................................................................9

Fed. R. Civ. P. 23(a)(2)'s ..............................................................................................10

Fed. R. Civ. P. 23(a)(3) ........................................................................................9

Fed. R. Civ. P. 23(a)(4) ......................................................................................10

Fed. R. Civ. P. 23(b) ............................................................................................9

Fed. R. Civ. P. 23(b)(3) ........................................................................9, 11, 18, 20

Fed. R. Civ. P. 23(b)(3)(A) .................................................................................19

Fed. R. Civ. P. 23(b)(3)(B) .................................................................................19

Fed. R. Civ. P. 23(b)(3)(C) .................................................................................20

Fed. R. Civ. P. 23(b)(3)(D) .................................................................................20

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................20

Fed. R. Civ. P. 23(g) ...........................................................................................20

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................10

7A Mary Kay Kane et al., *Fed. Prac. & Proc. Civ.* § 1762 (3d ed. 2019) ...................................10

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on such date as may be agreed upon, in Courtroom 3 of the U.S. District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, Plaintiffs will and hereby do move for an order certifying classes and appointing class counsel.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Plaintiffs allege that Rodan + Fields failed to disclose the serious side effects of its lash serum Lash Boost, and that as a result they overpaid for the product. They now move the Court to certify six classes asserting consumer claims under the laws of six states. Rather than asking the Court to certify all the claims asserted in the operative complaint, Plaintiffs ask for certification of only a subset of those claims. Under these claims, consumers can recover for damages they sustained when the seller of a product made misrepresentations or omissions about it. The claims, moreover, do not require individualized proof of reliance upon those misrepresentations or omissions, and so are well-suited for class treatment when, as here, the defendant has made the same misrepresentations or omissions to the class. Because causation, as well as the other elements of the relevant claims, are susceptible of classwide proof, the Court should certify the classes under Rule 23(b)(3).

## I.     FACTUAL BACKGROUND

**A.     Rodan + Fields, a skincare products company, launches Lash Boost in 2016.**

This action arises from Lash Boost, a product that Defendant Rodan + Fields (sometimes "R+F") launched in November 2016. *See* Ex. BBB.[1] Since 2009, R+F has employed a

---

[1] Unless otherwise noted, all citations to Exhibits are citations to Exhibits attached to the Declaration of Michael D. Woerner in Support of Plaintiffs' Motion for Class Certification.

multilevel marketing program under which consumers may purchase R+F products, including Lash Boost, through two channels: directly through R+F's website[2] or through independent contractors called "consultants."

### 1. Prostaglandin analogs and their side effects

Lash Boost contains isopropyl cloprostenate (ICP), Exs. S, T, an ingredient that belongs to a class of chemicals called prostaglandin analogs.  *See* Ex. A.  Prostaglandin analogs are used in prescription drugs to treat glaucoma, a disease that can cause blindness.  *See* Decl. of Dr. Laura M. Periman, M.D., in Supp. of Mot. for Class Cert. ("Periman Decl.") ¶ 12.

Prostaglandin analogs also induce eyelash growth.  *See id.* ¶ 14.  Indeed, the only FDA-approved product for eyelash growth, Latisse, contains a prostaglandin analog called bimatoprost.  *See id.* ¶ 7.  But prostaglandin analogs have other well-known—and undesirable—side effects:

- Hyperpigmentation (abnormal darkening) of the eyelid.

- Increased pigmentation of the iris—that is, the color of the eyes becomes darker. This change is likely to be permanent.

- Orbital fat atrophy, a condition under which fat cells around the eye shrink. The eye then becomes more sunken-in.

- The rim of the human eyelid contains glands that produce an oily substance called meibum that prevents evaporation of one's tears. The glands that produce this substance are called meibomian glands.  Prostaglandin analogs can cause meibomian gland dysfunction, which, by blocking the secretion of meibum, in turn causes dry eyes or eyelid inflammation.

- Punctate keratitis, a disorder of the cornea that causes the eyes to become red, watery, and sensitive to light, and may also decrease vision.

---

[2] *R+F Lash Boost*, Rodan + Fields, https://www.rodanandfields.com/shop/r-f-lash-boost/p/ENHLSH01 (last visited Feb. 12, 2019).

- Facial hair growth.

- Abnormal redness of the eye or eyelid.

- Itching (pruritis) of the eyelid.

- Cystoid macular edema, a condition in which fluid leaks into the retina, creating cysts in the center of the retina that blur or decrease central vision. This condition may be permanent.

- Cysts and styes.

*See id.* ¶ 20(A-J). These side effects are common to prostaglandin analogs, including ICP. *See id.* ¶¶ 19, 20.

       2.     **ICP is a ▮▮▮▮ prostaglandin analog, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**

As explained in the declaration of ophthalmologist Dr. Laura Periman ICP's molecular structure renders it a ▮▮▮▮ prostaglandin analog. *See* Periman Decl. ¶ 26. Among its closest relatives in the class of prostaglandin analogs are latanoprost and travoprost, ingredients that in prescription glaucoma medications have a concentration of 0.005% and 0.004%, respectively. *See id.* ¶¶ 24-25(A). The concentration of ICP in Lash Boost, ▮▮▮▮▮, is ▮▮▮▮▮, ▮▮▮▮▮ ▮▮▮▮▮▮▮ the concentration of latanoprost and travoprost in prescription glaucoma medications. *See id.* ¶ 26. This is significant, because glaucoma medications containing latanoprost and travoprost, unlike Lash Boost, are accompanied by warnings about hyperpigmentation of the iris and eyelid, cystoid macular edema, intraocular inflammation, and also disclose that redness, itching, and irritation are common. *See id.* ¶ 16.

**B.**    **▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.**

       **1.**    **▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**

▮▮▮▮▮▮▮▮, R + F began to explore bringing a lash serum to market. *See* Ex. B at 186:7-14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

2 ████████. *Id.* at 56:7-57:25. ██████████████

3

4

5

6 ████████ *Id.* at 69:7-71:4.  The FDA warning letter was prompted by Lifetech Resources'

7 manufacture, distribution, and promotion of two eyelash serums and one brow product, all of

8 which contained ICP.  Ex. C. ████████████████████

9 ██. *See* Ex. B at 145:20-23.

10         The FDA letter told Lifetech that its eyelash and brow products appeared to be

11 unapproved and misbranded drugs.  *See* Ex. C.  The letter also discussed ICP's side effects,

12 among which were "ocular irritation, hyperemia, iris color change, macular edema, ocular

13 inflammation, and interference with intraocular pressure reduction therapy."  *Id.* at 3. ████

14

15 ████████████████████████████

16 ████████████████.  *See* Ex. B at 105:13-22; Ex. D.

17 ████████████████████

18 ████████████████.  *See* Ex. B. at 145:20-

19 23; Ex. E. ████████████████, even though it had been

20 one of the three products that had prompted the 2011 FDA letter.  *See* Ex. B at 145:20-23.

21

22         In this litigation, R+F has ████████████████

23 ████████████████.  *See* Ex.

24 B at 191:12-192:22; Ex. F at 62:11-63:13. ████████████

25 ████████████████████

26 ████████.  *See* Ex. G.  But R+F's reliance ████████

27

28

1  ██████ suffers from two fatal problems.  First, ████████████████████

2  █████████████████████████████████████████.  *See* Ex. E. Second,

3  █████████████ does not pass scientific scrutiny.  *See* Periman Decl. ¶ 32.

4      **2.**      ███████  **testing**

5

6  ██████████████████████████████████████████████████████████

7  ██████████████████████████.  *See* Ex. H. ██████████████████████

8  ██████████████.  *See* Ex. B at 162:11-163:2.

9  ██████████████████████████████████████████

10 ████████████████████████████████████████████████████.  *See* Ex. B

11 at 157:7-9; 234:10-15; Ex. I at 245:11-14.  But that testing, as Dr. Periman explains, was

12 inadequate.  ██████████████████████████████████████████████.

13 *See* Periman Decl. ¶¶ 39, 40. ██████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████.  *See id.* ¶ 39.

17 ████████████████████████████████████████████████████

18 ██████████████████████████.  *See id.* ¶ 40.

19     On top of all this, there is good reason to believe that ██████████ testing was

20 ████████.  In 2019, █████████████████████████████████, ████████████

21 ██████████████████████████████████████████████████

22 ██████████████████████████.  *See* Exs. J, K, L.  In court, ████████████

23 ██████████████████████████████████████████

24 ████████████████████████████████████████.  *See* Ex. J-1 at 34; Ex. K-2 at 26-27; Ex. L-2 at 30.

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████ Ex.

27

28

K at 27. ████████████████████ ████████████████████████████████

████████. *See* Ex. M. ████████████████████████████████████

██████████████████████████████████. *See* Ex. B at 245:6-246:7.

Before Lash Boost went to market, ████████████████████████

████████████████████████████████████████████████████████████

████████. *See* Ex. I at 40:4-8; 49:1-13. ██████████████████████

████████████████████████████████████████████████████████████████

████████. *Id.* at 145:16-146:4. ██████████████████████████████. *Id.*

at 55:22-56:11; 137:1-25. ██████████████████████████████████

████████████████████████. *See* Ex. N. ██████████████████████

████████████████████████████████████████████████████

███████████████████████. *Id.*

**C.    R + F never disclosed—anywhere—that Lash Boost has serious side effects.**

R+F has uniformly failed to disclose the serious side effects of Lash Boost. Those

uniform omissions form the basis of this action.

Consumers purchased Lash Boost either through R+F consultants or through R+F's

website, but neither consultants nor the website disclosed Lash Boost's side effects.  Consultants

did not disclose—indeed, *could* not have disclosed—those side effects, since R+F consistently

and uniformly did not disclose to consultants that Lash Boost had side effects ████████████

████████████████████████████████████. *See* Ex. O at 45:6-15, 47:4-

15 (████████████████████████████████████); Ex. CCC; Ex.

---

[3] The ██████████████████████████████████████████████████████

██████████████. *See* Ex. G; Ex. I at 43:4-7; 74:18-21. ██████████████████

████████████████████████████████████████. *Id.* at 46:11-17; 63:10-16.

P; Ex. Q.  R+F's website likewise does not disclose any of Lash Boost's side effects.[4]  Indeed, the statements it *does* make about Lash Boost's side effects are false and misleading.  Its FAQs say that Lash Boost is "safe and non-irritating," when neither is true.  *See* Exs. P, Q, R.  The FAQs also say that customers should not be concerned about "potential side effects," because "[t]he only serious side effects we have heard about are associated with drug products, not cosmetics," and Lash Boost is purportedly "a cosmetic."  Ex. R.  R+F has also claimed, contrary to science, the FDA letter, ███████████████████████, that "Lash Boost does not cause discoloration or change in pigmentation of the iris."  *See* Exs. P, Q, R. The current website even says that Lash Boost is "well tolerated and non-irritating for the great majority of users," which is untrue.  R+F Lash Boost, *supra* note 2; *see* Periman Decl. ¶ 30

While consumers received Lash Boost's packaging and labeling only *after* purchase, Lewis Decl. ¶ 11; Gattuso Decl. ¶ 7; Whetsell Decl. ¶ 7; Huling Decl. ¶ 7; Merle Decl. ¶ 7; Wagner Decl. ¶ 8., the packaging and labeling likewise failed to disclose side effects.  The labeling has never mentioned hyperpigmentation of the iris or eyelid, orbital fat atrophy, dry eyes, punctate keratitis, facial hair growth, itchiness, or cystoid macular edema.  *See* Exs. A, P, Q, S, T.  While R+F has claimed that its label disclosed that irritation is a possible side effect, *see* Mot. to Dismiss at 3, ECF No. 33, the label's reference to irritation is at best a misleading half-truth.  *See* Pls.' Opp'n to Def's Mot. to Dismiss at 15-16, ECF No. 35.  The labels raise the possibility that irritation may occur, but they do not disclose that irritation is a known and inherent side effect of Lash Boost's prostaglandin ingredient rather than a reaction that could happen by chance or due to some individual trait of the consumer, such as unusually sensitive skin.  *See* Ex. T (2016-2017 label); Ex. S. (label beginning July 2017).  Nor have the labels said

---

[4] *R+F Lash Boost*, s*upra* note 2.

anything about most of Lash Boost's side effects, including its most serious ones, ███████

████████████████████████████████████████████████████.

Lash Boost also comes with directions on how to apply Lash Boost, a list of ingredients, and what it calls "warnings." *See* Ex. A.  These "warnings" on Lash Boost's label do not even mention most of the product's side effects, and their vague reference to "irritation" is deceptive because it does not disclose that irritation is a predictable side effect rather than the kind of irritation that might arise sporadically from the use of any cosmetic.[5]

**D.**   **After bringing Lash Boost to market, R + F continued to sell it despite** ███████

████████████████████ ██████████████████.

████████████████████████████████████████████████

████████████████████████████████████████. Consumers

complained of ███████████████, Exs. U, V; Ex. Z at RF_00042584; █████████

███████, Ex. W; Ex. Z at RF_00042584; ███████, Exs. X, Y; Ex. Z at RF_00042584; ████

██████████████████, Ex. Z at RF_00042584; ████████████████████, Ex. Z at

RF_00042584; Exs. AA, BB, with one consumer saying that Lash Boost had ████████████

█████████████ Ex. CC; █████████████████, Ex. DD; ████████████, Ex. EE;

████████, Exs. FF, GG; █████████████, Ex. HH; ██████████████, Exs. Z at RF_00042584;

Exs. II, JJ; ███████, Exs. Z at RF_00042584; Exs. KK, LL; █████████████████, Exs. MM, NN,

OO, PP.  All these complaints are consistent with the known side effects of prostaglandin

analogs.  *See* Periman Decl. ¶ 20(A-J).  █████████████████████████████

---

[5] Relatively late in the class period—no earlier than late October 2019—R+F began to include its label warning on its web page for Lash Boost. *Compare* Rodan + Fields, *R+F Lash Boost*, https://web.archive.org/web/20191020134735/https://www.rodanandfields.com/shop/r-f-lash-boost/p/ENHLSH01 (archived Oct. 20, 2019), *with R+F Lash Boost*, *supra* note 2. This web page, therefore, is misleading for the same reason as the label warning.



*See* Ex. QQ.

Ex. RR.

Ex. SS.

*Id.*

. Ex. TT.

. Ex. UU.

. *See* Ex. VV.

. *See* Ex. WW.

*Id.*

Ex. XX.

Despite all this, R+F continued to sell Lash Boost without warnings.

1

2

**E.      Each of the named Plaintiffs purchased Lash Boost, experienced unexpected side effects, and now assert claims that seek to recover damages attributable to R + Fs' deceptive omission of Lash Boost's side effects.**

3

4

5

6

7

8

9

There are seven proposed class representatives.  Each seeks to represent a class of persons who purchased Lash Boost in the same state as the Plaintiff did.  For Plaintiff Barbara Lewis, that state is California; for Plaintiff Bobbie Joe Huling, it is Florida; for Plaintiff Cynthia Whetsell, it is Illinois; for Plaintiff Martha Merle, it is Massachusetts; for Plaintiffs Teresa Gattuso and Elissa Wagner, it is New York; and for Plaintiff Dixie Williams, it is Washington. *See infra* Addendum (setting forth proposed class definitions and class claims).

10

11

12

13

14

15

16

17

18

19

20

21

22

The Plaintiffs all aver that they expected Lash Boost to be safe and have no side effects. Lewis Decl. ¶ 4; Gattuso Decl. ¶ 4; Whetsell Decl. ¶ 5; Williams Decl. ¶¶ 4, 5; Huling Decl. ¶ 4; Merle Decl. ¶ 4; Wagner Decl. ¶ 5.  Contrary to that expectation, however, they all experienced one or more of the side effects associated with ICP. Lewis Decl. ¶ 6; Gattuso Decl. ¶ 6; Whetsell Decl. ¶ 6; Williams Decl. ¶ 7; Huling Decl. ¶ 5; Merle Decl. ¶ 6; Wagner Decl. ¶ 7. They all state that if they had received disclosures about side effects before purchase—e.g., through R+F consultants—they would not have purchased Lash Boost. Lewis Decl. ¶ 9; Gattuso Decl. ¶ 8; Whetsell Decl. ¶ 4; Williams Decl. ¶ 8; Huling Decl. ¶ 6; Merle Decl. ¶ 5; Wagner Decl. ¶ 9. On behalf of other purchasers of Lash Boost, they assert claims under state consumer-protection laws or common law.  They seek to recover damages attributable to R+F's deceptive omission of Lash Boost's side effects.

23

## II.      LEGAL STANDARD

24

25

26

27

Federal Rule of Civil Procedure 23(a) establishes four prerequisites for any class action: numerosity, commonality, typicality, and adequacy.  Under these prerequisites, (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the class representatives must assert claims that "are typical

28

1    of the claims" of the class; and (4) the class representatives must "fairly and adequately protect

2    the interests of class." Fed. R. Civ. P. 23(a).

3        Rule 23(b) sets out the permissible types of class actions.  Here, Plaintiffs seek

4    certification of six classes under Rule 23(b)(3) , which authorizes class certification if the district

5    court determines that common questions of law or fact "predominate over any questions

6    affecting only individual members," and that a class action is "superior to other available

7    methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These

8    two requirements are commonly referred to as "predominance" and "superiority."  *See, e.g.*,

9    *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 n.1 (9th Cir. 2010).

10                              **III.     ARGUMENT**

11    **A.    The proposed classes satisfy the prerequisites of Rule 23(a).**

12        **1.    Numerosity is satisfied.**

13        Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all

14    members is impracticable."  Fed. R. Civ. P. 23(a)(1).  What constitutes impracticability of

15    joinder depends on the particular facts of each case, with several factors being relevant.

16        The "most obvious consideration" is "the size of the class itself."  7A Mary Kay Kane et

17    al., *Fed. Prac. & Proc. Civ.* § 1762 (3d ed. 2019).  Each class here is large.  The California,

18    Florida, Illinois, Massachusetts, New York, and Washington classes consist of all persons who

19    purchased Lash Boost in each of those states from product launch in 2016 to the present.  The

20    size of each such class is easily determined by resort to Rodan + Fields' transactions records,

21    ████████████████████████████████████████.  *See* Woerner Decl. Ex. YY. Joinder is

22    made still more impracticable by the class members' geographical dispersion.  *See Barnes v. Bd.*

23    *of Trs.*, 369 F. Supp. 1327, 1333 (W.D. Mich. 1973); *accord, e.g.*, *Robidoux v. Celani*, 987 F.2d

24    931, 936 (2d Cir. 1993) (dispersion "over the entire area of Vermont" favored certification).

### 2.      Commonality is satisfied.

To satisfy Rule 23(a)(2)'s commonality prerequisite, even a single common question "apt to drive the resolution of the litigation" is enough.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Whether a given question is apt to drive the resolution of the litigation, in turn, "necessarily depends on the nature of the underlying legal claims that the class members have raised."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  Here, numerous common questions of law and fact arise from the underlying state-law claims.  For purposes of commonality, Plaintiffs will focus on the dangerousness of Lash Boost and the deceptiveness of R+F's omissions about Lash Boost.

*1. Dangerousness.*  Plaintiffs have alleged that R+F omitted material information about whether Lash Boost can cause significant side effects.  *See* Consol. Compl. at 105, ECF No. 25.  That allegation raises a common question of fact about whether Lash Boost can cause such side effects.  The question is common rather than individualized because the allegations here concern a single product, Lash Boost, ███████████████████████████████████.  *See* Ex. ZZ at 157:7-158:4; Ex. I at 70:13-19, 239:14-23.  The dangerousness of that product to the user, therefore, will receive a single answer that applies to the whole class.  *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998) (commonality was satisfied because class members' claims stemmed from the same alleged defect), *overruling on other grounds recognized by Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019).

*2. Deceptiveness.*  Under the relevant law of California, Florida, Massachusetts, New York, and Washington, Plaintiffs must prove at trial that R+F made deceptive omissions concerning Lash Boost.[6]  At this stage, the relevant question is whether this deceptiveness issue

---

[6] Under Illinois law, it is sufficient if the defendant misrepresented or concealed a material fact.  *See Mackinac v. Arcadia Nat'l Life Ins. Co.*, 648 N.E.2d 237, 239 (Ill. App. Ct. 1995); *see also*

1    is susceptible to a *common* answer, not whether it will be *favorably* answered.  Here, the issue is

2    indeed susceptible of a common answer.  That is true for two reasons.

3            First, the relevant omission is common to the class.  Neither through its consultants nor

4    through its website did R+F anywhere disclose the side effects associated with isopropyl

5    cloprostenate.  *See* Ex. CCC; Ex. AAA at 204:7-206:14. Nowhere in its packaging, labeling, or

6    marketing did R+F disclose those side effects, either.  To the extent Rodan + Fields made any

7    consumer-facing messages relevant to whether Lash Boost had side effects, those messages

8    explicitly *denied* that the product has side effects. *See* Ex. Q at RF_00000006; Ex. R at

9    RF_00004402.  As courts have concluded in other consumer cases, commonality is satisfied

10   where, as here, the same omission or misrepresentation are at issue.  *See, e.g.*, *Fitzhenry-Russell*

11   *v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018); *In re ConAgra Foods,*

12   *Inc.*, 90 F. Supp. 3d 919, 973 (C.D. Cal. 2015).  While R+F has maintained that it did disclose

13   that irritation was a side effect simply by telling consumers to discontinue use *if* they developed

14   irritation, Mot. to Dismiss 15, those statements do not affect commonality.  Most class members

15   saw these statements on Lash Boost's packaging and labeling only *after* they had purchased the

16   product, so it cannot have affected their purchase.[7]  Moreover, the statement, even under R+F's

17   reading, still fails to disclose Lash Boost's many other serious side effects, none of which Lash

18

19

20

21

22

23

24        815 ILCS 505/2 (listing "misrepresentation or the concealment, suppression or omission of any
     material fact" as an example of an "unfair or deceptive" act or practice).  Because materiality is
25   defined objectively, that issue is common to the Illinois class.  *Rikos v. Procter & Gamble Co.*,
     799 F.3d 497, 514 (6th Cir. 2015).

26   [7] At some point in late 2019 or early 2020, the verbiage from the warning label was added to the
     R+F webpage for Lash Boost.  *See supra* note 2.  For class members who purchased through
27   the R+F website after the verbiage was added, the question whether the warning really
     disclosed that irritation was a side effect can be resolved at one stroke.

28

Boost has ever disclosed to any consumer.  At the very least, the omission of those side effects raises a common question.

Second, whether the relevant omission is "deceptive" within the meaning of the relevant consumer-protection laws is "defined objectively"—it is defined according to whether it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 43 (E.D.N.Y. 2008) (applying relevant New York law).[8] If Plaintiffs cannot prove deceptiveness, the case ends for the whole class; if they prove it, they have proven it for all class members.  That is the definition of a common question.

### 3.  Typicality is satisfied.

The third prerequisite under Rule 23(a) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This prerequisite does not require "that all class members suffer the same injury as the class representative."  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).  Rather, "[i]n determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff."  *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).  "In practice, the commonality and

---

[8] *Accord Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 29 (Ct. App. 2003) (applying "the reasonable consumer standard to the UCL" and "also . . . to the CLRA"); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (noting that the Florida Supreme Court "has defined 'deception' as 'a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances'" (citation and emphasis omitted)); *Aspinall v. Philip Morris Cos. Inc.*, 813 N.E.2d 476, 486 (Mass. 2004) (holding that the deceptiveness of a defendant's conduct is "to be answered on an objective basis and not by the subjective measure argued by the defendants"); *Columbia Physical Therapy, Inc. P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 228 P.3d 1260, 1270 (Wash. 2010) (a defendant has committed deception under the Washington CPA "if there is a representation, omission or practice that is likely to mislead a reasonable consumer") (quotation and citation omitted).

typicality requirements of Rule 23 'tend to merge.'"  *Celano v. Marriott Int'l, Inc.*, 242 F.R.D.

544, 551 (N.D. Cal. 2007) (citation omitted).

Here, all named Plaintiffs aver that they purchased Lash Boost, expected Lash Boost not

to be capable of causing side effects, were deceived by R+F's failure to disclose Lash Boost's

side effects, and would not have purchased it had they known of its side effects.  Lewis Decl. ¶¶

4, 9; Gattuso Decl. ¶¶ 4, 9; Whetsell Decl. ¶¶ 4, 5; Williams Decl. ¶¶ 4, 5, 8; Huling Decl. ¶¶ 4,

6; Merle Decl. ¶¶ 4, 5; Wagner Decl. ¶¶ 5, 9.  The named Plaintiffs' claims all arise from R+F's

sale or distribution of Lash Boost, and from R+F's uniform omission of Lash Boost's side

effects—the same set of facts from which class members' claims also arise.  Typicality is

satisfied.  *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (typicality is satisfied if

named plaintiffs' claims "arise from the same course of events, and each class member makes

similar legal arguments to prove the defendant's liability") (quotation and citation omitted).

### 4.      Adequacy is satisfied.

Whether adequacy is satisfied because the class representatives "will fairly and

adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), depends on the answers to

"two questions."  *Hanlon*, 150 F.3d at 1020. The first question is whether the "named plaintiffs

and their counsel [will] prosecute the action vigorously" on the class's behalf.  *Id.*  Here, each of

the class representatives has an incentive to vigorously represent similarly situated customers.

That is because "each potential plaintiff has the same problem": R+F's uniform omissions about

Lash Boost's side effects.  *Hanlon*, 150 F.3d at 1021.  Similarly, the class representatives'

counsel have every reason—and have the requisite qualifications—to vigorously pursue the

classes' claims.  *See* Woerner Decl. ¶¶ 2-17; Ex. DDD. "If these attorneys are not equal to the

task of prosecuting this case, it is not clear to us who would be."  *Hanlon*, 150 F.3d at 1021.

Because the class representatives' counsel will fairly and adequately represent the classes'

1    interests, the Court should appoint them as class counsel under Rule 23(g)(1).  *See also* Woerner

2    Decl. ¶¶ 2-17 (explaining why counsel will fairly and adequately represent class interests).

3            The second question in the adequacy inquiry is whether "the named plaintiffs and their

4    counsel have any conflicts of interest with other class members."  *Hanlon*, 150 F.3d at 1020.

5    The classes here contain no intraclass conflicts of interest at all, let alone "fundamental" ones.

6    *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. Feb. 27, 2015) (class

7    treatment is precluded only by "conflicts that are fundamental to the suit and that go to the heart

8    of the litigation" (quotation and citation omitted)).  Rather, the classes all suffered from the same

9    wrongful omissions, and in the same way.  *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d

10   970, 985 (9th Cir. 2011) (class representative was adequate because she was subject to the same

11   company "policies and culture" as the rest of the class).

12   **B.      The proposed classes satisfy the requirements of Rule 23(b)(3).**

13   **        1.      Predominance is satisfied.**

14           The predominance inquiry under Rule 23(b)(3) is qualitative.  It examines the "more

15   important questions" in the litigation and asks whether they may be proven or disproven

16   classwide.  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. Aug. 31, 2016).  If so,

17   the predominance requirement is satisfied, for important questions "are given more weight in the

18   predominance analysis over individualized questions which are of considerably less significance

19   to the claims of the class."  *Id.*

20           Here, nearly all the questions in this litigation—and certainly all of the most important

21   questions—are common to each class as a whole.  Each class asserts claims that have the

22   following elements: (1) the defendant has made an omission or misrepresentation that (2) is

23   materially deceptive or misleading and that (3) causes the plaintiff (4) to suffer monetary loss.

1

2

Each of these elements raises common rather than individualized questions.  Elements unique to

certain of the claims also raise common questions.  Common questions predominate.

3

4

5

6

*1.  R+F has made an omission*.  As noted earlier, Plaintiffs allege that R+F have failed to

disclose Lash Boost's side effects.  This omission is uniform across the class, thus raising a

common question.  *See supra* pp. 13-14.

7

8

9

10

11

*2. Materially deceptive or misleading.*  The relevant state laws establish an objective

standard for deceptiveness or misleadingness, meaning that the standard applies, and can be

proven or disproven, classwide.  *See supra* p. 14.  Likewise, the claims that require that the

deception be "material" or of a "material fact"[9] all adopt an objective standard for materiality,

making materiality a common issue that can receive only one answer classwide.[10]

12

13

14

15

*3. Causation*.  While causation is an element for some of the class claims under

California, Florida, Illinois, Massachusetts, New York, and Washington law, **these claims do**

16

17

18

19

20

21

[9] *See Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 978 (under UCL and CLRA, omission must be of a "material" fact); *Connick v. Suzuki Motor Co. Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996) ("An omission or concealment of a material fact . . . constitutes consumer fraud."); *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 169-70 (Mass. App. Ct. 2009) (under Mass. Gen. L. ch. 93A, causation can be established by showing that "nondisclosure was of a material fact"); *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012) (under N.Y. GBL §§ 349 and 350, defendants' conduct must be "materially misleading"); *Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 391 P.3d 582, 587-88 (Wash. Ct. App. 2017) (under Washington CPA, presumption of reliance arises if omission was one of material fact).

22

23

24

25

26

27

28

[10] *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 996 (under Illinois law, materiality "is established by applying a reasonable person standard"); *Rikos*, 799 F.3d at 516 (under Massachusetts law, "[m]ateriality is an objective inquiry" (citing *Casavant*, 919 N.E.2d at 169)); *Fitzhenry-Russell*, 326 F.R.D. at 613 (noting that materiality under CLRA may generally "be established by common proof because materiality is judged according to an objective standard" (citation and quotation marks omitted)); *Goldemberg v. Johnson & Johnson Consumer Cos. Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading . . . ."); *Young v. Toyota Motor Sales, U.S.A.*, 442 P.3d 5, 9-10 (Wash. Ct. App. 2019) (a material deception is one that "has the capacity to deceive substantial portions of the public").

**not require proof of actual, individualized reliance.** *See Waste Pro USA v. Vision Constr. ENT, Inc.*, 282 So. 3d 911, 917 (Fla. Dist. Ct. App. 2019); *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 886 n.12 (Mass. 2008); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000); *Deegan*, 391 P.2d at 587-88.  Rather, these claims authorize a classwide inference of causation under certain conditions—conditions that are amply satisfied here.

Under California's CLRA, "[c]ausation, on a classwide basis, may be established by materiality."  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (quotation marks and citation omitted).[11]  If, as here, the same omissions "have been made to the entire class," and those omissions are material, then "an inference of reliance arises as to the class."  *Id.* (quotation marks and citation omitted).  And materiality itself, as noted above, is susceptible to common proof because the CLRA defines it objectively.  California common-law fraud also allows reliance to be inferred if the defendant's omissions were material.  *See Vasquez v. Superior Court*, 484 P.2d 964, 972-73 (1971); *see also, e.g.*, *Fitzhenry-Russell*, 326 F.R.D. at 613 (citing cases).

Under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), somewhat similarly, causation is proven objectively and actual reliance is not required.  "[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstance."  *Davis v.*

---

[11] California's UCL, unlike the CLRA, does not require traditional proof of causation as to absent class members.  Under the UCL, "relief . . . is available without individualized proof of deception, reliance and injury."  *In re Tobacco II Cases*, 207 P.3d 20, 35 (Cal. 2009); *see also Mass. Mut. Life Ins. Co. v. Superior Court*, 119 Cal. Rptr. 2d 190, 195 (Ct. App. 2002) ("[A] section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." (citation and quotation marks omitted)).  The plaintiff need only "show that members of the public are likely to be deceived."  *Tobacco II*, 207 P.3d at 29; *see also, e.g.*, *Rikos*, 799 F.3d at 512; *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 290 (N.D. Cal. 2017).

*Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000).  Thus, if, as here, an omission was uniform as to the class as a whole, "the FDUTPA's 'causation requirement is resolved based on how an objective reasonable person would behave under the circumstances.'"  *Rikos*, 799 F.3d at 515 (quoting *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 695 (S.D. Fla. 2010), *aff'd*, 635 F.3d 1279 (11th Cir. 2011)).  And that is a question that is resolvable classwide.  *See id.*

Under the Massachusetts Consumer Protection Act (MCPA), the required proof of a "causal connection" between the defendant's deceptive act and the plaintiff's injury "may be satisfied when an omission 'has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product).'"  *In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2018 WL 3646895, at *4 (N.D. Cal. Aug. 1, 2018) (quoting *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004)); *accord, e.g.*, *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 60 (D. Mass. 2010).  Thus if, as here, the omission is uniform, the causation inquiry under the MCPA necessarily becomes common to the class.

Under New York General Business Law § 349, as under the other consumer-protection laws, causation may be proven by materiality.  If the defendant's deceptive omission or misrepresentation is material, then causation is inferred.  *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015).  And, as noted above, materiality under § 349 is an objective inquiry resolvable classwide.

The Washington Consumer Protection Act (WCPA), too, permits a rebuttable presumption of reliance when the defendant has made an omission of material fact.  *See Deegan*,

391 P.3d at 587-88.  Federal courts have regularly applied this presumption to certify classes under the WCPA.  *See id.* at 588 n.30 (citing cases).

Finally, while the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) requires a showing of proximate causation, ample authority rejects the notion that individualized proof of causation is always required.  Rather, where the defendant's relevant conduct has been uniform toward the class, as it has been here, causation is susceptible of classwide proof through evidence of materiality.[12]  While two courts in this district have concluded otherwise,[13] they did so by misreading *De Bouse v. Bayer AG*, 922 N.E.2d 309 (Ill. 2009).  *De Bouse* did not question the well-established law of Illinois that "reliance is not an element of statutory consumer fraud." *Connick v. Suzuki Motor Co. Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996); *accord In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (II)*, No. 14-md-02555-JSW, 2016 WL 2930964, at *7 (N.D. Cal. May 19, 2016).  Rather, *De Bouse* rejected the view that "a plaintiff need not receive a communication from the defendant to maintain a consumer fraud action when the deception results from" an omission.  922 N.E.2d at 314.  It therefore held that "[i]f there has been no communication with the plaintiff, there have been no statements and no omissions," and that proximate cause therefore cannot be proven.  *Id.* at 316.  In this case, by contrast to *De Bouse*, R+F *did* communicate to Plaintiffs through its consultants and website, among other means. Those communications, which the whole class received, contained material omissions and proximately caused Plaintiffs' loss.  *See id.* (distinguishing *Connick* on the basis that the plaintiffs had received communications from the defendant that contained material omissions).

---

[12] *See Rikos*, 799 F.3d at 514-15; *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 291 (N.D. Cal. 2017); *In re ConAgra Foods, Inc.*, 90 F. Supp. at 997-98; *S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 961 N.E.2d 6, 16 (Ill. App. Ct. 2011).

[13] *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 572 (N.D. Cal. 2019); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 968-69 (N.D. Cal. 2018).

1

2

*4. Injury.*  The relevant laws of California, Florida, Illinois, Massachusetts, New York,

3

and Washington all recognize that if an omission or misrepresentation has caused consumers to

4

have paid more for a product than they otherwise would have paid—often called a "price

5

premium"—those consumers have suffered a cognizable injury.[14]

6

Here, as detailed in Stefan Boedeker's declaration, Plaintiffs have put forward a reliable

7

classwide method of determining the price premium attributable to R+F's deceptive omission of

8

Lash Boost's side effects.  Boedeker's model will determine the price associated with individual

9

attributes of Lash Boost, by looking at the marginal consumer's willingness to pay.  *See* Expert

10

Report of Stefan Boedeker in Supp. of Pls.' Mot. for Class Certification ("Boedeker Rep.")

11

¶¶ 16-19.  The model will then separate out the price attributable to the fact that Lash Boost

12

purportedly lacked side effects. *See id.* ¶ 100.  In other words, Boedeker will calculate the

13

portion of Lash Boost's price attributable to R+F's deceptive omission.  The methodology he

14

will employ, called conjoint analysis, has been repeatedly approved in class actions alleging that

15

a defendant made deceptive omissions or misrepresentations about a product.  *See, e.g.*,

16

*Broomfield v. Craft Brew Alliance, Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *14-20

17

18

19

---

20

[14] *See, e.g.*, *Goldemberg*, 317 F.R.D. at 393 (price premium injury cognizable under California, Florida, and New York laws); *Marty v. Anheuser–Busch Cos. LLC*, 43 F. Supp. 3d 1333, 1346 (S.D. Fla. 2014) (noting that a "premium price theory of damages has been recognized by multiple courts interpreting the state law consumer protection statutes" of New York, California, and Florida); *Aspinall*, 813 N.E.2d at 488-90 (approving price premium theory where purchasers of "light" cigarettes asserted that the health benefits of those cigarettes had been misrepresented); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 460 (D. Mass. 2018) (plaintiffs asserted cognizable theory of injury under MCPA where they alleged that consumers paid price premium due to misrepresentation of beer's origin), *on reconsideration*, 370 F. Supp. 3d 204 (D. Mass. 2019); *Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 666 (N.D. Cal. 2019) (citing *Blough v. Shea Homes, Inc.*, No. 2:12-CV-01493-RSM, 2013 WL 6276450, at *8 (W.D. Wash. Dec. 4, 2013)) (accepting "price inflation theory" under WCPA); *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197-98 (Ill. App. Ct. 2008) (citing cases holding that paying "more than the actual value" of something constitutes an injury).

21

22

23

24

25

26

27

28

(N.D. Cal. Sept. 25, 2018); *Fitzhenry-Russell*, 326 F.R.D. at 604-06; *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 334-37 (D.N.H. 2017); *Goldemberg*, 317 F.R.D. at 394; *In re Scotts*, 304 F.R.D. at 413-14; *see also generally* Boedeker Rep. ¶¶ 108, 112.

In addition, even if Plaintiffs lacked a classwide method of calculating the price premium attributable to R+F's omissions, certification of the Massachusetts and New York classes would still be appropriate.  Massachusetts and New York law both allow for a minimum statutory damages award of $25 and $50, respectively, if actual damages cannot be determined.  *See* Mass. Gen. L. ch. 93A, § 9(3); N.Y. Gen. Bus. L. § 349(h).[15]

***5. Other issues.***  Other elements associated with certain claims are likewise susceptible to common proof.  Proof of what R+F knew or intended about Lash Boost—i.e., its state of mind—is common to the class, because, in establishing that state of mind, Plaintiffs will be relying on internal documents that show what R+F knew about ICP, an ingredient common to Lash Boost.  *See, e.g.*, *In re Aris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 355 (N.D. Cal. 2018); *Broomfield*, 2018 WL 4952519 at *13 (citing cases); *Johnson v. Harley-Davidson Motor Co. Group, LLC*, 285 F.R.D. 573, 581-82 (E.D. Cal. 2012).

Similarly, whether R+F's act or practice "affected the public interest," an element under the WCPA, is determined largely by "the likelihood that additional [consumers] will be injured in exactly the same fashion" as the plaintiff.  *McRae v. Bolstad*, 676 P.2d 496, 500 (Wash. 1984).  This is an inherently classwide inquiry, because it is proven or disproven by evidence that R+F's

---

[15] *See also Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 42-43 (1st Cir. 2003) ("As to statutory damages, the Supreme Judicial Court has held that plaintiffs who cannot show actual damages under ch. 93A may nonetheless obtain statutory damages if liability is established. This too supports class certification." (citation omitted)); *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067 CAS, CV 11-5465 CAS, 2013 WL 3353857, at *17 (C.D. Cal. July 1, 2013) (predominance requirement was satisfied for New York class even though damages were not calculable classwide, because New York allows consumers "to recover statutory damages").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

omissions were systematic.[16]  For the same reason, an element of New York General Business

Law § 349—whether R+F's act or practice is "consumer oriented"—is also a question common

to the class.  *See Harte v. Ocwen Fin. Corp.*, No. 13-cv-5410, 2018 WL 1830811, at *29

(E.D.N.Y. Feb. 8, 2018); *Dupler*, 249 F.R.D. at 43 n.3.

### 2.    Superiority is satisfied.

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly

and efficiently adjudicating the controversy."  The Rule provides a "non-exhaustive list" of four

factors relevant to superiority.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las*

*Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).  These factors favor class treatment.

The first factor is "the class members' interests in individually controlling the prosecution

or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "Where damages suffered by each

putative class member are not large," this first factor "weighs in favor of certifying a class

action."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), *amended*,

273 F.3d 1266 (9th Cir. 2001).  Here, damages per class member are not likely to be large.  The

price of Lash Boost was approximately $150.  *See* Exs. EEE, RF_00000152; FFF at 49:16-50:18.

Even if Plaintiffs' damages analysis ultimately indicates that damages are equal to the product's

full price and class members bought the product multiple times, class members' individual

damages would be unlikely to total much more than $1,000.  Such small damages give class

members little interest in individually controlling the litigation.  *See Local Joint Exec. Bd.*, 244

F.3d at 1163 (damages of "about $1,330" per class member counseled in favor of class

---

[16] *See Reichert v. Keefe Commissary Network, L.L.C.*, 331 F.R.D. 541, 556 (W.D. Wash. 2019) (effect on the public interest involved a common question); *Miller v. P.S.C., Inc.*, No. 3:17-cv-05864-RBL, 2018 WL 6249841, at *6 (W.D. Wash. Nov. 29, 2018) (same); *Kautsman v. Carrington Mortg. Servs., LLC*, No. C16-1940-JCC, 2018 WL 6199013, at *5 (W.D. Wash. Nov. 27, 2018) (same).

certification).  This especially true given the "need for expert opinion" in this action.  *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 293 (N.D. Cal. 2017).

The second superiority factor is "the extent and nature of any litigation concerning the controversy already commenced by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  This factor favors class certification.  A somewhat similar proposed class action is pending in California Superior Court, but it seeks certification of a California-only class under a different legal theory (i.e., that Lash Boost contains an ingredient, ICP, that is a drug and should have been marketed and regulated as such).  *See Pfaff v. Whole Foods Market Grp., Inc.*, No. 1:09-cv-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) (the existence of one other proposed class action concerning the same subject matter, seeking to certify a California-only class, did not weigh against certification).  There is also an action in California Superior Court on behalf of five individuals severely injured by Lash Boost, but it has little relevance here, because it seeks damages solely for personal injuries.  *Barrett et al. v. Rodan + Fields LLC*, No. CGC-19-579766 (Cal. Super. Ct. filed Oct. 3, 2019).  This action is not about personal injury and does not seek damages for it.  *See* Exs. GGG at RFA No. 8, HHH at RFA No. 8, III at RFA No. 8, JJJ at RFA No. 8, KKK at RFA No. 8, LLL at RFA No. 8, MMM at RFA No. 8.

The third factor is "the desirability or undesirability of concentrating the litigation of the claims" in this forum.  Fed. R. Civ. P. 23(b)(3)(C).  Concentrating litigation in this forum—a forum that is R+F's principal place of business, the source of most of the relevant evidence, and the home of most of the relevant fact witnesses—makes a great deal of sense.  *See Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D. 623, 631 (N.D. Cal. 2005) (relying on *Zinser*, 253 F.3d at 1192, to determine that the third superiority factor was satisfied where "the parties, evidence, and witnesses [were] all likely to be located relatively close to this particular forum").

1

2          The last factor asks the court to consider "the likely difficulties in managing a class

3   action."  Fed. R. Civ. P. 23(b)(3)(D); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121,

4   1128 (9th Cir. 2017) (noting that this factor does not provide a freestanding reason to deny class

5   certification).  Manageability should not be a significant concern here.  Common issues

6   predominate, so individualized issues are unlikely to make litigation unmanageable.  *See Wolin

7   v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010) (noting that superiority

8   inquiry "is related to the commonality test"); *Datta v. Asset Recovery Sols., LLC*, No. 15-CV-

9   00188-LHK, 2016 WL 1070666, at *10 (N.D. Cal. Mar. 18, 2016) (noting that fourth superiority

10  factor "depends largely on whether Plaintiff's case rises and falls on common evidence"

11  (citation, quotation, and alteration omitted)).  In addition, the elements of the claims asserted

12  here overlap significantly, a fact that will ease trial management.[17]

13                              **IV.    CONCLUSION**

14         For the reasons given above, Plaintiffs respectfully ask the Court to certify the proposed

15  classes under Rule 23(b)(3) and appoint the named Plaintiffs' attorneys as class counsel under

16  Rule 23(g).[18]

17

18

19

20

21

22

23

24  _____

    [17] *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1034 (certifying *eleven* state-law classes due
    in part to similarities among state consumer protection laws); *In re NJOY Inc. Consumer Class

25  Action Litig.*, 120 F. Supp. 3d 1050, 1123 (C.D. Cal. 2015) (noting that the UCL, CLRA, and
    FDUTPA are "essentially indistinguishable"); *Keegan v. Am. Honda Motor Co. Inc.*, 284

26  F.R.D. 504, 541 (C.D. Cal. 2012) (certifying California, Florida, and New York classes in part
    because the states' consumer protection laws share "the same causation and reliance standard").

27  [18] If the Court certifies the proposed classes, Plaintiffs will promptly propose a plan of notice in
    accordance with Rule 23(c)(2)(B).

28

Dated: February 14, 2020          */s/ Benjamin Gould*
                                  Counsel for Plaintiffs

                                  Juli E. Farris (Bar No. 141716)
                                  KELLER ROHRBACK L.L.P.
                                  801 Garden Street, Suite 301
                                  Santa Barbara, CA 93101
                                  (805) 456-1496; Fax (805-456-1497
                                  jfarris@kellerrohrback.com

                                  Michael D. Woerner, *admitted pro hac vice*
                                  Ryan McDevitt, *admitted pro hac vice*
                                  Benjamin Gould (Bar No. 250630)
                                  Erika M. Emerson, *admitted pro hac vice*
                                  KELLER ROHRBACK L.L.P.
                                  1201 Third Avenue, Suite 3200
                                  Seattle, WA 98101-3052
                                  (206) 623-1900; Fax: (206) 623-3384
                                  mwoerner@kellerrohrback.com
                                  rmcdevitt@kellerrohrback.com
                                  bgould@kellerrohrback.com
                                  eemerson@kellerrohrback.com


                                  Jeffrey Lewis (Bar No. 66587)
                                  KELLER ROHRBACK L.L.P.
                                  300 Lakeside Drive, Suite 1000
                                  Oakland, CA 94612
                                  (510) 463-3900, Fax (510) 463-3901
                                  jlewis@kellerrohrback.com

                                  ***Interim Lead Counsel***

                                  Marc L. Godino (Bar No. 182689)
                                  Danielle L. Manning (Bar No. 313272)
                                  GLANCY PRONGAY & MURRAY LLP
                                  1925 Century Park East, Suite 2100
                                  Los Angeles, CA 90067
                                  (310) 201-9150; Fax: (310) 201-9160
                                  mgodino@glancylaw.com
                                  dmanning@glancylaw.com

                                  ***Interim Class Counsel***

                                  Rosemary M. Rivas (Bar No. 209147)
                                  LEVI & KORSINSKY LLP
                                  44 Montgomery Street, Suite 650

San Francisco, CA 94104
(415) 291-2420, Fax: (415) 484-1294
rrivas@zlk.com

Joseph G. Sauder
SAUDER SCHELKOPF
555 Lancaster Avenue
Berwyn, PA 19312
(610) 200-0580
jgs@sstriallawyers.com

***Attorneys for Plaintiffs***

1

**CERTIFICATE OF SERVICE**

2

I, Juli E. Farris, hereby certify that on February 14, 2020, I electronically filed the

3

foregoing with the Clerk of the United States District Court for the Northern District of

4

California using the CM/ECF system, which shall send electronic notification to all counsel of

5

record.

6

7

By:  /s/ *Benjamin Gould*

8

Benjamin Gould

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ADDENDUM

Excluded from each of the classes below are (1) Defendants' officers, directors and employees; (2) the judicial officers and associated court staff assigned to this case, and the immediate family members of such officers and staff; and (3) persons who exclude themselves from the Class pursuant to Fed. R. Civ. P. 23.

| Class | Definition | Claim(s) Asserted |
|---|---|---|
| California Class | All persons who purchased Lash Boost in California | (1) Unfair Competition Law; (2) Consumer Legal Remedies Act; (3) fraud |
| Florida Class | All persons who purchased Lash Boost in Florida | Florida Deceptive and Unfair Trade Practices Act |
| Illinois Class | All persons who purchased Lash Boost in Illinois | Illinois Consumer Fraud and Deceptive Business Practices Act |
| Massachusetts Class | All persons who purchased Lash Boost in Massachusetts | Massachusetts Consumer Protection Act, also known as "chapter 93A" |
| New York Class | All persons who purchased Lash Boost in New York | New York General Business Law section 349 |
| Washington Class | All persons who purchased Lash Boost in Washington | Washington Consumer Protection Act |